# Retirement Plan

## Plan Administration Description dated as of May 10, 2006

## Table of Contents:

Plan document ................................................................................................................. 2
Plan Administration Description ........................................................................................ 2
Benefits determinations and claims procedures .............................................................. 4
If the Company amends or terminates the plan ............................................................... 4
Limits on plan amendments, including changes in actuarial factors, options and subsidies ..................... 5
Vested Benefits Are Insured By The PBGC ..................................................................... 5
Administrative information ................................................................................................ 6
Plan details ........................................................................................................................ 8
Contacts .......................................................................................................................... 10
Other importation information ......................................................................................... 11

## Plan document

The Plan Administration Description ("Description"), together with the questions and answers about the Retirement Plan in this Benefits Handbook, constitute the Summary Plan Description for the Retirement Plan and contains important information about the Retirement Program, which consists of the tax qualified Retirement Plan and two non-qualified plans, the Benefit Equalization Plan (BEP) and Supplemental Retirement Plan (SERP). (Please note that only some of these provisions and protections apply to BEP and SERP.)

The Plan Administrator uses the claims procedure described in this section of the Handbook to make determinations on claims for benefits under the Retirement Plan. The Plan Administrator has full discretion and the maximum authority to interpret the plan and make all claims/benefits determinations permitted by law. As explained below, the Plans are administered by a Committee, but certain responsibilities are delegated to specific persons called the Plan Administrator and the Company Representative, who may be the same person. Certain duties of the Plan Sponsor are delegated to the individual designated as the Company Representative.

Note that the table of contents and the various headings and sub-headings in this Description are provided for your convenience and in no way define, limit or otherwise describe the scope or intent of the plan.

Amendments to the plan provisions, including amendments regarding eligibility for coverage and the benefits provided under the plan, are made only by written amendments to the Retirement Plan. Amendments may be made by the Company's Board of Directors. The Board of Directors has in the past delegated to certain officers authority to adopt amendments necessary to keep the Plan tax qualified. The Plan also authorizes the person serving as Company Representative to carry out certain non-fiduciary functions, including determining service credit for employees of acquired businesses. Any material amendments are communicated to you by revising this section of the Handbook, or through Marsh & McLennan Companies, Inc.'s internal employee communication channels.

## Summary Plan Description

This Plan Administration Description provides information on how the Retirement Plan is administered, including:

- plan funding and claims administration
- how to obtain plan documents
- the claims review and appeal process
- your rights under ERISA (the Employee Retirement Income Security Act of 1974)
- other important facts about this plan

Summary plan descriptions are intended to provide you with easy-to-understand general explanations of the more significant provisions of your benefit plans. If any conflict should arise between this Summary Plan Description and the provisions of the plan, or if any provision is not explained or only partially explained in this summary plan description, your rights will be determined under the provisions of the plan document (which may be changed from time to time), as interpreted by the Plan Administrator.

# Benefits determinations and claims procedures

## Timing of notification of benefits determination

In the case of a claim, the person serving as Plan Administrator (who may be acting through his or her delegate) will notify you of the benefit determination (whether adverse or not) no later than 90 days after your claim was received. This period may be extended one time by the Plan Administrator for up to 90 days, provided that the extension is necessary due to matters beyond the control of the Plan Administrator and you are notified prior to the expiration of the initial 90-day period of the circumstances requiring the extension and the date by which the Plan Administrator expects to render a decision. If additional information is needed to process the claim, the Plan Administrator will notify you within this 90-day period and may request a one-time extension of not more than 90 days and suspend your claim until all information is received. A denial notice will explain the reason for denial, refer to the part of the plan on which the denial is based, describe any additional material or information necessary to complete claim so it may be processed, and provide the claim appeal procedures.

## Appeal of benefits determinations

If you believe a benefit under the plan was denied improperly, you may file a written appeal for the unpaid amount within 60 days of receipt of notification of the adverse benefit determination. The written appeal should specify the amount of the claim, include any other written comments, documents, records or other information that may be pertinent and should be sent to the Plan Administrator. A written decision will usually be issued by the Plan Administrator or the Committee within 60 days of your written appeal.

Upon request, you will be provided, free of charge, reasonable access to, and copies of all documents, records, and other information relevant to your claim for benefits.

## Authority over benefits determinations and appeals

The Plan Administrator and the Committee have full discretion and authority to determine all claims under the plan. Any final action or determination in this review procedure will be final, conclusive, and binding on the Claims and Plan Administrators, the Company, the plan participant and his or her legal representative, and the participant's family members and their legal representatives.

No action for benefits may be brought by any participant or beneficiary unless the plan's claims review procedure has been exhausted (that is, all appeals of adverse decisions have been made), any such action must be commenced within three years of the first date by which all the essential facts and circumstances which support your claim had arisen, provided that the three-year period will never begin later than the date on which the claim arose or a final determination denying your claim, in whole or in part, has been issued under the procedure described above.

# If the Company amends or terminates the plan

While the Company intends to continue the Benefits Program indefinitely, the Company reserves the right to terminate or amend the Program, in whole or part, at any time and for any reason as it deems advisable, as to any and all employees covered. In fact, as a matter of prudent business planning, the Company periodically evaluates the Benefits Program.

However, if the Company should exercise its right to amend, modify or terminate the tax-qualified Retirement Plan, Internal Revenue Code protections apply. In addition, it is not intended that the Benefit Equalization Plan or the Supplemental Retirement Plan amendments will reduce previously earned benefits, though your Benefit Equalization Plan and Supplemental Retirement Plan benefit may decrease if your Retirement Plan benefit increases.

To assure the availability of retirement benefits under the tax-qualified Plan, the Company has established a Master Trust and entered into various insurance contracts. If it ever becomes necessary to terminate that Plan, accrued benefits of affected Participants will be 100% vested (to the extent funded or guaranteed) and assets will be used to pay out benefits in the form of non-transferable annuity contracts and/or lump sums in accordance with legal requirements. The tax-qualified Plan provides that, in the event of a complete termination, any excess assets remaining after all liabilities have been satisfied will revert to the Company. In the event that the Benefit Equalization Plan and/or the Supplemental Retirement Plan were terminated, you would be entitled to any annuities purchased on your behalf to date as well as any other vested benefits the Company can pay out of its general assets.

Other qualified plans may be merged into the Retirement Plan, and the Retirement Plan may also be merged, in whole or in part, into or with another plan. However, in no event will your benefit immediately after the transfer or merger (determined as if the plan terminated) be less than your benefit immediately prior to the transfer or merger (determined as if the Plan terminated).

# Limits on plan amendments, including changes in actuarial factors, options and subsidies

The Internal Revenue Code provides that no plan amendment may retroactively reduce your previously accrued benefit, unless necessary to keep the Plan tax qualified. This means, for example, that if the benefit formula is changed in the future by an amendment to the tax-qualified Plan, your accrued benefit after the amendment may never be less than your accrued benefit before the amendment. These rules also currently provide that certain changes in the actuarial factors used to calculate your benefits and the options and early retirement subsidiaries available under that Plan may not be applied to your accrued benefit prior to the change. In addition to being notified of any future changes in the benefit formula, you will be notified when tax qualified Plan assumptions or options are changed if you need to be informed of any rights you have that were protected by law as of the date of the change.

# Vested Benefits Are Insured By The PBGC

Your pension benefits under the Retirement Plan are insured by the Pension Benefit Guaranty Corporation (PBGC), a federal insurance agency. If the Retirement Plan terminates (ends) without proper funding to meet its benefit obligations, then the PBGC will step in to pay pension benefits. Most people receive all of the pension benefits they would have received under their plan, but some people may lose certain benefits. The PBGC guarantee generally covers: (1) normal and early retirement benefits; (2) disability benefits if you become disabled before the Retirement Plan terminates; and (3) certain benefits for your survivors.

The PBGC guarantee generally does not cover: (1) benefits greater than the maximum guaranteed amount set by law for the year in which the Retirement Plan terminates; (2) some or all of benefit increases and new benefits based on Retirement Plan provisions that have been in place for fewer than 5 years at the time the Retirement Plan terminates; (3) benefits that are not vested because you have not worked long enough for the Company; (4) benefits for which you have not met all of the requirements at the time the Retirement Plan terminates; (5) certain early retirement payments (such as supplemental benefits that stop when you become eligible for Social Security) that result in an early retirement monthly benefit greater than your monthly benefit at the Retirement Plan's normal retirement age; and (6) non-pension benefits, such as health insurance, life insurance, certain death benefits, vacation pay, and severance pay.

Even if certain of your benefits are not guaranteed, you may still receive some of those benefits from the PBGC depending on how much money the Retirement Plan has and on how much the PBGC collects from employers.

# Administrative information

The information presented in this summary plan description is intended to comply with the disclosure requirements of the regulations issued by the U.S. Department of Labor under the Employee Retirement Income Security Act (ERISA) of 1974, which apply to the Retirement Plan.

## Your rights under ERISA

As a participant in the Retirement Plan, you are entitled to certain rights and protections under ERISA (Employee Retirement Income Security Act of 1974). ERISA entitled you to:

- receive information about the plan and your benefits

- examine, at the Plan Administrator's office and other specified locations, including work sites, without charge, all plan documents governing the plan. These documents may include insurance contracts, if applicable, and the latest annual report (Form 5500 Series) filed by the plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Pension and Welfare Benefit Administration

- obtain, after sending a written request to the Plan Administrator, copies of documents governing the operation of the plan, including insurance contracts, if applicable, and copies of the latest annual report (Form 5500 Series) and updated summary plan description. You may be asked to pay a reasonable charge for the copies

- receive a written summary of the plan's annual financial report. The Plan Administrator is required by law to provide each participant with a copy of this summary annual report.

- Obtain a statement telling you whether you have a right to receive a retirement plan benefit at normal retirement age (age 65) and, if so, what your benefits would be at normal retirement age if you stop working under the plan now. If you do not have a right to a retirement benefit, the statement will tell you how many more years you have to work to get a right to a benefit. This statement must be requested in writing and is not required to be given more than once every twelve months. The plan must provide the statement free of charge. Currently, such a statement is automatically provided to participants each year.

## Prudent actions by plan fiduciaries

In addition to creating rights for plan participants, ERISA imposes duties on the people responsible for the operation of the Retirement Plan. The people who operate this plan, called "fiduciaries" have a duty to do so prudently and in the best interest of you and other plan participants and beneficiaries. No one, including your employer or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a benefit or exercising your rights under ERISA.

## Enforce your rights

If your claim for a benefit under any of the three plans is denied or ignored, in whole or in part, you have a right to know why this was done, including the provisions of the plan on which the denial was based, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are several steps you can take to enforce your rights. For instance, if you request a copy of plan documents or the latest annual report from the plan and do not receive them within 30 days, you may file suit in a federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the Administrator's control.

If you have a claim for benefits that is denied or ignored, in whole or in part, you may file suit in a state or federal court. In addition, if you disagree with the plan's decision or lack of decision about the qualified

status of a domestic relations order, you may file suit in federal court. If plan fiduciaries misuse the plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in federal court. The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees if, for example, it finds your claim is frivolous.

### Assistance with your questions

If you have any questions about this plan, contact the Plan Administrator. If you have questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the Plan Administrator, contact the nearest office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in your telephone directory. You may also contact the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210. You may also obtain certain publications about your right and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

# Plan details

### Plan sponsor

The Plan Sponsor is:

Marsh & McLennan Companies, Inc.
1166 Avenue of the Americas
New York, NY 10036-2774

In addition to eligible employees of Marsh & McLennan Companies, Inc., the employee benefits plan described in this document covers employees classified on payroll as a U.S. salaried employee of MMC or any related company that is a participating employer in the Plan. Participating companies include MMC and all its subsidiaries and affiliates other than (i) Putnam Investments, Inc., and its subsidiaries, (ii) Kroll, Inc. and its subsidiaries, including its Quorum and Factual Data business, (iii) CS Stars, LLC (formerly Corporate Systems, Inc.), and (iv) except as described below, Mercer Human Resource Services, including Mercer HR Outsourcing, LLC and Mercer Trust Company. Certain employees of Mercer HR Services who were formerly Mercer HR Consulting employees were given the opportunity to continue participation in the Plan or to elect participation in the Mercer HR Services Retirement Plan. which: (1) have been designated by the Board of Directors of Marsh & McLennan Companies, Inc. as a participating employer under this plan; and (2) has adopted the plan. You may write to the Plan Administrator (described below) to learn which employers participate in this plan.

### Plan name

Marsh & McLennan Companies Retirement Plan (tax qualified)

### Plan administrator

The Plan provides for administration by a Committee (consisting of three or more persons appointed by Marsh & McLennan Companies' Chief Executive Officer or Board of Directors) or a Plan Administrator (who is appointed by Marsh & McLennan Companies' Chief Executive Officer). The Committee members and Plan Administrator may be removed at any time with or without cause. The Committee has full power and authority to administer the plan in its complete discretion; provided, however, that where the plan specifically provides duties to the Plan Administrator, the Committee and the Plan Administrator are jointly responsible for, and exercise complete discretion with respect to those duties.

The Plan Administrator is Marsh & McLennan Companies, Inc. Benefits Administration Committee and can be reached at:
Plan-Administrator – Retirement Plan
c/o Global Benefits, 6th Floor
Marsh and McLennan Companies, Inc.
Waterfront Corporate Center
121 River Street
Hoboken, NJ 07030-5794
Telephone: (201) 284-4000

The Plan Administrator has full discretion and authority to control and manage the operation and administration of each of the plans except to the extent authority has been granted to the Claims Administrator for adjudication of claims.

### Employer Identification Number (EIN)

As Plan Sponsor, the Company files benefit plan reports to the Federal Government under Employer Identification Number: 36-2668272.

### Plan number

The plan number is 001.

## Plan type

The Retirement Plan is a funded, tax-qualified defined benefit pension plan under which benefits are determined under a formula and contributions are actuarially determined. The Benefit Equalization Plan and Supplemental Retirement Plan are non-qualified defined benefit plans which are excess benefit plans or plans for a select group of management or highly-compensated employees.

## Plan year

The plan year is January 1–December 31.

## Source of benefits funding

The tax qualified Retirement Plan is funded entirely through Company contributions and investment gains. Expenses not paid by the Company may be paid from the trust. The assets under the Retirement Plan are held in a tax-exempt master trust by the following:

The Northern Trust Company of Chicago, Illinois
50 South La Salle Street
Chicago, Illinois 60690

An Investment Committee of 3 or more persons is appointed by the Chief Executive Officer of the Company or the Board to manage and supervise Plan Investments.

## Agent for legal process

We hope you never feel you need to resort to legal action to enforce your rights. However, if you feel you have cause for legal action after you have exhausted the plan's claims appeal process, a timely complaint may be served on the Plan Administrator, shown above, or the Company's General Counsel at:

Marsh & McLennan Companies, Inc.
1166 Avenue of the Americas
New York, NY 10036-2774

Remember, actions generally must be brought within three years of the date your benefit was denied (or the date your cause of action first arose, if earlier) unless a shorter period is allowed, or a longer period is required, by applicable state insurance law but only if such state insurance law is not pre empted by ERISA.

## New York State Law

Except where preempted by ERISA or other U.S. laws, the validity of the plans and any of its provisions will be determined under the laws of New York State without giving effect to principles of conflict of laws.

# Contacts

## For filing a claim

Plan Administrator c/o
Marsh & McLennan Companies, Inc.
Waterfront Corporate Center
Global Benefits
121 River Street – 6th Floor
Hoboken, NJ 07030-5794

## For appealing a claim

Plan Administrator –Retirement Plan
Marsh & McLennan Companies, Inc.
Waterfront Corporate Center
Global Benefits
121 River Street – 6th Floor
Hoboken, NJ 07030-5794

## For a copy of the plan document

A copy of the plan document (and certain related documents, such as insurance company contracts and trust agreements, to the extent applicable) is available to review upon written request to the Plan Administrator. A copy of any of these documents will be furnished to a plan participant or beneficiary (or an authorized representative) upon request at a reasonable charge of 25 cents per page to cover reproduction and handling.

# Other importation information

## Not a contract of employment

This plan is not a contract of employment and does not give any individual a right of employment or continued employment with Marsh & McLennan Companies, Inc.

## If a mistake occurs

Every effort is made to pay your benefits from the plans accurately, but mistakes may occur occasionally. The Claims Administrator will make corrections that it deems appropriate, such as requiring a participant to repay an overpayment to the plan, making an additional payment to an underpaid participant, adjusting future benefit payments, or other actions as necessary to correct errors or omissions. You or your family member will be notified if the plan determines that a mistake was made.

## Non-assignment of benefits

You cannot assign, pledge, borrow against or otherwise promise any benefit payable under the Retirement Program before you receive that benefit. In addition, your interest in the tax-qualified Retirement Plan is not subject to the claims of creditors. Exception:

A Qualified Domestic Relations Order from a state court directing the Plan Administrator to pay all or a portion of your Retirement Plan account to a former spouse, child(ren), or dependent(s). An example of this is a property settlement relating to child support, alimony payments or marital property rights. The Plan's Qualified Domestic Relations Order procedures are available without charge.

## Top-heavy provisions

A "top-heavy" plan is a tax-qualified plan (which individually or when aggregated with related plans) provides more than 60% of its benefits for "key" employees. Both "top-heavy" and "key" employees are defined terms under the Internal Revenue Code. Plans of large employers such as Marsh & McLennan Companies are unlikely to become top-heavy. However, if the Retirement Plan becomes top heavy, certain minimum contributions for non-key employees and faster vesting may be required. Participants may be entitled to have faster vesting apply even if the Retirement Plan becomes and then ceases to be top heavy.