UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x

ROGER EGAN,                                    :
                                               :
                          Plaintiff,           :        07 Civ. 7134 (SAS)
                                               :
            - against -                        :
                                               :
MARSH & MCLENNAN COMPANIES, INC.,              :
                                               :
                          Defendant.           :
                                               :
———————————————————————— x

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................. iii

PRELIMINARY STATEMENT ............................................................. 1

STATEMENT OF FACTS ................................................................... 2

    A.    The Parties ......................................................................... 2

    B.    Egan's Departure from Marsh .................................................. 2

    C.    Relief Sought under Various Benefit Plans .................................... 4

        1.    Severance Plans ......................................................... 4

        2.    Equity Plans ............................................................. 6

        3.    Pension Plans ............................................................ 8

ARGUMENT ................................................................................. 9

I.    PLAINTIFF'S FIRST CAUSE OF ACTION SHOULD BE DISMISSED INSOFAR AS PLAINTIFF ALLEGES BREACHES OF THE SSP AND THE RIF PLAN ............................................................................ 9

    A.    Plaintiff's Claims for Breach of the SSP and the RIF Plan Are Preempted by ERISA .......................................................... 10

    B.    Any Purported Claim for Benefits Under ERISA is Deficient Because Plaintiff Failed to Exhaust the Required Administrative Claims Procedure .............................................................. 11

    C.    Plaintiff is Ineligible for SSP and RIF Plan Benefits ....................... 14

II.    PLAINTIFF'S CLAIMS RELATING TO RESTRICTED STOCK AND RESTRICTED STOCK UNITS FAIL TO STATE A CLAIM BASED UPON THE PLAIN LANGUAGE OF THE APPLICABLE PLAN DOCUMENTS .................................................................... 16

    A.    Plaintiff's Restricted Stock and Unpaid Dividends Properly Were Forfeited Upon Plaintiff's Termination .................................... 16

    B.    Plaintiff's Restricted Stock Units Were Rightfully Forfeited Upon Plaintiff's Termination ...................................................... 17

## TABLE OF CONTENTS

**Page**

III.  PLAINTIFF'S THIRD CAUSE OF ACTION IS PREEMPTED BY
ERISA AND SHOULD BE DISMISSSED ................................................................ 19

    A.    Plaintiff's Claim that MMC Breached the Retirement Program is
Preempted by ERISA.................................................................................... 19

    B.    Any Purported ERISA Claim For Retirement Benefits Would Be
Futile Because Plaintiff Has Not Elected Early Retirement and Has
Failed to Exhaust the Claims Procedure ....................................................... 20

IV.  PLAINTIFF'S FOURTH CAUSE OF ACTION FOR ALLEGED
PROMISSORY ESTOPPEL SHOULD BE DISMISSED FOR FAILURE
TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED ...................... 21

    A.    Plaintiff's State Law Promissory Estoppel Claim is Preempted by
ERISA............................................................................................................ 22

    B.    Plaintiff's State Law Promissory Estoppel Claim is Deficient as a
Matter of Law ............................................................................................... 23

CONCLUSION ...................................................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*Aetna Health Inc. v. Davila*,
   542 U.S. 200 (2004) ...................................................................................................10

*ATSI Commc'ns, Inc. v. The Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007) ..........................................................................................9

*Bell v. Pfizer Inc.*,
   2007 WL 1610205 (S.D.N.Y. June 1, 2007) ..............................................................25

*Bessemer Trust Co. v. Branin*,
   ___ F. Supp. 2d ___,
   2007 WL 2142306 (S.D.N.Y. July 23, 2007) .............................................................23

*Billinger v. Bell Atl.*,
   240 F. Supp. 2d 274 (S.D.N.Y. 2003),
   *aff'd*, 124 Fed. Appx. 669 (2d Cir. 2005),
   *cert. denied*, 546 U.S 843 (2005) ..............................................................................22

*Bjork v. Eastman Kodak Co.*,
   189 F. Supp. 2d 3 (W.D.N.Y. 2001) ...........................................................................13

*Blanck v. Consolidated Edison Ret. Plan*,
   2004 WL 115199 (S.D.N.Y. Jan. 26, 2004) ...............................................................19

*Campbell v. Computer Task Group, Inc.*,
   2001 WL 815575 (S.D.N.Y. July 19, 2001) ...............................................................19

*Deutsch v. Kroll Assocs. Inc.*,
   2003 WL 22203740 (S.D.N.Y. Sept. 23, 2003) ..........................................................23

*Devlin v. Transportation Commc'ns. Int'l Union*,
   173 F.3d 94 (2d Cir. 1999) ..........................................................................................25

*Dow Jones & Co. v. International Sec. Exch., Inc.*,
   451 F.3d 295 (2d Cir. 2006) ..........................................................................................9

*Ellis v. Chao*,
   336 F.3d 114 (2d Cir. 2003) ........................................................................................11

*Flaherty v. Metromail Corp.*,
   235 F.3d 133 (2d Cir. 2000) ........................................................................................15

*Gilbert v. Burlington Indus., Inc.*,
   765 F.2d 320 (2d Cir. 1985),
   *aff'd*, 477 U.S. 901 (1986) ............................................................................... 10

*Greifenberger v. Hartford Life Ins. Co.*,
   2003 WL 22990093 (S.D.N.Y. Dec. 18, 2003),
   *aff'd*, 131 Fed. Appx. 756 (2d Cir. 2005) ........................................................ 12

*Haft v. Dart Group Corp.*,
   841 F. Supp. 549 (D. Del. 1993) .............................................................. 17, 18

*Herter v. Dick's Clothing & Sporting Goods, Inc.*,
   58 F. Supp. 2d 306 (S.D.N.Y. 1999) ................................................................ 25

*Ingersoll-Rand Co. v. McClendon*,
   498 U.S. 133 (1990) ........................................................................................ 22

*Karl v. ASARCO, Inc.*,
   1998 WL 107113 (S.D.N.Y. Mar. 11, 1998),
   *aff'd*, 166 F.3d 1200 (2d Cir. 1998) ............................................................... 15

*Kennedy v. Empire Blue Cross & Blue Shield*,
   989 F.2d 588 (2d Cir. 1993) ............................................................................ 12

*Leonelli v. Pennwalt Corp.*,
   887 F.2d 1195 (2d Cir. 1989) .......................................................................... 13

*Matusovsky v. Merrill Lynch*,
   186 F. Supp. 2d 397 (S.D.N.Y. 2002) ............................................................... 9

*Metropolitan Life Ins. Co. v. Taylor*,
   481 U.S. 58 (1987) .......................................................................................... 10

*Miller v. Citicorp*,
   1997 WL 96569 (S.D.N.Y. Mar. 4, 1997) ........................................................ 23

*Morlino v. Staten Island Univ. Hosp.*,
   1998 WL 160937 (E.D.N.Y. Apr. 1, 1998),
   *aff'd*, 173 F.3d 845 (2d Cir. 1999) ................................................................. 23

*Nelson v. Nielsen Media Research Inc.*,
   207 F. Supp. 2d 300 (S.D.N.Y. 2002) ............................................................. 11

*Owen v. Georgia-Pacific Corp.*,
   389 F. Supp. 2d 382 (D. Conn. 2005) .............................................................. 22

*Phansalkar v. Anderson Weinroth & Co., L.P.,*
2002 WL 1402297 (S.D.N.Y. June 26, 2002),
*vacated & remanded in part on other grounds,* 344 F.3d 184 (2d Cir. 2003) ........................23

*Pronti v. CNA Fin. Corp.,*
353 F. Supp. 2d 320 (N.D.N.Y. 2005)...............................................................................20

*Sandler v. Marconi Cir. Tech. Corp.,*
814 F. Supp. 263 (E.D.N.Y. 1993) ....................................................................................22

*Shamoun v. Bd. Of Trustees.,*
357 F. Supp. 2d 598 (E.D.N.Y. 2005) ...............................................................................13

*Shapira v. Charles Schwab & Co.,*
225 F. Supp. 2d 414 (S.D.N.Y. 2002) ...............................................................................23

*Snyder v. Elliott W. Dann Co.,*
854 F. Supp. 264 (S.D.N.Y. 1994) ....................................................................................22

*Subaru Distrib. Corp. v. Subaru of Am., Inc.,*
425 F.3d 119 (2d Cir. 2005) ................................................................................................2

*Tamondong v. GMAC Commercial Credit LLC,*
2006 WL 3377592 (S.D.N.Y. Nov. 17, 2006).....................................................................13

*Tappe v. Alliance Capital Mgmt. L.P.,*
177 F. Supp. 2d 176 (S.D.N.Y. 2001) ...............................................................................11

*Tischmann v. ITT/Sheraton Corp.,*
145 F.3d 561 (2d Cir. 1998) .............................................................................................10

*Weinberg v. Mizuho Capital Mkts. Corp.,*
2003 WL 22462022 (S.D.N.Y. Oct. 30, 2003)(Scheindlin, J.) .............................................23

*Welland v. Citigroup, Inc.,*
2003 WL 22973574 (S.D.N.Y. Dec. 17, 2003),
*aff'd,* 116 Fed. Appx. 321 (2d Cir. 2004) ...................................................................12, 17

*Zikakis v. Staubach Retail Servs., Inc.,*
2005 WL 2347852 (S.D.N.Y. Sept. 26, 2005) ....................................................................24

## STATUTES

29 U.S.C. § 1001 *et seq* ...............................................................................................................passim

29 U.S.C. § 1144(a) ...............................................................................................................10, 22

Fed. R. Civ. P. 12(b)(6) ...............................................................................................................1, 9

Defendant Marsh & McLennan Companies, Inc. ("MMC") respectfully submits this memorandum of law in support of its motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) the Second, Third and Fourth Causes of Action and portions of the First Cause of Action of the Complaint of plaintiff Roger Egan ("plaintiff" or "Egan") dated July 10, 2007.

## PRELIMINARY STATEMENT

Plaintiff Roger Egan, the former president and chief operating officer of Marsh, Inc. ("Marsh"), a subsidiary of MMC, was asked to step down from his position on November 8, 2004 because he was accountable for the areas within Marsh that were the focus of investigations by the New York Attorney General's office. A month later, MMC allegedly denied plaintiff access to MMC's offices, email and personal files but continued to employ him. Plaintiff resigned from MMC on April 8, 2005, citing his desire to "get on with [his] life." A few days later, it was announced that plaintiff would serve as the Chief Executive Officer of Integro, a newly-formed insurance brokerage and risk management firm that directly competes with Marsh.

More than two years later, on July 11, 2007, plaintiff bypassed all administrative claims procedures and sued MMC in state court, seeking benefits under MMC's severance plans, equity plan, and retirement program. He also brings a promissory estoppel claim alleging that Michael Cherkasky, the Chief Executive Officer of MMC, promised him that MMC would provide him with a "generous settlement." On August 10, 2007, MMC removed the action to this Court. MMC now moves to dismiss the majority of plaintiff's claims because such claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, or otherwise fail to state a claim upon which relief may be granted. Congress has expressly determined that claims such as plaintiff's that relate to employee benefit plans are to be uniformly evaluated under ERISA, rather than various state laws. Moreover, under ERISA,

exhaustion of administrative remedies is mandated before filing such a claim — another

requirement ignored by plaintiff — in order to place with claim administrators, not the courts,

responsibility for initially evaluating benefit claims, especially where interpretation of the plan

terms are necessary, and to ensure that there is a complete record that is ripe for judicial review.

## STATEMENT OF FACTS

The facts described below are based on the allegations of the Complaint, which

MMC disputes in many respects, but accepts as true for purposes of this motion, as well as

several documents referenced in the Complaint. On a motion to dismiss, this Court may consider

"any written instrument attached to the complaint as an exhibit or incorporated in the complaint

by reference, as well as documents upon which the complaint relies and which are integral to the

complaint." *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005).

A.    **The Parties**

MMC is a premier global professional services firm that owns companies engaged

in risk and insurance services, risk consulting and technology, and investment management.

(Compl. ¶ 3.) Plaintiff Roger Egan is the former president and chief operating officer of Marsh,

Inc. ("Marsh"), the risk and insurance services subsidiary of MMC. (*Id.* ¶ 6.)

B.    **Egan's Departure from Marsh**

Plaintiff began his career at MMC in September 1972 and ultimately became

president and chief operating officer of Marsh. (*Id.*) During Egan's tenure, the New York

Attorney General, Eliot Spitzer, launched an investigation into the activities of Marsh. (Compl.

¶¶ 26-27; Declaration of Robert N. Holtzman in Support of Motion to Dismiss Plaintiff's

Complaint ("Holtzman Decl."), Exh. A at 1.) On November 8, 2004, MMC announced that

plaintiff had been asked to step down from his position. (Compl. ¶¶ 26-27; Holtzman Decl.,

Exh. A at 1.) As explained by Michael G. Cherkasky, President and Chief Executive Officer of

2

MMC, Egan was "accountable for the areas of the business that have been the focus of investigations by the New York Attorney General's office, and therefore, we thought it was appropriate to make these changes." (Holtzman Decl., Exh. A at 1.) Plaintiff, however, continued to be employed by Marsh. (Compl. ¶ 26; Holtzman Decl., Exh. A at 1.)

Plaintiff alleges that, shortly after he stepped down, Cherkasky told him that he should retain counsel and purportedly that MMC would "come up with a generous settlement for him." (Compl. ¶ 28.) Egan retained counsel and presented MMC with a proposed separation agreement ("Separation Agreement") that included provisions regarding severance, health care benefits, treatment of equity awards, and pension plan benefits. (Compl. ¶ 29; Exh. B to Compl.)

On December 7, 2004, MMC supposedly asked plaintiff to vacate MMC premises and denied him access to MMC's offices, his MMC email account, and his files. (Compl. ¶ 30.) Egan now claims that these actions by MMC constituted a "constructive termination of Egan by MMC." (*Id.*) Two weeks later, Egan claims that Cherkasky informed him that "negotiations of the Separation Agreement would have to wait until after MMC settled with the NYS AG." (Compl. ¶ 31.)

MMC settled with the New York State Attorney General on January 31, 2005. (*Id.* ¶ 33.) On February 8, 2005, Peter Beshar, MMC's Senior Vice President and General Counsel, allegedly told plaintiff that MMC would not reimburse him for his legal fees in connection with any separation agreement. (*Id.* ¶ 34.) At that same time, however, Cherkasky supposedly told plaintiff that MMC was ready to commence settlement negotiations and that such negotiations "could be concluded in ten days." (*Id.* ¶ 35.) Cherkasky allegedly asked plaintiff to have his counsel contact Mike Petrullo, MMC's Chief Administrative Officer, and his counsel supposedly sent Petrullo the Separation Agreement two days later. (*Id.*)

A week later Cherkasky allegedly told Egan that MMC could no longer talk to him about the Separation Agreement. (*Id.* ¶ 36.) Egan alleges that "[i]n response to Cherkasky's about-face regarding MMC's willingness to discuss Egan's proposed Separation Agreement, on or about April 8, 2005, Egan submitted his resignation from employment by MMC to Cherkasky." (*Id.* ¶ 37.) In his resignation letter, plaintiff cited his desire to "get on with [his] life." (Holtzman Decl., Exh. B.) He did not claim that he had been constructively discharged or that he had "good reason" to terminate his employment. (*Id.*) Just a few days later – on or about April 15, 2005 – it was announced that plaintiff would serve as the Chief Executive Officer of Integro, a newly-formed insurance brokerage and risk management firm that directly competes with Marsh. Plaintiff then commenced the present action more than two years later.

**C.    Relief Sought under Various Benefit Plans**

In this action, Egan alleges that MMC owes him certain benefits under MMC's various severance plans, equity awards and retirement plans — even though he undisputedly has never filed an administrative claim for any of the benefits he now seeks. (Compl. ¶¶ 46-60.) Specifically, Egan seeks benefits under the Special Severance Pay Plan (the "SSPP"), the Marsh USA Inc. Severance Pay Plan (the "Standard Severance Plan" or "SSP"), the Marsh Inc. Fall 2004 Standard Severance Plan referred to by plaintiff as the Reduction in Force Plan (the "RIF Plan"), the MMC 2000 Senior Executive Incentive and Stock Award Plan (the "Stock Award Plan"), and the U.S. Retirement Program (the "Retirement Program"). (*Id.*)

**1.    Severance Plans**

Egan first claims that he is entitled to benefits under the SSPP, the SSP and the RIF Plan. (Compl. ¶¶ 48, 50.)[1]  The SSP and the RIF Plan provide benefits under certain

---

[1]    The SSPP will not be discussed at length here because, although plaintiff's claim for benefits under this plan is without merit, it is not a subject of the present motion to dismiss.

circumstances to employees who are notified of their involuntarily termination as a result of a restructuring, downsizing, or reorganization. (Holtzman Decl., Exh. C §§ 1-2 at 1, Exh. D §§ 1-2 at 1.) Both plans, by their terms, are governed by ERISA and note that plan participants are "entitled to certain rights and protections under [ERISA]." (Holtzman Decl., Exh. C § 1 at 1, § 10 at 5, § 14 at 7, Exh. D § 1 at 1, § 10 at 6, § 14 at 8.) The plans advise employees of their rights under ERISA, including the claims procedure by which review of any denial of benefits may be sought. (*Id.*) The plans further state that "[u]nder ERISA, there are several steps an employee can take to enforce his/her rights" and provide examples of such steps. (Holtzman Decl., Exh. C § 14 at 7, Exh. D § 14 at 9.)

To receive benefits under these plans, an employee must be "notified of their involuntarily termination" on or after October 1, 2003 under the SSP or between November 1, 2004 and December 31, 2004 under the RIF Plan. (Holtzman Decl., Exh. C § 1 at 1, Exh. D § 1 at 1.) Such individuals may be eligible for SSP benefits only if "the Company has determined, in its sole discretion" that the employee lacks the job skills required for the job, the employee has been separated from the Company as a result of restructuring or downsizing, or because the employee's position has been eliminated. (Holtzman Decl., Exh. C § 2 at 1.) Similarly, individuals may be eligible for RIF Plan benefits only if "the Company has determined, in its sole discretion" that it is in the interest of the Company to include this employee in the group to be involuntarily terminated during the Fall 2004 restructuring, the employee's manager selects the employee for involuntary termination, and the Director of Human Resources approves that selection during the applicable time period due to the changing needs of the business, including but not limited to changes in the job skills required, downsizing, or the closing of a facility. (Holtzman Decl., Exh. D § 2 at 1.)

An individual is not eligible for benefits under the either plan if, *inter alia*, the termination is the result of the employee's resignation. (Holtzman Decl., Exh. C § 2(b) at 1-2, Exh. D § 2(b) at 1-2.) Additionally, if an employee recovers under one of the severance plans, the employee may not receive any benefits under any other Company or Company affiliate plan, program, policy or practice providing similar benefits. (Holtzman Decl., Exh. C 2(c) at 2, Exh. D § 2(c) at 2.)

The SSP and the RIF Plan set forth particular claims procedures for obtaining benefits under the plans. (Holtzman Decl., Exh. C § 10 at 5, Exh. D § 10 at 6.) Specifically, the SSP and the RIF Plan state that if an employee believes he or she is eligible for benefits under either plan, the employee is instructed to "submit a written statement to the Plan Administrator describing the basis of his/her claim for benefits" and request the requisite forms "within thirty (30) days of such employee's Termination Date[.]" (*Id.*) An employee whose claim for benefits has been denied by the Plan Administrator may make a written request to the Plan Administrator for a review of the denial. (*Id.*) The Plan Administrator will then issue a final decision setting forth, among other things, the specific reasons for the denial and "a statement of the claimant's right to bring a civil action under Section 502(a) of ERISA[.]" (*Id.*) The RIF Plan expressly states that "[n]o action for benefits may be brought by any Plan Participant or beneficiary unless the Plan's claims review procedure has been exhausted (that is, all appeals of adverse determination have been made and decided)." (Holtzman Decl., Exh. D § 10 at 7.)

### 2.   Equity Plans

Plaintiff also claims that he received a number of equity awards pursuant to the Stock Award Plan. (Compl. ¶¶ 13, 17; Holtzman Decl., Exh. E.) In his Complaint, Egan asserts that MMC breached this plan by refusing to consider Egan's restricted stock and restricted stock

unit awards ("RSUs") as vested and instead insisting that such shares and attendant dividends were forfeited.  (Compl. ¶¶ 40, 55.)

         a)    *2004 Restricted Stock Award*

The Stock Award Plan provides that "[u]pon termination of employment (as determined by the Committee) during the applicable restriction period, Restricted Stock, and any accrued but unpaid dividends or Dividend Equivalents, that is or are then subject to a risk of forfeiture shall be forfeited[.]"  (Holtzman Decl., Exh. E § 6(d)(ii) at 8.)

Pursuant to the applicable grant agreement (the "2004 Restricted Stock Award"), MMC's grant to Egan of restricted stock on March 17, 2004 was scheduled to vest on January 1, 2012.  (Compl. ¶ 17; Holtzman Decl., Exh. F § I.A at 1.)  However, plaintiff would forfeit "all of [his] rights, title and interest in and to the restricted stock" if he ceased to be an active employee of MMC "before the end of the restriction period for any reason other than death, permanent disability, or normal or deferred retirement[.]"  (Holtzman Decl., Exh. F § IV.D at 2.)

         b)    *2003 Restricted Stock Unit Award*

On January 16, 2003, MMC granted to Egan an award of RSUs pursuant to the Stock Award Plan (the "2003 Restricted Stock Unit Award").  (Compl. ¶ 13; Holtzman Decl., Exh. G.)  The award included a vesting date of January 16, 2006, but in the event of an employee's resignation, the employee is not entitled to receive any unvested restricted stock units unless the resignation is the result of total disability, retirement or for "Good Reason." (Holtzman Decl., Exh. G § 1 at 1, § IV at 2.)  Circumstances that qualify as "Good Reason" are set forth and employees must  follow a specific procedure if they purport to resign for "Good Reason."  (Holtzman Decl., Exh. G § IV.B(3) at 2.)  Any employee who resigns for "Good Reason" must submit the resignation in writing and deliver it to a particular administrator within sixty days of becoming aware of any circumstances that fall within the meaning of "Good

Reason" as defined in Section IV.B(3). (*Id.*) The notice of resignation must specify which of the Good Reason circumstances the employee is relying upon and must be effective no earlier than 30 days later, as the Company is permitted a 30-day cure period. (*Id.*)

### 3.    Pension Plans

Plaintiff also claims that MMC breached the Retirement Program by refusing to confer benefits under three individual retirement plans to Egan commencing on October 1, 2005 when Egan presumably turned 55 years old. (Compl. ¶¶ 58-59.) The Retirement Program consists of three distinct ERISA plans: a tax qualified Retirement Plan (the "Qualified Plan") and two non-qualified plans, the MMC Benefit Equalization Plan (the "BEP") and the MMC Supplemental Retirement Plan (the "SRP"). (Holtzman Decl., Exh. H at 2, Exh. I at 2; *see also* Holtzman Decl., Exhs. J-L.) These plans are governed by ERISA. (Holtzman Decl., Exh. H at 6, Exh. I at 4.) The Retirement Program explains to participants that ERISA "is a federal law that governs many employer-sponsored plans including this one." (Holtzman Decl., Exh. I at 4.) The Plan Administration Description also sets forth a participant's right to seek review of any denial and provides information about participants' "entitle[ment] to certain rights and protections under ERISA." (Holtzman Decl., Exh. H at 6.)

Under the Retirement Program, a participant who has terminated his or her employment with MMC will receive benefits commencing at age 65 unless the participant affirmatively elects to commence receiving benefits early (as early as age 55). (Holtzman Decl., Exh. I at 2, 18.) To receive such retirement benefits, an eligible employee must follow the procedures required by the Retirement Program, which were explained to Egan in an August 19, 2005 letter from the MMC Retirement Service Center. (Holtzman Decl., Exh. L at 4.) Specifically, Egan was instructed that "[t]o receive your benefits, please notify us in writing at the address shown on the top of this letter at least three months before you want benefits to

8

begin. In your letter include: the date payments should begin, your Social Security Number, and your termination date." (Holtzman Decl., Exh. L at 4.) The Retirement Program similarly provides that in order to receive benefits under the Retirement Program, a participant must submit the required forms and related documents to the MMC Retirement Service Center prior to the anticipated benefit commencement date. (Holtzman Decl., Exh. I at 14.)

## ARGUMENT

To survive dismissal under Fed. R. Civ. P. 12(b)(6), "plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). While a motion to dismiss requires that the Court accept as true the allegations in the Complaint, "conclusory allegations unsupported by factual assertions . . . fail[] even the liberal standard of Rule 12(b)(6)." *Dow Jones & Co. v. International Sec. Exch., Inc.*, 451 F.3d 295, 307 (2d Cir. 2006) (citation omitted). As mentioned previously, this Court may consider documents referenced in the Complaint but if "plaintiff's allegations are contradicted by such a document, those allegations are insufficient to defeat a motion to dismiss." *Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002) (citations omitted).

## I. PLAINTIFF'S FIRST CAUSE OF ACTION SHOULD BE DISMISSED INSOFAR AS PLAINTIFF ALLEGES BREACHES OF THE SSP AND THE RIF PLAN

In his First Cause of Action, plaintiff claims that MMC breached the SSPP, the SSP, and the RIF Plan by failing to pay to him benefits under these plans. (Compl. ¶¶ 46-51.) Plaintiff's claims that MMC breached the SSP and the RIF Plan should be dismissed because they are preempted by ERISA, plaintiff has failed to exhaust his administrative remedies, and plaintiff is ineligible for benefits in any event.

**A.    Plaintiff's Claims for Breach of the SSP
and the RIF Plan Are Preempted by ERISA**

Plaintiff's common law breach of contract claims seeking recovery of benefits

under the SSP and the RIF Plan are preempted by ERISA.  ERISA governs the SSP and the RIF

Plan because they are employee benefit plans that provide eligible employees with severance

benefits in the event of involuntary termination of their employment.  *See, e.g., Gilbert v.*

*Burlington Indus., Inc.*, 765 F.2d 320, 325 (2d Cir. 1985) (severance pay policy constitutes an

employee welfare benefit plan governed by ERISA), *aff'd*, 477 U.S. 901 (1986); *Tischmann v.*

*ITT/Sheraton Corp.*, 145 F.3d 561, 567-68 (2d Cir. 1998) (severance package qualified as an

"employee welfare benefit plan" within the meaning of ERISA).  Indeed, these plans include

express provisions stating that they are governed by ERISA.  (Holtzman Decl., Exh. C §1 at 1,

§ 14 at 7, Exh. D §1 at 1, § 14 at 8.)

To facilitate uniformity with respect to the regulation of employee benefit plans,

ERISA provides that "the provisions of [ERISA] shall supersede any and all State laws insofar as

they may now or hereafter relate to any employee benefit plan[.]"  29 U.S.C. § 1144(a).  "[A]ny

state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement

remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is

therefore pre-empted."  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004).  Plaintiff's

common law breach of contract claims to recover benefits under the SSP and the RIF Plan

clearly "relate to" employee benefit plans.  Therefore, these state law claims are preempted by

ERISA.  *See, e.g., Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 62-63 (1987) ("[A]s a suit

by a beneficiary to recover benefits from a covered plan, it falls directly under § 502(a)(1)(B) of

ERISA, which provides an exclusive federal cause of action for resolution of such disputes.").

10

*Nelson v. Nielsen Media Research Inc.*, 207 F. Supp. 2d 300 (S.D.N.Y. 2002), is

squarely on point. In *Nelson*, plaintiff filed an action in state court alleging breach of contract,

promissory estoppel and fraud arising out of the denial of severance benefits under defendant's

employee benefit plan. *Id.* at 301. After removing to federal court because plaintiff's claims

involved ERISA plans, the defendant moved to dismiss the state law claims as preempted by

ERISA. *Id.* at 302. The *Nelson* Court agreed, holding that a "state common law action which

merely amounts to an alternative theory of recovery for conduct actionable under ERISA is

preempted" and, accordingly, "[s]tate law claims seeking severance pay are preempted in

situations in which they are in direct relation to a severance plan." *Id.* at 303 (internal quotations

and citations omitted). Indeed, the Court held, "ERISA preempts civil actions against employers

for severance pay predicated on common law contract principles." *Id.* (internal quotations and

citations omitted). The Court dismissed the state law claims because they sought the recovery of

benefits under the terms of a severance plan and, as such, were preempted by ERISA. *Id. See*

*also Tappe v. Alliance Capital Mgmt. L.P.*, 177 F. Supp. 2d 176, 187-88 (S.D.N.Y. 2001)

(Scheindlin, J.) (dismissing state common law claims seeking severance benefits because they

were preempted by ERISA).

　　　　For the same reasons, plaintiff's common law claims for breach of the SSP and

the RIF Plan are preempted by ERISA and should be dismissed.

**B.     Any Purported Claim for Benefits Under ERISA is**
**        Deficient Because Plaintiff Failed to Exhaust the**
**        Required Administrative Claims Procedure**

　　　　This Court should reject any argument by plaintiff to amend the Complaint to

substitute a claim for benefits under Section 502 of ERISA or to construe his present claim as an

ERISA claim because plaintiff has failed to exhaust his administrative remedies. *See Ellis v.*

*Chao*, 336 F.3d 114, 127 (2d Cir. 2003) ("[I]t is well established that leave to amend a complaint

need not be granted when amendment would be futile."). Exhaustion of administrative remedies is a necessary prerequisite to civil litigation of an ERISA claim, especially in cases such as this where the interpretation of plan documents is at issue, because it "uphold[s] Congress' desire that ERISA trustees be responsible for their actions, not the federal courts" and "provide[s] a sufficiently clear record of administrative action if litigation should ensue[.]" *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993) (recognizing "firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases"). Exhaustion also "help[s] reduce the number of frivolous lawsuits under ERISA; . . . promote[s] the consistent treatment of claims for benefits;

. . . provide[s] a nonadversarial method of claims settlement; and . . . minimize[s] the costs of claims settlement for all concerned." *Id.* (citations omitted).

Your Honor's decision in *Greifenberger v. Hartford Life Ins. Co.*, 2003 WL 22990093 (S.D.N.Y. Dec. 18, 2003) (Scheindlin, J.), *aff'd*, 131 Fed. Appx. 756 (2d Cir. 2005), is directly on point. In *Greifenberger*, plaintiff brought an ERISA claim for long term disability benefits against her employer and insurance company. *Id.* at *1. Noting that "[i]f a plaintiff fails to allege that he or she has exhausted administrative remedies, the claim must be dismissed," Your Honor dismissed plaintiff's claim for benefits without leave to amend because she did not allege that she had exhausted the administrative appeals set forth in the policy. *Id.* *See also Welland v. Citigroup, Inc.*, 2003 WL 22973574, at **14-15 (S.D.N.Y. Dec. 17, 2003), *aff'd*, 116 Fed. Appx. 321 (2d Cir. 2004) (rejecting state law claim for breach of a severance plan because ERISA preempted and plaintiff had failed to exhaust administrative remedies).

In the case at hand, both the SSP and the RIF Plan contain express claims procedures that must be followed in order to obtain benefits under the plans. The SSP and the RIF Plan instruct employees who believe that they are eligible for benefits to submit their claims

12

to the Plan Administrator within thirty days of their Termination Date. (Holtzman Decl., Exh. C § 10 at 5, Exh. D § 10 at 6.) The plans also set forth detailed claims procedures by which an individual may obtain review of a denial of a claim for benefits, requiring an initial level of consideration and an appeal process before an individual may proceed to court. (Holtzman Decl., Exh. C § 10 at 5-6, Exh. D § 10 at 6-7.) Indeed, the RIF Plan clearly states that "[n]o action for benefits may be brought by any Plan Participant or beneficiary unless the Plan's claims review procedure has been exhausted (that is, all appeals of adverse determination have been made and decided)." (Holtzman Decl., Exh. D § 10 at 7.)

Plaintiff has not pled that he submitted a claim to the Plan Administrator under either the SSP or the RIF Plan at any time, let alone within thirty days of his Termination Date, nor could he amend to so plead given that no claim has ever been submitted. His supposed nonspecific discussions with Cherkasky are no substitute as they do not satisfy the purpose of exhaustion — namely to provide a clear record of the administrative interpretation of plan documents to ensure effective judicial review. *See Shamoun v. Bd. of Trustees*, 357 F. Supp. 2d 598, 606 (E.D.N.Y. 2005) (dismissing ERISA claim for failure to exhaust notwithstanding plaintiff's claim of discussions with President of the company because to hold otherwise would "render the exhaustion requirement meaningless"). As plaintiff has failed to exhaust the plans' administrative remedies, any ERISA claim for benefits must fail. *See, e.g., Tamondong v. GMAC Commercial Credit LLC*, 2006 WL 3377592, at *2 (S.D.N.Y. Nov. 17, 2006) (Scheindlin, J.) ("If a plaintiff fails to allege that he or she has exhausted administrative remedies [for ERISA claim], the claim must be dismissed.").[2]

---

[2]     Any attempt to restyle plaintiff's claims for severance (or retirement) benefits as ERISA claims also should be rejected because he has not brought a claim against the plan or plan administrators, the only proper defendants for such a claim. *See, e.g., Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir. 1989); *Bjork v. Eastman Kodak Co.*, 189 F. Supp. 2d 3, 5

### C.    Plaintiff is Ineligible for SSP and RIF Plan Benefits

Plaintiff's claims for benefits under the SSP and the RIF Plan also should be dismissed without leave to amend because, regardless of how the claims are styled, plaintiff is ineligible for benefits under either plan.

First, plaintiff is ineligible for benefits under the SSP and the RIF Plan because he does not plead that he was notified of his involuntary termination or that he meets the preconditions to eligibility. To receive benefits under either of these plans, an employee must be "notified of their involuntarily termination" on or after October 1, 2003 under the SSP or between November 1, 2004 and December 31, 2004 under the RIF Plan. (Holtzman Decl., Exh. C § 1 at 1, Exh. D § 1 at 1.) An individual may be eligible for benefits under the SSP only if "the Company has determined, in its sole discretion" that the employee lacks the job skills required for the job, the employee has been separated from the Company as a result of restructuring or downsizing or because the employee's position has been eliminated. (Holtzman Decl., Exh. C § 2 at 1.) Similarly, an individual is eligible for benefits under the RIF Plan only if "the Company has determined, in its sole discretion" that it is in the interest of the Company to include this employee in the group to be involuntarily terminated during the Fall 2004 restructuring, the employee's manager selects the employee for involuntary termination, and the Director of Human Resources approves that selection during the applicable time period due to the changing needs of the business, including but not limited to changes in the job skills required, downsizing, or the closing of a facility. (Holtzman Decl., Exh. D § 2 at 1.)

Plaintiff's vague and conclusory allegation that he was "entitled, by virtue of his position as a managing director at MMC and his years of service with MMC, to receive

---

n.1 (W.D.N.Y. 2001) (plan administrator, not the employer, is the proper defendant for an ERISA claim for benefits).

severance payments under the [SSP and the RIF Plan]," is insufficient and directly contradicted

by the plain language of the SSP and the RIF Plan. (Compl. ¶ 49.) Plaintiff does not plead (nor

could he) that MMC notified him that he was being involuntarily terminated or that he meets the

conditions for eligibility under either the SSP or the RIF Plan, including a determination by

MMC that Egan was being involuntarily terminated for one of the reasons set forth in the plans

or approval of the termination by the Director of Human Resources. *See, e.g., Karl v. ASARCO,*

*Inc.*, 1998 WL 107113, at *6 (S.D.N.Y. Mar. 11, 1998) (plaintiff ineligible for severance benefits

because he was not "separated" from employment on the bases defined in the severance plan,

despite his allegation of a constructive discharge), *aff'd*, 166 F.3d 1200 (2d Cir. 1998).

Second, plaintiff is also ineligible for benefits under the RIF Plan because it

applies only to employees selected for and notified of their involuntary termination between

November 1, 2004 and December 31, 2004. (Holtzman Decl., Exh. D § 1 at 1.) Even if plaintiff

claims that he is eligible for severance benefits because he was constructively discharged —

which clearly he is not, given that he does not in any event meet the other express eligibility

conditions set forth in the SSP and the RIF Plan — the effective date of a constructive

termination is the date that the employee actually resigns due to supposedly intolerable working

conditions. *See, e.g., Flaherty v. Metromail Corp.*, 235 F.3d 133, 138 (2d Cir. 2000) (cause of

action for constructive discharge accrued on the date that employee gave notice of her intention

to resign and "the rule should be the same in all cases of constructive discharge"). Plaintiff

resigned on April 8, 2005, well after the eligibility period under the RIF Plan.

Third, and finally, plaintiff improperly seeks to recover under both the SSP and

under the RIF Plan. (Compl. ¶¶ 49, 50.) The RIF Plan expressly states that "[a]n employee may

not receive severance benefits under both this Plan and any other Company or Company affiliate

plan, program, policy or practice providing similar benefits with respect to the same period of

employment preceding the employee's Termination Date." (Holtzman Decl., Exh. D § 2(c) at 2.)
Similarly, the SSP states that "[i]n no event will an employee be entitled to receive benefits
under both the employment agreement, other contractual arrangement, or under law, and this
Plan." (Holtzman Decl., Exh. C § 2(c) at 2.)  Plaintiff's demand for benefits under both plans
therefore should be rejected.

## II.    PLAINTIFF'S CLAIMS RELATING TO RESTRICTED STOCK AND RESTRICTED STOCK UNITS FAIL TO STATE A CLAIM BASED UPON THE PLAIN LANGUAGE OF THE APPLICABLE PLAN DOCUMENTS

In his Second Cause of Action, plaintiff alleges that MMC breached the Stock
Award Plan by claiming that plaintiff's restricted stock and restricted stock unit awards
("RSUs") were forfeited and refusing to pay dividends on the forfeited shares.  (Comp. ¶¶ 55,
21.)  This cause of action should be dismissed because it is clear from the face of the Stock
Award Plan and attendant award agreements that MMC is not in breach.

### A.    Plaintiff's Restricted Stock and Unpaid Dividends Properly Were Forfeited Upon Plaintiff's Termination

The Stock Award Plan clearly states that "[u]pon termination of employment (as
determined by the Committee) during the applicable restriction period, Restricted Stock and any
accrued but unpaid dividends or Dividend Equivalents, that is or are then subject to a risk of
forfeiture shall be forfeited[.]"  (Holtzman Decl., Exh. E § 6(d)(ii) at 8.)  The 2004 Restricted
Stock Award Agreement for the restricted stock at issue here confirms that plaintiff's restricted
stock properly was forfeited.  The restricted stock awarded in that agreement was scheduled to
vest on January 1, 2012.  (Holtzman Decl., Exh. F § I.A at 1; Compl. ¶ 18.)  Prior to such
vesting, if plaintiff "cease[s] to be an active employee of the Company . . . for any reason other
than death, permanent disability or normal or deferred retirement . . . , all of [his] rights, title and
interest in and to the restricted stock shall be forfeited."  (Holtzman Decl., Exh. F § IV.D at 2.)
Thus, for example, plaintiff would forfeit his restricted stock even if his employment were

terminated involuntarily and without cause. It is undisputed that plaintiff ceased to be an active employee of MMC prior to the applicable vesting date for reasons other than death, permanent disability or retirement. Therefore, his restricted stock and unpaid dividends properly were forfeited. *See Welland*, 2003 WL 22973574, at *12 (rejecting breach of contract claim because Stock Incentive Plan expressly provided for forfeiture of unvested restricted stock upon employee's termination).

### B.  Plaintiff's Restricted Stock Units Were Rightfully Forfeited Upon Plaintiff's Termination

The 2003 Restricted Stock Award Agreement sets forth a vesting date of January 16, 2006 but states that the employee shall not be entitled to receive any restricted stock units ("RSUs") not theretofore vested if his or her employment is terminated due to, among other things, the employee's resignation, unless the resignation is for "Good Reason." (Holtzman Decl., Exh. G § IV at 1-2.) As plaintiff resigned on April 8, 2005, prior to the January 16, 2006 vesting date, his RSUs were forfeited under the plain language of the award agreement.

This Court should reject any claim by plaintiff that he is entitled to his RSUs because he was constructively discharged, rather than resigned. The 2003 Restricted Stock Unit Award Agreement sets forth the specific definitions, requirements, and procedures to follow if plaintiff sought to claim that his supposedly involuntary resignation was for "Good Reason." (*See supra* at pp. 7-8.) But plaintiff does not plead that his resignation was a result of any of the circumstances set forth in the Good Reason provision, that he followed the required procedures, or that he provided MMC thirty days notice and an opportunity to cure. To the contrary, plaintiff's resignation was effective immediately upon delivery of his resignation letter.

*Haft v. Dart Group Corp.*, 841 F. Supp. 549 (D. Del. 1993), is instructive. In this case, the plaintiff claimed that his employer breached an Incentive Stock Agreement by seeking

to repurchase certain shares from him and refusing to issue new unrestricted certificates. *Id.* at 561. The Incentive Stock Agreement set forth only two events triggering defendant's right to repurchase plaintiff's shares — (1) if plaintiff voluntarily terminated his employment or (2) if the corporation terminated plaintiff's employment for "good cause." *Id.* at 567. Noting that "central to contract law is the notion that the parties are bound by the terms of their agreement," *id.* at 564, the Court held that the Incentive Stock Agreement unambiguously provided that only the two aforementioned events would trigger defendant's repurchase rights. *Id.* at 566. Therefore, the Court rejected defendant's argument that plaintiff's alleged breach of a separate Employment Agreement constituted "voluntary termination" for purposes of the Inventive Stock Agreement, holding that this would impermissibly "add a new and different 'triggering event' to the plain language of the [Incentive Stock Agreement]." *Id.*[3]

Likewise, in the case at hand, the 2003 Restricted Stock Unit Award Agreement sets forth the express provisions that govern plaintiff's rights in the event of a supposedly involuntary resignation. By framing his alleged resignation as a supposed constructive discharge, plaintiff is impermissibly attempting to circumvent this Good Reason provision by adding a new "triggering event." Having failed to pursue his express contractual remedies, plaintiff cannot avoid forfeiture of his RSUs. Since forfeiture of plaintiff's restricted stock, unpaid dividends, and RSUs did not constitute a breach of the Stock Award Plan and associated agreements, the Second Cause of Action therefore should be dismissed.

---

[3]     Pursuant to a choice of law provision, Delaware law controls plaintiff's second cause of action for breach of the Stock Award Plan. (Holtzman Decl., Exh. E § 10(j) at 17.)

### III.    PLAINTIFF'S THIRD CAUSE OF ACTION IS PREEMPTED BY ERISA AND SHOULD BE DISMISSSED

In his Third Cause of Action, plaintiff claims that MMC breached MMC's U.S. Retirement Program by failing to confer upon plaintiff benefits under three distinct ERISA-governed plans: the Qualified Plan, the MMC Benefit Equalization Plan ("BEP"), and the MMC Supplemental Retirement Plan ("SRP").  (Compl. ¶¶ 57-59; Holtzman Decl., Exhs. H-K.)  This claim should be dismissed without leave to amend because it is preempted by ERISA and any attempt to replead or construe the claim as an ERISA claim would be futile.

### A.    Plaintiff's Claim that MMC Breached the Retirement Program is Preempted by ERISA

Plaintiff's common law claim for breach of the Retirement Program is preempted by ERISA.  The Retirement Program expressly states that it is governed by ERISA and the Retirement Plan Administration Description, which provides information about the Qualified Plan, the BEP, and the SRP, informs employees that if they are "participant[s] in the Retirement Plan, [they] are entitled to certain rights and protections under ERISA."  (Holtzman Decl., Exh. H at 2, 6; Holtzman Decl., Exh. I at 4.)  Courts consistently recognize that such retirement programs are governed by ERISA and that claims for benefits under such plans are preempted by ERISA.  *See, e.g., Blanck v. Consolidated Edison Ret. Plan*, 2004 WL 115199, at *4 (S.D.N.Y. Jan. 26, 2004) (beneficiary's common law claim for benefits under retirement plan was preempted by ERISA); *Campbell v. Computer Task Group, Inc.*, 2001 WL 815575, at *1 (S.D.N.Y. July 19, 2001) (SERP is administered according to its terms and ERISA).

In *Pronti v. CNA Financial Corp.*, 353 F. Supp. 2d 320 (N.D.N.Y. 2005), for example, plaintiff sued his former employer for, among other things, breaching a retirement plan by failing to provide him with certain benefit accrual credit.  *Id.* at 323.  Citing the "broad preemption clause in ERISA," the court held that plaintiff's breach of contract claim was

preempted because it dealt with a pension plan covered by ERISA. *Id.* Likewise here, plaintiff's

claim for benefits under the Retirement Program should be dismissed because it is preempted.

**B.    Any Purported ERISA Claim For Retirement Benefits Would
Be Futile Because Plaintiff Has Not Elected Early Retirement
and Has Failed to Exhaust the Claims Procedure**

This Court should reject any argument by plaintiff to amend the Complaint to

substitute an ERISA claim for benefits or to construe his present claim as an ERISA claim

because plaintiff has failed to exhaust his administrative remedies. First, under the Retirement

Program, a participant who has terminated his or her employment with MMC will receive

benefits commencing at age 65 unless the participant affirmatively elects to commence receiving

benefits early (as early as age 55) by following the program's procedures. (Holtzman Decl.,

Exh. I at 2, 18.) However, plaintiff does not allege that he elected to receive benefits at or after

the time he reached 55 years of age. (Holtzman Decl., Exh. I at 18 (providing for election of

early retirement benefits on or after age 55).) Plaintiff was plainly instructed:

> [t]o receive your [retirement] benefits, please notify [MMC] in
> writing at [MMC Retirement Service Center] at least three months
> before you want benefits to begin. In your letter include: the date
> payments should begin, your Social Security Number, and your
> termination date.

(Holtzman Decl., Exh. L at 4.) Similarly, the Retirement Program reiterates that to begin

receiving a benefit under the Retirement Program, a terminated employee must send "required

information, completed forms, and related documents to the MMC Retirement Service Center" in

advance of the anticipated benefits commencement date. (Holtzman Decl., Exh. I at 14.)

Plaintiff cannot plead – and does not allege – that he followed these procedures to request

benefits under the Retirement Program.

Second, even if plaintiff had properly requested the commencement of benefits

under the Retirement Program, he has not pled – nor could he – that he has followed the requisite

20

claim procedure set forth in the plan documents for disputes related to retirement benefits. As

with the severance benefits discussed in Point I, the Retirement Plan Administration Description

provides that the Plan Administrator will consider any claim for retirement benefits, including

the review of any denial of benefits, but that "[n]o action for benefits may be brought by any

participant or beneficiary unless the plan's claims review procedure has been exhausted (that is,

all appeals of adverse decisions have been made)[.]" (Holtzman Decl., Exh. H at 4.) Since

timely exhaustion of plan remedies is a prerequisite to a civil ERISA action (*see supra*, Point I at

pp. 11-13), any ERISA claim for benefits under the Retirement Program would be futile.

Accordingly, plaintiff's Third Cause of Action should be dismissed without leave to amend.

## IV.    PLAINTIFF'S FOURTH CAUSE OF ACTION FOR ALLEGED PROMISSORY ESTOPPEL SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Plaintiff's Fourth Cause of Action for promissory estoppel alleges that in early

November 2004, Michael Cherkasky of MMC told plaintiff that he should hire an attorney and

promised him a "generous settlement."[4] (Compl. ¶¶ 28, 62.) In response, plaintiff, with the

assistance of counsel, allegedly proposed a separation agreement to MMC that included terms

related to severance payments, health benefits, and pension benefits under the Qualified Plan, the

BEP and the SRP. (Compl. ¶ 63; Exh. B to Compl.) MMC allegedly breached its promise by

"failing to offer [plaintiff] a settlement agreement and by failing to accept the settlement

agreements that [plaintiff] proffered to MMC." (Compl. ¶ 64.) This promissory estoppel claim

should be dismissed without leave to amend because it is preempted by ERISA and is otherwise

deficient as a matter of law.

---

[4]    This allegation is not true but, as it must, MMC assumes its truth for purposes of the instant motion.

**A.    Plaintiff's State Law Promissory Estoppel
Claim is Preempted by ERISA**

Plaintiff's state law promissory estoppel claim is preempted by ERISA. As set

forth previously, Congress deliberately enacted a broad preemption clause covering any state

laws that "relate to" or have a reference or connection with an employee benefit plan. *See*

29 U.S.C. § 1144(a); *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990). Like breach

of contract claims, state law promissory estoppel claims that relate to an employee benefits plan

are preempted by ERISA. *Snyder v. Elliott W. Dann Co.,* 854 F. Supp. 264, 273 (S.D.N.Y.

1994) ("As a matter of law all state common law claims of promissory estoppel, breach of

contract, or fraud are preempted by ERISA.") For example, in *Billinger v. Bell Atl.*, 240 F. Supp.

2d 274 (S.D.N.Y. 2003), *aff'd,* 124 Fed. Appx. 669 (2d Cir. 2005), the Court found that the

plaintiff's claim of promissory estoppel related to disability benefits was preempted, noting that

"even state law claims that do not explicitly refer to employee benefit plans, but which merely

arise from the administration of such plans, whether directly or indirectly, are preempted." *Id.* at

286. *See also Owen v. Georgia-Pacific Corp.*, 389 F. Supp. 2d 382, 389 (D. Conn. 2005)

(promissory estoppel claim based on "oral assurances" regarding eligibility for severance

benefits preempted by ERISA because it related to a severance plan); *Sandler v. Marconi Cir.*

*Tech. Corp.*, 814 F. Supp. 263, 265 (E.D.N.Y. 1993) (promissory estoppel claim alleging oral

agreement regarding retirement plan preempted by ERISA).

Plaintiff's promissory estoppel claim similarly is preempted because it plainly

relates to MMC's employee benefit plans. The promise for which plaintiff is claiming damages

is that MMC would provide plaintiff with a "generous" separation agreement and the agreement

that plaintiff suggests that MMC wrongfully rejected contained numerous provisions regarding

severance, medical, and pension benefits. Therefore, under ERISA's broad preemption clause,

plaintiff's state law claim of promissory estoppel is preempted and should be dismissed. *See Morlino v. Staten Island Univ. Hosp.*, 1998 WL 160937, at *9 (E.D.N.Y. Apr. 1, 1998) (rejecting claim of promissory estoppel where plaintiff claimed that "the alleged breach [was] of the separation agreement, not of the defendant's ERISA plan," finding that even though "plaintiff relie[d] on the separation agreement for his contractual rights, they are not independent of the rights and duties created by defendant's ERISA plan"), *aff'd*, 173 F.3d 845 (2d Cir. 1999).

### B.    Plaintiff's State Law Promissory Estoppel Claim is Deficient as a Matter of Law

Setting aside preemption, plaintiff's state law promissory estoppel claim cannot stand as a matter of law. Initially, "New York law does not recognize promissory estoppel as a valid cause of action in the employment context." *Weinberg v. Mizuho Capital Mkts. Corp.*, 2003 WL 22462022, at *7 (S.D.N.Y. Oct. 30, 2003) (Scheindlin, J.) (citation omitted). *See also Bessemer Trust Co. v. Branin*, ___ F. Supp. 2d ___, 2007 WL 2142306, at *5 (S.D.N.Y. July 23, 2007); *Deutsch v. Kroll Assocs. Inc*, 2003 WL 22203740, at *4 (S.D.N.Y. Sept. 23, 2003) (dismissing claim of promissory estoppel for failure to pay severance benefits based upon alleged oral promises); *Phansalkar v. Anderson Weinroth & Co., L.P.*, 2002 WL 1402297, *17 (S.D.N.Y. June 26, 2002) (Scheindlin, J.), *vacated & remanded in part on other grounds*, 344 F.3d 184 (2d Cir. 2003); *Miller v. Citicorp*, 1997 WL 96569, at *1, *10 (S.D.N.Y. Mar. 4, 1997).

Even if such a claim could be pursued in the employment context, the facts alleged by plaintiff cannot satisfy the requirements for a promissory estoppel claim under New York law. The elements of a promissory estoppel claim are: "(1) a clear and unambiguous promise, (2) reasonable and foreseeable reliance by the party to whom the promise is made, and (3) an injury sustained in reliance on that promise." *Shapira v. Charles Schwab & Co.*, 225 F. Supp. 2d 414, 419 (S.D.N.Y. 2002).

First, plaintiff has not alleged a clear and unambiguous promise. In *Zikakis v. Staubach Retail Services, Inc.*, 2005 WL 2347852 (S.D.N.Y. Sept. 26, 2005), for example, plaintiff alleged that defendant improperly used plaintiff's novel idea of forming a particular real estate investment trust. *Id.* at *1. When defendant thereafter formed its own business supposedly "parroting" plaintiff's idea, plaintiff filed numerous claims, including a promissory estoppel claim. *Id.* at *2, *6. The Court granted defendant's motion to dismiss the promissory estoppel claim because there were no allegations of a "clear and unambiguous promise." *Id.* at *6. Indeed, the Court noted that plaintiff did not allege that he received any "term sheet" describing a proposed business relationship between the parties and the discussions supposedly surrounding this alleged term sheet "were too vague to support a claim for promissory estoppel." *Id.* Therefore, the promissory estoppel claim was dismissed for failure to state a claim. *Id.*

Similarly, the only promise alleged in the case at hand is a vague assurance by Cherkasky that MMC would reach a "generous settlement" with plaintiff. (Compl. ¶ 62.) Plaintiff does not allege any particulars about the terms, timing or scope of the supposed "generous" settlement. As in *Zikakis*, this amorphous representation is hardly a clear and unambiguous promise.

Second, plaintiff has not pled facts that could support a finding that he was injured by reason of his reliance upon the promise supposedly made by Cherkasky. Plaintiff does not allege that he took any action with respect to his employment at MMC in reliance upon Cherkasky's supposed promise of an eventual settlement. He certainly does not claim that he was induced to submit his resignation on April 8, 2005 in reliance upon this supposed promise. Indeed, he pleads just the opposite — that he resigned because Cherkasky stated that MMC "could no longer talk to Egan about the Separation Agreement." (Compl. ¶¶ 36-37.) Nor does plaintiff allege that, in reliance upon MMC's supposed promise, he sacrificed or rejected other

business or retirement opportunities. *Cf. Herter v. Dick's Clothing & Sporting Goods, Inc.*, 58 F.

Supp. 2d 306, 312 (S.D.N.Y. 1999) (rejecting promissory estoppel claim because the "the

alleged promise to pay benefits did not induce Plaintiff to do anything" such as changing his

position in reliance on the promise). In sum, plaintiff's promissory estoppel claim should be

dismissed because he does not set forth any factual allegations that would support a finding that

he was injured by relying upon MMC's alleged promise.[5]

## CONCLUSION

For the foregoing reasons, defendant MMC respectfully requests that this Court:

(1) dismiss the First Cause of Action to the extent it seeks recovery for alleged breaches of the

SSP and the RIF Plan; (2) dismiss the Second, Third and Fourth Causes of Action; and (3) grant

such other relief as the Court may deem just and proper.

Dated:  New York, New York
        September 10, 2007

                              KRAMER LEVIN NAFTALIS & FRANKEL LLP


                              By:_____s/ Robert N. Holtzman_____
                                        Barry H. Berke (BB 1421)
                                        Robert N. Holtzman (RH 9525)
                                        Jennifer Rochon (JR 3097)
                                        1177 Avenue of the Americas
                                        New York, New York 10036
                                        (212) 715-9100
                                        Attorneys for Defendant Marsh &
                                        McLennan Companies, Inc.

---

[5]     Although promissory estoppel can apply in "extraordinary circumstances" in the ERISA
context, plaintiff has failed to, and cannot, allege facts illustrating such circumstances in addition
to the state law elements discussed above. *See, e.g., Devlin v. Transportation Commc'ns Int'l
Union*, 173 F.3d 94, 102 (2d Cir. 1999). Courts in this Circuit have found such "extraordinary
circumstances only in cases where an employer reneged on a promise made with the intention of
inducing employees to take actions [benefiting] the employer, such as joining the company or
accepting early retirement." *Bell v. Pfizer Inc.*, 2007 WL 1610205, at *3 (S.D.N.Y. June 1,
2007) (collecting cases). No such facts have been alleged in this case.