# EXHIBIT E



Marsh & McLennan Companies, Inc.
1166 Avenue of the Americas
New York, New York 10036-2774
212 345 5000  Fax  212 345 4838

www.mmc.com

# News Release

**Media Contacts:**
Barbara Perlmutter     Jim Fingeroth
MMC                    Kekst and Company
(212) 345-5585         (212) 521-4819

**Investor Contact:**
Mike Bischoff
MMC
(212) 345-5470

## MMC ANNOUNCES MANAGEMENT CHANGES

NEW YORK, NEW YORK, November 8, 2004—Marsh & McLennan Companies, Inc. (MMC) reported today that Roger E. Egan, president and chief operating officer of Marsh Inc., its risk and insurance services subsidiary, and Christopher M. Treanor, Marsh Inc.'s chairman and chief executive officer of Global Placement, have been asked to step down from their positions but will help with transition.

Peter F. Garvey, president and chief executive officer of Marsh's North American Operations, and William A. Malloy, president and chief executive officer of Marsh's Europe and Middle East Operations, have been promoted to co-presidents of Marsh Inc., and Philip V. Moyles, Jr., chairman of Client Development-North America, has been promoted to executive vice president of Marsh Inc.

Michael G. Cherkasky, president and chief executive officer of MMC and chairman and chief executive officer of Marsh Inc., said: "These management decisions were difficult and were not based on any suggestion of culpability. However, at the end of the day, Mr. Egan and Mr. Treanor were accountable for the areas of the business that have been the focus of investigations by the New York Attorney General's office, and therefore, we thought it was appropriate to make these changes. Pete, Bill, and Phil are highly capable, experienced managers, and I have full confidence in their abilities."

Separately, William L. Rosoff has stepped down as senior vice president and general counsel of MMC. Mr. Rosoff will help with transition.

MMC is a global professional services firm with annual revenues exceeding $11 billion. It is the parent company of Marsh Inc., the world's leading risk and insurance services firm; Putnam Investments, one of the largest investment management companies in the United States; and Mercer Inc., a major global provider of consulting services. More than 63,000 employees provide analysis, advice, and transactional capabilities to clients in over 100 countries. Its stock (ticker symbol: MMC) is listed on the New York, Chicago, Pacific, and London stock exchanges. MMC's website address is www.mmc.com.

This press release may contain forward-looking statements, which by their very nature involve risks and uncertainties. Please refer to Marsh & McLennan Companies, Inc.'s most recent Current Reports on Form 8-K for "Information Concerning Forward-Looking Statements" and a description of factors that may cause actual results to differ from those contemplated by such statements.

# EXHIBIT F

Roger E. Egan
2 Hartley Farms Road
Morristown, New Jersey 07960

April 8th, 2005

Mr. Michael G. Cherkasky
President and Chief Executive Officer
Marsh & McLennan Companies, Inc.
1166 Avenue of the Americas
New York, N.Y. 10036-2774

Dear Mike:

It is with deep regret that I submit my resignation from employment by Marsh, Inc. as of today – April 8th, 2005.

As you know, I have been frustrated by the circumstances at Marsh & McLennan Companies, Inc. (the "Company") that have prevented us from even discussing a fair separation agreement that ends a 32 year career of faithful service.

I hope you appreciate my need to get on with my life.

While I take this step, I am sincerely hopeful given all that has been said to me, that I will retain rights I have under existing agreements and policies at the Company. I hope the Company is willing to accept my resignation while leaving open for further discussion between us the terms of my separation from the Company.

I would appreciate confirmation of the Company's willingness to have discussions about a fair separation agreement in the near future, as well as confirmation that I am entitled to COBRA continuation coverage in accordance with applicable law.

Mike, I look forward to hearing from you.

Sincerely,

R E Egan

# EXHIBIT G

# MARSH USA INC. SEVERANCE PAY PLAN

Amended and restated as of October 1, 2003.

## 1. Purpose

This Severance Pay Plan (the "Plan"), as amended and restated, has been adopted by Marsh USA Inc. (the "Company") to provide financial assistance to eligible employees of the Company who are notified of their involuntary termination on or after October 1, 2003 under the circumstances described herein.

This Plan supersedes all previous policies, practices, programs or plans that may have been followed by the Company (or any predecessor, merged or acquired entity) for employees covered by this Plan.

This document constitutes both the plan document and summary plan description required under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). In the event of any conflict between the provisions of this document and any other communication, the provisions of this document will govern.

## 2. Eligibility

a. In General

Except as otherwise provided in this Section 2, an employee who is classified and treated by the Company as a salaried employee and is currently employed by the Company in the United States may be eligible for severance benefits under this Plan if the following conditions are met:

(i) the Company has determined, in its sole discretion, that the employee lacks the job skills required for the job even though the employee is diligently attempting to perform the essential functions of the job but is unable to do so through no fault of his/her own, or the employee has been separated from the Company through no fault of the employee as a result of a restructuring or downsizing program, closing of a facility, reorganization, or because the employee's position has been eliminated;

(ii) the employee remains in his/her position in good standing, in the sole discretion of the Company, until the last day of employment with the Company as designated by the Company ("Termination Date"); and

(iii) the employee reconciles his/her expense account, returns any financial advances and Company property, and repays any personal loans on or before his/her Termination Date or the date designated by the Company, whichever is earlier.

b. Exclusions

An individual is not eligible for benefits under this Plan if:

(i) he/she is classified by the Company as an hourly or temporary employee, independent contractor or consultant, agency worker or leased employee; or

(ii) his/her termination is a result of voluntary resignation, retirement or other voluntary termination of employment, failure to return from a vacation or an approved leave of absence, or death; or

(iii) his/her termination is for cause, which, for purposes of this Plan, includes, but is not limited to (whether work-related or not), a termination for: insubordination; dishonesty; theft; willful misconduct; failure to comply with Company policies or guidelines; harassment; fighting or other violent or threatening behavior; excessive absenteeism or tardiness; falsification of records such as employment applications, travel and entertainment records, reports of work hours and client related expenses; commission of an act rising to the level of a crime; or being under the influence of illicit drugs or alcohol at work or on the Company's premises. In addition, documented poor performance may be considered termination for "cause." Determinations regarding what constitutes "cause" shall be made by the Plan Administrator (or its delegate) in its sole discretion; or

(iv) he/she transfers within the Company or any related company, including a successor to all or a part of the Company (following for example, a sale, divestiture or merger of all or part of the Company's business or assets, acquisition, or any other form of corporate reorganization), whether or not the position is comparable or better; or

(v) the Company obtains a comparable or better position for the employee with an unrelated company, and the employee accepts the position; or

(vi) he/she has been offered a comparable or better position or a reasonable change of work assignment with the Company or any entity related to the Company or its parent company, which is within a 50 mile radius of the location of the previous position, whether or not he/she accepts such position. The conditions in this subparagraph (vi) apply to both active employees and to employees returning from an authorized leave of absence within twelve (12) months after the commencement of such leave. The determination of whether a position is comparable or better or a reasonable change of work assignment, for purposes of this Plan, will be made by the Plan Administrator (or its delegate) in its sole discretion; or

(vii) his/her selection for involuntary termination is revoked by the Company prior to the Termination Date; or

(viii) at the time of his/her selection for involuntary termination, he/she has been out of the office on a leave of absence, whether paid or unpaid, including a disability leave of absence, for a period of six (6) months or more; or

(ix) he/she commences new employment prior to the Termination Date.

c. In addition, an employee may not be eligible for severance benefits under this Plan if he/she is entitled to severance/notice pay as a matter of law, or is covered by an individual employment agreement or any other contractual arrangement:

(i) providing for continuation of salary and/or other payments or benefits if he/she is terminated before a certain date and/or providing for severance benefits; or

(ii) where the Company would be obligated to continue his/her salary and/or other payments or benefits after his/her termination because of a contractual guarantee; or

(iii) where the employee has executed or entered into a Memorandum of Agreement or other agreement with a company acquired by the Company or by a related company that provides for a termination notice period of greater than fifteen (15) days.

In that case, the employee will be eligible to receive the greater of: (A) the benefits provided for under the employment agreement or other contractual arrangement or the severance/notice pay to be provided as a matter of law; or (B) provided the employee executes a Waiver and Release Agreement in the form and within the time required by the Company, the benefits provided for under this Plan. In no event will an employee be entitled to receive benefits under both the employment agreement, other contractual arrangement, or under law, and this Plan.

### 3. Severance Benefits

The following severance benefits are provided for under this Plan. If, by virtue of the nature of the employee's termination, he/she is eligible for notice of termination pursuant to the federal Worker Adjustment Retraining & Notification Act ("WARN") or any similar state or local plant or facility closing law, his/her severance benefits under this Plan shall be reduced by such statutory notice entitlement.

a. Basic Severance Benefit

Except as otherwise provided in this Section 3, an employee who meets the eligibility requirements of Section 2 above ("Plan Participant") will be eligible to receive Basic Severance Pay equal to two (2) weeks' Base Salary (as defined below).

b. Enhanced Severance Benefits

In lieu of the Basic Severance Benefit described above, a Plan Participant who executes and returns a Waiver and Release Agreement in the form and within the time required by the Company, the terms of which are incorporated herein by reference and which may include, without limitation, non-solicitation provisions, will be eligible to receive Enhanced Severance Benefits as follows:

(i) Enhanced Severance Pay

With the exception of Managing Directors, a Plan Participant eligible for Enhanced Severance Pay will receive Enhanced Severance Pay based on the chart below and the Plan Participant's Base Salary, as defined below. In no event, however, will Enhanced Severance Pay exceed one (1) year's Base Salary. Managing Directors eligible for Enhanced Severance Pay will receive one (1) year's Base Salary.

| Title | Enhanced Severance<br>The greater of: |
|---|---|
| Non-officer | 2 weeks' of Base Salary per Year of Service* OR 1 month's Base Salary |
| Assistant Vice President | 2 weeks' of Base Salary per Year of Service* OR 3 months' Base Salary |
| Vice President | 2 weeks' of Base Salary per Year of Service* OR 6 months' Base Salary |
| Senior Vice President | 2 weeks' of Base Salary per Year of Service* OR 9 months' Base Salary |
| Managing Director | 12 months' Base Salary |

*To a maximum of one (1) year's Base Salary.

- For purposes of determining the amount of Basic or Enhanced Severance Pay a Plan Participant is eligible to receive under the terms of this Plan, the term "Base Salary" means such Plan Participant's base salary including any applicable shift differential, but exclusive of overtime compensation, commissions, bonuses, other payments, or any fringe benefits or other forms of remuneration, as in effect on the Plan Participant's Termination Date. Any performance/merit reviews that are pending or in process as the Termination Date also shall not be taken into account in determining a Plan Participant's Base Salary or the amount of Severance Pay. For a Plan Participant who has switched from part-time to full-time, or vice verse, during the twelve (12) month period preceding his/her Termination Date, his/her Base Salary shall be determined using the weighted average of his/her base salary during such prior twelve (12) month period.

- In addition, for purposes of determining the amount of Enhanced Severance Pay a Plan Participant is eligible to receive under the terms of this Plan, a Plan Participant will be credited with a Year of Service for each completed twelve (12) month period with the Company or any related company as measured from the Plan Participant's date of hire through the end of any Basic Severance period. Further, if a Plan participant has worked for a partial year of service, he/she will be credited with 1/12 of a Year of Service for each completed month or portion thereof. For rehires or employees with a change in employment status, the start dates of service for purposes of calculating severance will be the benefit vesting date under the general service rules applicable to the Marsh & McLennan Companies, Inc., United States Retirement Program. If applicable, appropriate service will be granted for continuous service with predecessor companies acquired by a Marsh & McLennan company. Notwithstanding the above, in no event will a Plan Participant be credited with Years of Service for any period for which the Plan Participant already received severance pay from the Company, any related company or any predecessor of the Company or related company.

(ii) Outplacement Counseling

A Plan Participant eligible for Enhanced Severance Pay will be eligible to receive, upon request, outplacement benefits at the Company's expense, at a level, for a duration (as set forth below), and by an outplacement Company to be selected by the Plan Administrator. Outplacement counseling must commence no later than sixty (60) days following the Termination Date. If the Plan Participant chooses not to participate in outplacement counseling as offered under this Plan, the Company will not provide the Plan Participant with any additional compensation in lieu thereof.

| Title | Outplacement Benefit |
|---|---|
| Non-Officer | 1-2 Day Program |
| Assistant Vice President or Vice President | 3 Month Program |
| Senior Vice President or Managing Director | 6 Month Program |

## 4. Manner Of Payment
Payment of Basic Severance Pay under this Plan will be made in a lump-sum payment, less applicable withholdings, on or about the 30th calendar day following the Termination Date.

Enhanced Severance Pay payable pursuant to the terms of a signed Waiver and Release Agreement will not be paid until such Agreement is executed, returned to the Company, and becomes effective by its terms. Subject to the foregoing, such Enhanced Severance Pay will be paid in a lump sum, less applicable withholdings, on or about the 30th calendar day following the receipt of the signed Waiver and Release Agreement by the Company.

## 5. Payment Offsets
The Company reserves the right to reduce any severance benefit paid under this Plan to the extent necessary to take into account any of the following: any outstanding financial obligations(s) that the employee has to the Company, including, but not limited to, expense account balances, employee loans, relocation allowances, employee advances (including tuition advances and vacation or sick days taken in advance of their being earned by the employee) and the value of any computer hardware or software, communications equipment or other Company-provided property in the individual's possession that he/she has failed to return to the Company as of the Termination Date or the date designated by the Company, whichever is earlier.

The determination of any such severance benefit reductions will be made by the Plan Administrator (or its delegate) in its sole discretion.

## 6. If An Employee Is Re-Employed By The Company
Any re-employment in any capacity of a terminated employee must be approved by the Human Resources Director, North American Operations, and the Senior Business Manager of the Company. If an employee accepts re-employment with the Company, its parent or any affiliate or subsidiary of the Company, or becomes an independent contractor to or consultant for the Company, its parent or any affiliate or subsidiary of the Company prior to the expiration of the period commensurate with which Enhanced Severance is paid to him/her, he/she may be required to refund all or a pro-rata portion of the Enhanced Severance Pay to the Company as a condition of re-employment (i.e., the amount paid in excess of the actual period of unemployment). Any amount required to be refunded will be determined by the Plan Administrator (or its delegate) in its sole discretion. Should such employment be accepted, and should an employee be required to refund all or a pro-rata portion of such payments to the Company, such circumstances will not affect the validity of the Waiver and Release Agreement previously executed by the employee.

## 7. Effect On Other Benefits
Except as may otherwise be provided under this Plan or under any other applicable Company plan(s), or required by applicable law, all Company-provided benefits will terminate on the Plan Participant's Termination Date.

## 8. Source Of Benefits
Benefits under this Plan will be paid from the general assets of the Company. No assets or funds with respect to any such benefits will be segregated by the Company in any fund, account or trust. A Plan Participant shall have no greater claim against the assets of the Company than as a general unsecured creditor.

## 9. Administration
The Plan will be administered by the Company. As Plan Administrator, the Company has delegated responsibility for the day-to-day administration of the Plan to the Human Resource Director, North American Operations.

The Company and/or the Human Resources Director, North American Operations, may appoint or employ such persons as either deems necessary to render advice with respect to any responsibility of either

under the Plan. Both the Company and the Human Resources Director, North American Operations, may delegate to any one or more of the Company's employees any responsibility it may have under the Plan and may designate any other person or persons to carry out any responsibility of either under the Plan.

Acting on behalf of the Company, the Human Resources Director, North American Operations, shall make the rules and regulations necessary to administer the Plan. The Company and the Human Resources Director, North American Operations, shall have the discretionary authority and responsibility to determine eligibility for benefits and the amount of such benefits, and to construe the terms of the Plan. The determinations and constructions of the Company or the Human Resources Director, North American Operations, as the case may be, will be final, binding and conclusive as to all parties, unless found by a court of competent jurisdiction to be arbitrary and capricious. Any delegation of the Company's or the Human Resources Director, North American Operations, shall carry such discretionary authority as the Company of the Human Resources Director, North American Operations, possesses regarding the matter unless otherwise specified.

Correspondence regarding this Plan should be addressed to:

Marsh USA Inc. Severance Pay Plan
c/o Human Resources Director,
North American Operations
Marsh USA Inc.
1166 Avenue of the Americas
New York, New York 10036-2708
(212) 345-6000

10. Claims Procedure
An employee who is eligible for benefits under this Plan will be notified and provided with any forms required in connection with receipt of Plan benefits, including if applicable, a Waiver and Release Agreement. If such employee disagrees with the determination of his/her benefits, he/she may, within thirty (30) days of receipt of the initial notification, submit a written statement to the Plan Administrator describing the basis of his/her claim for benefits, together with any documents which he/she believes supports his/her claim. Any employee who is not so notified but believes that he/she is entitled to benefits under the Plan may, within thirty (30) days of such employee's Termination Date, submit a written statement to the Plan Administrator describing the basis of his/her claim for benefits and requesting any forms required in connection with payment of such benefits.

If any claim for severance benefits is wholly or partially denied, the Plan Administrator shall notify the claimant within ninety (90) days after the written claims statement is submitted, or within ninety (90) days after any required forms are filed, if later (except that in special circumstances the Plan Administrator may take an additional ninety (90) days to consider its decision, in which case the employee will be notified of the extension). Such notification shall set forth: (1) the specific reasons for the denial (including reference to any pertinent Plan provisions on which the denial is based); (2) if applicable, a description of any additional material or information necessary for the claimant to perfect the claim, and an explanation of why such material or information is necessary; and (3) the claims review procedure and (4) a statement of the claimant's right to bring a civil action under Section 502(a) of ERISA if the claim is denied following a review on appeal.

Any employee whose claim for benefits under this Plan is denied may make a written request to the Plan Administrator, within sixty (60) days after such denial, for a review of the denial. Any such request must include any evidence relevant to the claim and may include a request for pertinent documents. The employee claiming benefits shall be notified of the final decision of the Plan Administrator within sixty (60) days after his/her request for a review is received. However, if the Plan Administrator finds it necessary to extend this period due to special circumstances and so notifies the claimant in writing, the decision shall be rendered as soon as practicable, but in no event later than one hundred and twenty (120) days after the claimant's request for review. The decision shall be in writing and shall set forth the specific

reasons for the denial (including reference to any pertinent Plan provisions on which the denial is based) and a statement of the claimant's right to bring a civil action under Section 502(a) of ERISA.

The Plan Administrator's decision on claims shall be final, binding, and conclusive on all interested persons unless found by a court of competent jurisdiction to be arbitrary and capricious.

## 11. Amendment Or Termination Of This Plan

The Company, acting through the Human Resources Director, North American Operations, reserves the right, whether in an individual case or more generally, to amend or terminate this Plan, and/or to alter, reduce or eliminate any pay practice, policy or benefit, in whole or in part, with or without advance notice; provided, however, that no such amendment or termination shall adversely affect the benefits payable with respect to any Plan Participant who has a Termination Date prior to the adoption of such amendment or termination. The Company may award additional benefits, whether on an individual basis or more generally, under this Plan on a discretionary basis.

## 12. Withholding Of Taxes

The Company will withhold, or cause to have withheld, all applicable income and payroll taxes from any severance pay benefit paid under this Plan to the extent required by law. Federal income taxes will be withheld at the flat tax rate established under the Internal Revenue Code.

## 13. General Information

The following pages describe other information a Plan Participant should know about the Plan.

Plan Sponsor
    Marsh USA Inc.
    1166 Avenue of the Americas
    New York, New York 10036-2708
    (212) 345-6000

Plan Administrator
    Marsh USA Inc.
    1166 Avenue of the Americas
    New York, New York 10036-2708
    (212) 345-6000

An employee may contact the Plan Administrator by writing to the Human Resources Director, North American Operations, at the above address.

Type of Plan
    The Plan is a severance plan.

Effective Date
    The Plan was originally effective as of February 1, 2001. This amendment and restatement of the Plan is effective as of July 1, 2002.

Plan Year
    The Plan's records are kept on a calendar year basis.

Plan Identification
    The official name of the Plan is the Marsh USA Inc. Severance Pay Plan. The Internal Revenue Service identifies Marsh USA Inc. by the number 36-1436000 and the Department of Labor identifies the Plan by the plan number 501.

Legal Service

It is hoped that legal action with regard to the Plan will not be considered necessary. However, if legal action does become necessary, the agent named for service of process is:

Barbara H. Frank, Esq.
Vice President and Counsel
Marsh & McLennan Companies, Inc.
1166 Avenue of the Americas
New York, New York 10036-2708

Additionally, legal service may be served upon the Plan Administrator.

14. ERISA Rights

As a participant in the Marsh USA Inc. Severance Pay Plan, an employee is entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). ERISA provides that a Plan Participant shall be entitled to:

Receive Information About the Plan and Benefits

- Examine without charge, at the Plan Administrator's office and at other specified locations such as worksites, all documents governing the Plan, including insurance contracts and a copy of the latest annual report (Form 5500 Series), if any, filed by the Plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Pension and Welfare Benefit Administration; and
- Obtain upon written request to the Plan Administrator, copies of all documents governing the operation of the Plan, including insurance contracts and copies of the latest annual report (Form 5500 Series), if any, and updated Summary Plan Description. The Plan Administrator may make a reasonable charge for the copies.

Prudent Action by Plan Fiduciaries

In addition to creating rights a Plan Participant, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate the Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of a Plan Participant and beneficiaries. No one, including an individual's employer, or any other person, may fire an employee or otherwise discriminate against an employee in any way to prevent an employee from obtaining a severance benefit or exercising an employee's rights under ERISA.

Enforce an Employee's Rights

If an employee's claim for severance benefits is denied or ignored, in whole or in part, the employee has a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps an employee can take to enforce the above rights. For instance, if an employee requests a copy of Plan documents or the latest annual report from the Plan and does not receive them within thirty (30) days, the employee may file suit in a Federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay the employee up to one hundred and ten dollars ($110) a day until the employee receives the materials, unless the materials were not sent for reasons beyond the control of the Plan Administrator. If an employee has a claim for benefits which is denied or ignored, in whole or in part, the employee may file suit in a state or Federal court. In addition, if an employee disagrees with the Plan's decision or lack thereof concerning the qualified status of a domestic relations order or a medical child support order, the employee may file suit in Federal court. If it should happen that Plan fiduciaries misuse the Plan's money, or if an employee is discriminated against for asserting his/her rights, the employee may seek assistance from the U.S. Department of Labor, or an employee may file suit in a Federal court. The court will decide who should pay court costs and legal fees. If the employee is successful, the court may order the person the employee has sued to pay these costs and fees. If the employee loses, the court may order the employee to pay these costs and fees, for example, if it finds the employee's claim is frivolous.

**Assistance with Questions**

If an employee has any questions about the Plan, the employee should contact the Plan Administrator:

> Human Resources Director
> North American Operations
> Marsh USA Inc.
> 1166 Avenue of the Americas
> New York, New York 10036-2708
> (212) 345-6000

If an employee has any questions about this statement or about an employee's rights under ERISA, or if an employee needs assistance in obtaining documents from the Plan Administrator, the employee should contact the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in the telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue, N.W., Washington, D.C. 20210. An employee may also obtain certain publications about an employee's rights and responsibilities under ERISA by calling the publications hotline of the Pension and Welfare Benefits Administration.

**Governing Law**

To the extent that this Plan is not governed by federal law, the law of the State of New York shall govern.

# EXHIBIT H

# MARSH INC. FALL 2004 RESTRUCTURING SEVERANCE PAY PLAN

## 1. Purpose

This Severance Pay Plan (the "Plan") has been adopted by Marsh Inc. (the "Company") to provide financial assistance to eligible employees of the Company and its subsidiaries who are selected for and notified of their involuntary termination between November 1, 2004 and December 31, 2004, in connection with the Company's Fall 2004 restructuring under the circumstances described herein.

This Plan supersedes all previous policies, practices, programs or plans that may have been followed by the Company (or any predecessor, merged or acquired entity) for employees covered by this Plan.

This document constitutes both the plan document and summary plan description required under the Employee Retirement Income Security Act of 1974, as amended. In the event of any conflict between the provisions of this document and any other communication, the provisions of this document will govern.

## 2. Eligibility

### a. In General

Except as otherwise provided in this Section 2, an employee who is classified and treated by the Company as a salaried employee and is currently employed by the Company in the United States may be eligible for severance benefits under this Plan if the following conditions are met:

(i) the Company has determined, in its sole discretion, that (A) it is in the interests of the Company to include the employee in the group of employees to be involuntarily terminated in connection with the Company's Fall 2004 restructuring; and (B) the employee's manager selects the employee for involuntary termination and the Director of Human Resources for Marsh Inc. approves that selection during the period from November 1, 2004 through December 31, 2004 due to the changing needs of the business, including but not limited to a determination that the employee lacks the job skills required for the job, changes in the job skills required for the employee's job, changes in the structure of the business, the need for downsizing, closing of a facility, or elimination of the employee's position;

(ii) the employee remains in his/her position in good standing, in the sole discretion of the Company, until the last day of employment with the Company as designated by the Company ("Termination Date"); and

(iii) the employee reconciles his/her expense account, returns any financial advances and Company property, and repays any personal loans on or before his/her Termination Date or the date designated by the Company, whichever is earlier.

### b. Exclusions

An individual is not eligible for benefits under this Plan if:

(i) he/she is classified by the Company as an hourly or temporary employee, independent contractor or consultant, agency worker or leased employee (without regard to a subsequent reclassification of such worker following an administrative or judicial adjudication requiring such reclassification);

(ii) his/her termination is a result of voluntary resignation, retirement or other voluntary termination of employment, failure to return from a vacation or an approved leave of absence, or death;

(iii) his/her termination is for cause, which, for purposes of this Plan, includes, but is not limited to (whether work-related or not), a termination for: insubordination; dishonesty; theft; willful misconduct; failure to comply with Company policies or guidelines; harassment and/or discrimination; fighting or other violent or threatening behavior; excessive absenteeism or tardiness; falsification of records such as employment applications, travel and entertainment records, reports of work hours and client related expenses; commission of an act rising to the level of a crime; or being under the influence of illicit drugs or alcohol at work or on the Company's premises.  In addition, documented poor performance may be considered termination for "cause";

(iv) he/she transfers within the Company or to any related company, including a successor to all or a part of the Company (following for example, a sale, divestiture or merger of all or part of the Company's business, stock or assets, an acquisition, or any other form of corporate reorganization), whether or not the position is comparable or better;

(v) the Company obtains a comparable or better position for the employee with an unrelated company, and the employee accepts the position;

(vi) he/she has been offered a comparable or better position or a reasonable change of work assignment with the Company or any entity related to the Company or its parent company which is within a 50 mile radius of the location of the previous position, whether or not he/she accepts such position.  The conditions in this subparagraph (vi) apply to both active employees and to employees returning from an authorized leave of absence within twelve (12) months after the commencement of such leave;

(vii) his/her selection for involuntary termination is revoked by the Company prior to the Termination Date;

(viii) at the time of his/her selection for involuntary termination, he/she has been out of the office on a leave of absence, whether paid or unpaid, including a disability leave of absence, for a period of six (6) months or more;

(ix) he/she commences new employment prior to the Termination Date;

(x) he/she is covered by an individual employment agreement or any other contractual arrangement (A) providing for continuation of salary and/or other payments or benefits if he/she is terminated before a certain date and/or providing for severance benefits and/or providing for compensation or benefits in lieu of severance benefits; (B) where the Company would be obligated to continue his/her salary and/or other payments or benefits after his/her termination because of a contractual guarantee; or (C) where the employee has executed or entered into a Memorandum of Agreement or other agreement with a company acquired by the Company or by a related company that provides for a termination notice period of greater than fifteen (15) days; or

(xi) he/she is entitled to severance/notice pay as a matter of law that is greater than the benefits provided for under this Plan.  For example, if an employee is eligible for severance/notice pay as a matter of law (e.g., notice of termination pursuant to the federal Worker Adjustment Retraining & Notification Act ("WARN") or any similar state or local plant or facility closing law), and he/she is also eligible for and satisfies all requirements necessary to receive Plan benefits, and his/her Plan benefits are greater than the benefits required as a matter of law, then his/her Plan benefits shall be deemed to include the benefits required by law.  In no event shall an employee be eligible to receive severance benefits under law and this Plan.

c. An employee may not receive severance benefits under both this Plan and any other Company or Company affiliate plan, program, policy or practice providing similar benefits with respect to the same period of employment preceding the employee's Termination Date.

### 3. Severance Benefits

The following severance benefits are provided for under this Plan.

#### a. Basic Severance Benefit

Except as otherwise provided in this Section 3, an employee who meets the eligibility requirements of Section 2 above ("Plan Participant") will be eligible to receive Basic Severance Pay equal to two (2) weeks' "Base Salary" as defined in Section 3(b)(iv).

#### b. Enhanced Severance Benefits

In lieu of the Basic Severance Benefit described in Section 3(a) above, a Plan Participant who executes, returns and does not revoke a Waiver and Release Agreement in the form and within the time required by the Company including, without limitation, non-solicitation provisions, will be eligible to receive Enhanced Severance Benefits to include Enhanced Severance Pay, Supplemental Severance Pay and Outplacement Counseling as described below. In no event, however, will the sum of a Plan Participant's Enhanced Severance Pay plus Supplemental Severance Pay exceed two (2) years' "Annual Compensation" as defined in Section 3(b)(iv).

##### (i) Enhanced Severance Pay

A Plan Participant who is eligible for Enhanced Severance Benefits will receive Enhanced Severance Pay as determined under the chart below. In no event will a Plan Participant's Enhanced Severance Pay exceed 12 months of Base Salary. For the purposes of determining a Participant's Enhanced Severance Pay, the terms "Base Salary" and "Year of Service" have the meaning set forth in Section 3(b)(iv).

| Officer Title | Enhanced Severance Pay<br>(Subject to a maximum of one (1) year's Base Salary) |
|---|---|
| Non-officer | 2 weeks Base Salary per Year of Service OR 1 month's Base Salary, whichever is greater |
| Assistant Vice President | 2 weeks Base Salary per Year of Service OR 3 months' Base Salary, whichever is greater |
| Vice President | 2 weeks Base Salary per Year of Service OR 6 months' Base Salary, whichever is greater |
| Senior Vice President | 2 weeks Base Salary per Year of Service OR 9 months' Base Salary, whichever is greater |
| Managing Director | 12 months' Base Salary |

##### (ii) Supplemental Severance Pay

A Plan Participant who is eligible for Enhanced Severance Benefits will receive Supplemental Severance Pay equal to sixty percent (60%) of the Participant's "2003 Bonus Award," if any. For the purposes of determining a Participant's Supplemental Severance Pay, the term "2003 Bonus Award" has the meaning set forth in Section 3(b)(iv).

##### (iii) Outplacement Counseling

A Plan Participant who is eligible for Enhanced Severance Benefits will be eligible to receive, upon request, outplacement counseling benefits provided by an outplacement company to be selected by the Plan Administrator at the Company's expense at a level and for the time period set forth in the chart below. Outplacement counseling must commence no later than sixty (60) days following the Termination Date. The Company will not provide a Plan Participant with any additional

compensation if he/she does not request to, or chooses not to, participate in the outplacement counseling offered under this Plan.

| Officer Title | Type of Program |
|---|---|
| Non-Officer | 2 Day Public Seminar |
| Assistant Vice President or Vice President | 3 Month Program |
| Senior Vice President or Managing Director | 6 Month Program |

(iv) Severance Benefit Definitions

- *Base Salary.* For purposes of determining the amount of Basic or Enhanced Severance Pay a Plan Participant is eligible to receive under the terms of this Plan, the term "Base Salary" means such Plan Participant's base salary including any applicable shift differential, but exclusive of overtime compensation, commissions, bonuses, other payments, or any fringe benefits or other forms of remuneration, as in effect on the Plan Participant's Termination Date. Any performance/merit reviews that are pending or in process as of the Termination Date also shall not be taken into account in determining a Plan Participant's Base Salary or the amount of Severance Pay. For a Plan Participant who has switched from part-time to full-time, or vice versa, during the twelve (12) month period preceding his/her Termination Date, his/her Base Salary shall be determined using the weighted average of his/her base salary during such prior twelve (12) month period.

- *Year of Service.* For purposes of determining the amount of Enhanced Severance Pay a Plan Participant is eligible to receive under the terms of this Plan, a Plan Participant will be credited with a "Year of Service" for each completed twelve (12) month period with the Company and certain related companies as measured from the Plan Participant's date of hire through the Termination Date. Further, if a Plan Participant has worked for a partial year of service, he/she will be credited with 1/12 of a Year of Service for each completed month or portion thereof. For rehires or employees with a change in employment status, the start dates of service for purposes of calculating severance will be the most recent hire date. If applicable, appropriate service will be granted for continuous service with predecessor companies acquired by a Marsh & McLennan company. Notwithstanding the above, in no event will a Plan Participant be credited with Years of Service for any period for which the Plan Participant already received severance pay from the Company, any related company or any predecessor of the Company or related company.

- *2003 Bonus Award.* For purposes of determining the amount of Supplemental Severance Pay a Plan Participant is eligible to receive under the terms of this Plan, the term "2003 Bonus Award" means the gross aggregate amount received, if any, by a Plan Participant in the Spring of 2004 as a Marsh Incentive Compensation Plan (ICP) Bonus Award with respect to the service the Plan Participant performed in 2003. For the avoidance of doubt, any other cash or noncash award, whether or not referred to or characterized as a "bonus," including without limitation any Middle Market Incentive Plan Awards, are excluded from the definition of "2003 Bonus Award" and will not factor into the determination of Supplemental Severance Pay under this Plan.

- *Annual Compensation.* For purposes of determining the maximum amount of severance pay (the sum of Enhanced Severance Pay plus Supplemental Severance Pay) a Plan Participant is eligible to receive under the terms of this Plan, the term "Annual Compensation" means the total of all compensation, including wages, salary, and any other benefit of monetary value, whether paid in the form of cash or otherwise, which was paid as consideration for the Plan Participant's service during the year immediately preceding the Termination Date, or which would have been so paid at the Participant's usual rate of compensation if the Participant had worked a full year.

## 4. Manner Of Payment

Payment of Basic Severance Pay under this Plan will be made in a lump-sum payment, less applicable withholdings, on or about the 60th calendar day following the Termination Date.

Neither Enhanced Severance Pay nor Supplemental Severance Pay will be paid until a Waiver and Release Agreement is executed, is returned to the Company, is not revoked and becomes effective by its terms (the "Release Effective Date"). Subject to the foregoing, Enhanced Severance Pay and Supplemental Severance Pay will be paid in semi-monthly installments, less applicable withholdings, commencing no later than the first 15th or 30th of a month that is at least 30 calendar days following the Release Effective Date. Under no circumstances will installment payments for severance benefits under this Plan continue for more than 12 months.

## 5. Payment Offsets

The Company reserves the right to reduce any severance benefit paid under this Plan to the extent necessary to take into account any of the following: any outstanding financial obligations(s) that the Plan Participant has to the Company and any of its affiliates and subsidiaries, including, but not limited to, any set-off, counterclaim, recoupment, defense, or other claim, right or action that the Company may have against the employee, any expense account balances, employee loans, relocation allowances, employee advances (including tuition advances and vacation or sick days taken in advance of their being earned by the employee) and the value of any computer hardware or software, communications equipment or other Company-provided property in the individual's possession that he/she has failed to return to the Company as of the Termination Date or the date designated by the Company, whichever is earlier.

## 6. If Plan Participant Is Re-Employed By The Company

Any re-employment in any capacity of a terminated Plan Participant must be approved by a Senior Business Manager of the Company. A Plan Participant will be required to refund to the Company all or a pro-rata portion of his/her Enhanced Severance Pay and Supplemental Severance Pay as a condition of re-employment (including as an independent contractor or consultant) with the Company, its parent or any affiliate or subsidiary of the Company if his/her re-employment starts before the period covered by Enhanced Severance Pay expires. Any such re-employment or refund shall not affect the validity of the Waiver and Release Agreement executed by the Plan Participant.

## 7. Effect On Other Benefits

Except as may otherwise be provided under this Plan or under any other applicable Company plan(s), or required by applicable law, all Company-provided benefits will terminate on the Plan Participant's Termination Date. No benefits provided under this Plan shall be taken into account in determining benefits under any other plan, policy, practice or program of the Company, its parent, affiliate or subsidiary.

## 8. Source Of Benefits

Benefits under this Plan will be paid from the general assets of the Company. No assets or funds with respect to any such benefits will be segregated by the Company in any fund, account or trust. A Plan Participant shall have no greater claim against the assets of the Company than as a general unsecured creditor.

## 9. Administration

The Plan will be administered by the Plan Administrator. The Company has designated the Marsh Inc. Managing Director, Government and Employee Relations to be the Plan Administrator and, during any periods that such position is not filled, the Company.

The Plan Administrator shall make the rules and regulations necessary to administer the Plan. The Plan Administrator shall have the discretionary authority and responsibility to construe the terms of the Plan and to make all determinations under the Plan in its sole discretion including, without limitation, determining eligibility for benefits and the amount of such benefits, what constitutes "cause", whether a position is comparable or better or a reasonable change of work assignment, the amount of any refund upon re-employment and the amount of any payment offsets. The determinations and constructions of the Plan Administrator will be final, binding and conclusive as to all parties.

The Plan Administrator may (i) appoint or employ such persons as it deems necessary to render advice with respect to any of its responsibilities under the Plan, (ii) delegate to any one or more of the Company's employees any responsibility it may have under the Plan and (iii) designate any other person or persons to carry out any of its responsibilities under the Plan. Any delegation of the Plan Administrator shall carry such discretionary authority as the Plan Administrator possesses regarding the matter unless otherwise specified.

Correspondence regarding this Plan should be addressed to:

Marsh Inc. Fall 2004 Restructuring Severance Pay Plan
Managing Director, Government and Employee Relations
Marsh Inc.
1166 Avenue of the Americas
New York, New York 10036-2708
(212) 345-6000

## 10. Claims Procedure

An employee who is eligible for benefits under this Plan will be notified and provided with any forms required in connection with receipt of Plan benefits including if applicable, a Waiver and Release Agreement. If such employee disagrees with the determination of his/her benefits, he/she may, within thirty (30) days of receipt of the initial notification, submit a written statement to the Plan Administrator describing the basis of his/her claim for benefits, together with any documents which he/she believes supports his/her claim. Any employee who is not so notified but believes that he/she is eligible for benefits under the Plan may, within thirty (30) days of such employee's Termination Date, submit a written statement to the Plan Administrator describing the basis of his/her claim for benefits and requesting any forms required in connection with payment of such benefits.

If any claim for severance benefits is wholly or partially denied, the Plan Administrator shall notify the claimant within ninety (90) days after the Plan's receipt of the written claim (except that in special circumstances the Plan Administrator may take an additional ninety (90) days to consider its decision, in which case the employee will be notified of the extension). Such notification shall set forth: (1) the specific reasons for the denial (including reference to any pertinent Plan provisions on which the denial is based); (2) if applicable, a description of any additional material or information necessary for the claimant to perfect the claim, and an explanation of why such material or information is necessary; (3) the claims review procedure and (4) a statement of the claimant's right to bring a civil action under Section 502(a) of the Employee Retirement Income Security Act of 1974 ("ERISA") if the claim is denied following a review on appeal.

Any employee whose claim for benefits under this Plan is denied may make a written request to the Plan Administrator within sixty (60) days after such denial for a review of the denial. Any such request must include any evidence relevant to the claim and may include a request for relevant documents. The

employee claiming benefits shall be notified of the final decision of the Plan Administrator within sixty (60) days after his/her request for a review is received. However, if the Plan Administrator finds it necessary to extend this period due to special circumstances and so notifies the claimant in writing, the decision shall be rendered as soon as practicable, but in no event later than one hundred and twenty (120) days after the claimant's request for review. The decision shall be in writing and shall set forth the specific reasons for the denial (including reference to any pertinent Plan provisions on which the denial is based) and a statement of the claimant's right to bring a civil action under Section 502(a) of ERISA.

The Plan Administrator's action or determination in this review procedure shall be final, binding, and conclusive on all interested persons.

No action for benefits may be brought by any Plan Participant or beneficiary unless the Plan's claims review procedure has been exhausted (that is, all appeals of adverse determinations have been made and decided). Any such action must be commenced within three (3) years of the first date by which all the essential facts and circumstances which support the claim had arisen, provided that the three-year period will never begin later than the date on which the claim arose or, if the individual properly and timely follows the Claims Procedure described above, the date a final determination denying the claim, in whole or part, has been issued under that procedure.

## 11. Amendment Or Termination Of This Plan

The Company, acting through the person or entity holding, from time to time, the title of "Plan Administrator" pursuant to Section 9 of this Plan but acting solely in a settlor capacity, reserves the right to amend or terminate this Plan; provided, however, that no such amendment or termination shall adversely affect the benefits payable with respect to any Plan Participant who has a Termination Date prior to the adoption of such amendment or termination.

The Company's right to alter, reduce or eliminate any pay practice, policy or benefit, in whole or in part, in an individual case or more generally, with or without advance notice, is wholly unaffected by the existence, terms and operation of this Plan.

## 12. Withholding Of Taxes

The Company will withhold, or cause to have withheld, all income, payroll, and other taxes from any severance pay benefit paid under this Plan to the extent required by applicable law. Federal income taxes will be withheld at the flat tax rate established under the Internal Revenue Code.

## 13. General Information

The following describes other information a Plan Participant should know about the Plan.

Plan Sponsor
    Marsh Inc.
    1166 Avenue of the Americas
    New York, New York 10036-2708
    (212) 345-6000

Plan Administrator
    Managing Director, Government and Employee Relations
    Marsh Inc.
    1166 Avenue of the Americas
    New York, New York 10036-2708
    (212) 345-6000

Type of Plan
    The Plan is a severance plan.

Effective Date
The Plan is effective as of the date signed for that limited period, and with respect to that limited population, as specified above.

Plan Year
The Plan's records are kept on a calendar year basis.

Plan Identification
The official name of the Plan is the Marsh Inc. Fall 2004 Restructuring Severance Pay Plan. The Internal Revenue Service identifies Marsh Inc. by the Employer Identification Number 13-4046956 and the Internal Revenue Service and the Department of Labor identify the Plan by the plan number 501.

Legal Service
It is hoped that legal action with regard to the Plan will not be considered necessary. However, if an employee feels that he/she has cause for legal action after he/she has exhausted the Plan's Claims Procedures (see Section 10 above), a timely complaint may be served on the agent named for service of process:

John W. Hamlin, Esq.
Senior Employment Counsel
Marsh & McLennan Companies, Inc.
1166 Avenue of the Americas
New York, New York 10036-2708

Additionally, legal service may be served on the Plan Administrator.

## 14. ERISA Rights

A Plan Participant in the Marsh Inc. Fall 2004 Restructuring Severance Pay Plan is entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). ERISA provides that a participant shall be entitled to:

**Receive Information about the Plan and Benefits**
- Examine without charge, at the Plan Administrator's office and at other specified locations, including work sites, all documents governing the Plan, including a copy of the latest annual report (Form 5500 Series), if any, filed by the Plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Employee Benefits Security Administration; and

- Obtain, upon written request to the Plan Administrator, copies of documents governing the operation of the Plan, the latest annual report (Form 5500 Series) and an updated Summary Plan Description. The Plan Administrator may make a reasonable charge for the copies.

**Prudent Action by Plan Fiduciaries**
In addition to creating rights for Plan Participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plans. The people who operate the Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of Plan Participants and beneficiaries. No one, including an individual's employer or any other person, may fire an employee or otherwise discriminate against an employee in any way to prevent an employee from obtaining a severance benefit or exercising an employee's rights under ERISA.

**Enforce an Employee's Rights**
If an employee's claim for severance benefits is denied or ignored, in whole or in part, the employee has a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are several steps an employee can take to enforce his/her rights. For instance, if an employee requests a copy of Plan documents or the latest annual report from the Plan and does not receive them within thirty (30) days, the employee may file suit in a Federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay the employee up to one hundred and ten dollars ($110) a day until the employee receives the materials, unless the materials were not sent for reasons beyond the control of the Plan Administrator. If an employee has a claim for benefits which is denied or ignored, in whole or in part, the employee may file suit in a state or Federal court. If it should happen that Plan fiduciaries misuse the Plan's money, or if an employee is discriminated against for asserting his/her rights, the employee may seek assistance from the U.S. Department of Labor, or he/she may file suit in a Federal court. The court will decide who should pay court costs and legal fees. If the employee is successful, the court may order the person the employee has sued to pay these costs and fees. If the employee loses, the court may order the employee to pay these costs and fees, for example, if it finds the employee's claim is frivolous.

**Assistance with Questions**
If an employee has any questions about the Plan, the employee should contact:

Managing Director, Government and Employee Relations
Marsh Inc.
1166 Avenue of the Americas
New York, New York 10036-2708
(212) 345-6000

If an employee has any questions about this statement or about an employee's rights under ERISA, or if an employee needs assistance in obtaining documents from the Plan Administrator, the employee should contact the nearest office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in the telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue, N.W., Washington, D.C. 20210. An employee may also obtain certain publications about an employee's rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

15. Miscellaneous

**Not a Contract for Employment**
This Plan is not a contract for employment and does not give any individual a right of employment or continued employment with the Company, its parent or any of its subsidiaries or affiliates.

**No Assignment of Benefits**
Plan Participants cannot assign, pledge, borrow against or otherwise promise any benefit payable under this Plan before he/she receives that benefit.

**Governing Law**
Except where preempted by ERISA or other U.S. laws, the law of the State of New York shall govern without giving effect to principles of conflict of laws.