UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————— x

ROGER EGAN,                                        :
                                                   :
                        Plaintiff,                 :          07 Civ. 7134 (SAS)
                                                   :
          - against -                              :
                                                   :
MARSH & MCLENNAN COMPANIES, INC.,                  :          **ANSWER AND**
MARSH USA INC. SEVERANCE PAY PLAN,                 :          **COUNTERCLAIM**
MARSH INC. FALL 2004 RESTRUCTURING                 :
SEVERANCE PAY PLAN,                                :          **JURY TRIAL**
                                                   :          **DEMANDED**
                        Defendants.                :
———————————————————————— x

        Defendants Marsh & McLennan Companies, Inc. ("MMC"), Marsh USA Inc.

Severance Pay Plan, and Marsh Inc. Fall 2004 Restructuring Severance Pay Plan, by their

attorneys Kramer Levin Naftalis & Frankel LLP, as and for their Answer to the Amended

Complaint and Counterclaim, alleges as follows:

        1.      Deny the allegations contained in paragraph 1 of the Amended Complaint,

except admit that plaintiff was employed by MMC for more than 32 years, a managing director,

President and Chief Operating Officer of Marsh, Inc., and a partner at MMC.

        2.      Deny the allegations contained in paragraph 2 of the Amended Complaint,

except admit that plaintiff did not have a written employment contract.

        3.      Deny the allegations contained in paragraph 3 of the Amended Complaint.

        4.      Deny the allegation contained in paragraph 4 of the Amended Complaint.

        5.      Deny knowledge or information sufficient to form a belief as to the truth

of the allegations contained in paragraph 5 of the Amended Complaint.

6.      Admit the allegations contained in paragraph 6 of the Amended Complaint.

7.      Admit the allegations contained in paragraph 7 of the Amended Complaint.

8.      Admit the allegations contained in paragraph 8 of the Amended Complaint.

9.      Deny the allegations contained in paragraph 1 of the Amended Complaint, except admit that plaintiff was a managing director, President and Chief Operating Officer of Marsh, Inc. and a partner at MMC.

10.      Deny the allegations contained in paragraph 10 of the Amended Complaint, except admit that plaintiff has been awarded stock options, restricted stock, deferred stock units, and restricted stock units that had various vesting schedules.

11.      Deny the allegations contained in paragraph 11 of the Amended Complaint, except admit that plaintiff was a participant in the Special Severance Pay Plan dated November 21, 1996 (the "SSPP") and refer to the SSPP for the terms thereof.

12.      Deny the allegations contained in paragraph 12 of the Amended Complaint.

13.      Deny the allegations contained in paragraph 13 of the Amended Complaint.

14.      Deny the allegations contained in paragraph 14 of the Amended Complaint.

15.      Deny the allegations contained in paragraph 15 of the Amended Complaint, except deny knowledge or information sufficient to form a belief as to the truth of

2

plaintiff's allegations that he was often approached with lucrative offers of employment from other companies and passed up these offers.

16.     Deny the allegations contained in paragraph 16 of the Amended Complaint.

17.     Deny the allegations contained in paragraph 17 of the Amended Complaint.

18.     Deny the allegations contained in paragraph 18 of the Amended Complaint, except admit that the Marsh USA Inc. Severance Pay Plan (the "SPP") and the Marsh Inc. Fall 2004 Restructuring Severance Pay Plan (the "Restructuring SPP") provide severance benefits to certain employees pursuant to the terms of the plan thereof.

19.     Deny the allegations contained in paragraph 19 of the Amended Complaint.

20.     Admit the allegations contained in paragraph 20 of the Amended Complaint.

21.     Deny the allegations contained in paragraph 21 of the Amended Complaint, except admit that Michael Cherkasky was appointed Chairman of MMC.

22.     Deny the allegations contained in paragraph 22 of the Amended Complaint.

23.     Deny the allegations contained in paragraph 23 of the Amended Complaint.

24.     Deny the allegations contained in paragraph 24 of the Amended Complaint.

25.     Deny the allegations contained in paragraph 25 of the Amended Complaint, except admit that Joseph Bachelder presented Michael Cherkasky with a proposed separation agreement.

26.     Deny the allegations contained in paragraph 26 of the Amended Complaint.

27.     Deny the allegations contained in paragraph 27 of the Amended Complaint.

28.     Deny the allegations contained in paragraph 28 of the Amended Complaint.

29.     Admit the allegations contained in paragraph 29 of the Amended Complaint.

30.     Deny the allegations contained in paragraph 30 of the Amended Complaint, except admit that in February 2005 Joseph Bachelder sent Michael Petrullo a draft proposed separation agreement.

31.     Deny the allegations contained in paragraph 31 of the Amended Complaint.

32.     Deny the allegations contained in paragraph 32 of the Amended Complaint, except admit that Joseph Bachelder sent Leon Lichter a facsimile dated November 7, 2005 attaching the draft Proposed Separation Agreement dated November 11, 2004.

33.     Deny the allegations contained in paragraph 33 of the Amended Complaint, except admit that Egan approached Jack Sinnott to propose a separation agreement.

4

34.    Deny the allegations contained in paragraph 34 of the Amended Complaint, except admit that Egan contacted Michael Cherkasky during 2007 to request a separation package.

35.    Deny the allegations contained in paragraph 35 of the Amended Complaint, except admit that (a) MMC has stopped paying Egan dividends on his MMC restricted stock and restricted stock units because Egan forfeited his restricted shares and restricted stock unit; (b) Egan's unvested stock options will not vest; and (c) Egan's vested stock options have ceased to be exercisable.

36.    Deny the allegations contained in paragraph 36 of the Amended Complaint.

37.    Deny the factual allegations contained in paragraph 37 of the Amended Complaint and do not respond to the allegations contained in paragraph 37 to the extent that they constitute legal conclusions.

## As to the First Cause of Action

38.    In response to paragraph 38 of the Amended Complaint, repeat and reassert their responses to paragraphs 1 through 37 of the Amended Complaint as though fully set forth herein.

39.    Deny the allegations contained in paragraph 39 of the Amended Complaint.

40.    Deny the allegations contained in paragraph 40 of the Amended Complaint.

41.    Deny the allegations contained in paragraph 41 of the Amended Complaint.

5

**As to the Second Cause of Action**

42.    In response to paragraph 42 of the Amended Complaint, repeat and reassert their responses to paragraphs 1 through 37 of the Amended Complaint as though fully set forth herein.

43.    Deny the allegations contained in paragraph 43 of the Amended Complaint.

44.    Deny the allegations contained in paragraph 44 of the Amended Complaint.

45.    Deny the allegations contained in paragraph 45 of the Amended Complaint.

46.    Deny the allegations contained in paragraph 46 of the Amended Complaint.

47.    Deny the allegations contained in paragraph 47 of the Amended Complaint.

**As to the Third Cause of Action**

48.    In response to paragraph 48 of the Amended Complaint, repeat and reassert their responses to paragraphs 1 through 37 of the Amended Complaint as though fully set forth herein.

49.    Deny the allegations contained in paragraph 49 of the Amended Complaint.

50.    Deny the allegations contained in paragraph 50 of the Amended Complaint.

KL3 2628250.1

51.     Deny the allegations contained in paragraph 51 of the Amended Complaint.

52.     Deny the allegations contained in paragraph 52 of the Amended Complaint.

### As to the Fourth Cause of Action

53.     In response to paragraph 53 of the Amended Complaint, repeat and reassert their responses to paragraphs 1 through 37 of the Amended Complaint as though fully set forth herein.

54.     Deny the allegations contained in paragraph 54 of the Amended Complaint.

55.     Deny the allegations contained in paragraph 55 of the Amended Complaint.

56.     Deny the allegations contained in paragraph 56 of the Amended Complaint.

57.     Deny the allegations contained in paragraph 57 of the Amended Complaint.

### As to the Fifth Cause of Action

58.     In response to paragraph 58 of the Amended Complaint, repeat and reassert their responses to paragraphs 1 through 37 of the Amended Complaint as though fully set forth herein.

59.     Deny the allegations contained in paragraph 59 of the Amended Complaint.

KL3 2628250.1

60.    Deny the allegations contained in paragraph 60 of the Amended Complaint.

61.    Deny the allegations contained in paragraph 61 of the Amended Complaint.

62.    Deny the allegations contained in paragraph 62 of the Amended Complaint.

## As to the Sixth Cause of Action

63.    In response to paragraph 63 of the Amended Complaint, repeat and reassert their responses to paragraphs 1 through 37 of the Amended Complaint as though fully set forth herein.

64.    Deny the allegations contained in paragraph 64 of the Amended Complaint.

65.    Deny the allegations contained in paragraph 65 of the Amended Complaint.

66.    Deny the allegations contained in paragraph 66 of the Amended Complaint.

67.    Deny the allegations contained in paragraph 67 of the Amended Complaint.

## As to the Seventh Cause of Action

68.    In response to paragraph 68 of the Amended Complaint, repeat and reassert their responses to paragraphs 1 through 37 of the Amended Complaint as though fully set forth herein.

KL3 2628250.1

69.     Deny the allegations contained in paragraph 69 of the Amended
Complaint.

70.     Deny the allegations contained in paragraph 70 of the Amended
Complaint.

71.     Deny the allegations contained in paragraph 71 of the Amended
Complaint.

72.     Deny the allegations contained in paragraph 72 of the Amended
Complaint.

## As to the Eighth Cause of Action

73.     In response to paragraph 73 of the Amended Complaint, repeat and
reassert their responses to paragraphs 1 through 37 of the Amended Complaint as though fully
set forth herein.

74.     Deny the allegations contained in paragraph 74 of the Amended
Complaint.

75.     Deny the allegations contained in paragraph 75 of the Amended
Complaint.

76.     Deny the allegations contained in paragraph 76 of the Amended
Complaint.

77.     Deny the allegations contained in paragraph 77 of the Amended
Complaint.

KL3 2628250.1

## As to the Ninth Cause of Action

78.    In response to paragraph 78 of the Amended Complaint, repeat and reassert their responses to paragraphs 1 through 37 of the Amended Complaint as though fully set forth herein.

79.    Deny the allegations contained in paragraph 79 of the Amended Complaint.

80.    Deny the allegations contained in paragraph 80 of the Amended Complaint.

81.    Deny the allegations contained in paragraph 81 of the Amended Complaint.

82.    Deny the allegations contained in paragraph 82 of the Amended Complaint.

## As to the Tenth Cause of Action

83.    In response to paragraph 83 of the Amended Complaint, repeat and reassert their responses to paragraphs 1 through 37 of the Amended Complaint as though fully set forth herein.

84.    Deny the allegations contained in paragraph 84 of the Amended Complaint.

85.    Deny the allegations contained in paragraph 85 of the Amended Complaint.

86.    Deny the allegations contained in paragraph 86 of the Amended Complaint.

KL3 2628250.1

87.    Deny the allegations contained in paragraph 87 of the Amended Complaint.

### As to the Eleventh Cause of Action

88.    In response to paragraph 88 of the Amended Complaint, repeat and reassert their responses to paragraphs 1 through 37 of the Amended Complaint as though fully set forth herein.

89.    Deny the allegations contained in paragraph 89 of the Amended Complaint.

90.    Deny the allegations contained in paragraph 90 of the Amended Complaint.

91.    Deny the allegations contained in paragraph 91 of the Amended Complaint.

92.    Deny the allegations contained in paragraph 92 of the Amended Complaint.

### As to the Twelfth Cause of Action

93.    In response to paragraph 93 of the Amended Complaint, repeat and reassert their responses to paragraphs 1 through 37 of the Amended Complaint as though fully set forth herein.

94.    Deny the allegations contained in paragraph 94 of the Amended Complaint.

95.    Deny the allegations contained in paragraph 95 of the Amended Complaint.

KL3 2628250.1

96.    Deny the allegations contained in paragraph 96 of the Amended Complaint.

97.    Does not respond to the allegations in paragraph 97 of the Amended Complaint to the extent that they constitute legal conclusions.

## As to the Thirteenth Cause of Action

98.    In response to paragraph 98 of the Amended Complaint, repeat and reassert their responses to paragraphs 1 through 37 of the Amended Complaint as though fully set forth herein.

99.    Deny the allegations contained in paragraph 99 of the Amended Complaint.

100.    Deny the allegations contained in paragraph 100 of the Amended Complaint.

101.    Deny the allegations contained in paragraph 101 of the Amended Complaint.

102.    Does not respond to the allegations in paragraph 102 of the Amended Complaint to the extent that they constitute legal conclusions.

## As and For a First Affirmative Defense

103.    The Second through Thirteenth Causes of Action fail to state a claim upon which relief may be granted.

## As and For a Second Affirmative Defense

104.    Plaintiff has failed to exhaust his administrative remedies pursuant to the SPP, the Restructuring SPP, and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

12

**As and For a Third Affirmative Defense**

105.    Plaintiff's common law claims for severance benefits and termination packages are preempted by ERISA.

**MMC'S COUNTERCLAIM**

106.    MMC is a premier global professional services firm that owns companies engaged in, among other things, risk and insurance services.

107.    Plaintiff Roger Egan is a former partner of MMC and the former president and chief operating officer of Marsh Inc. ("Marsh"), the risk and insurance services subsidiary of MMC.

**Plaintiff Receives Stock**
**Option Grants from MMC**

108.    On May 16, 1995, plaintiff received a grant of stock options from MMC with an option price of $13.093750 per share (the "1995 Grant").

109.    On March 21, 1996, plaintiff received a grant of stock options from MMC with an option price of $15.843750 per share (the "1996 Grant").

110.    On March 20, 1997, plaintiff received a grant of stock options from MMC with an option price of $20.635417 per share (the "1997 Grant").

111.    The 1995 Grant, the 1996 Grant, and the 1997 Grant were provided pursuant to the Marsh & McLennan Companies 1992 Incentive and Stock Award Plan.

**Plaintiff Exercises His Stock Options**

              112.    In conjunction with and as a condition precedent to the exercise of stock options, employees must sign the Marsh & McLennan Companies, Inc. Non-Solicitation Agreement for Exercise of Stock Options (the "Non-Solicitation Agreement").  (Exhibits A-C.) This agreement provides, in part, that:

> In order to receive the benefits afforded by the Marsh & McLennan Companies 1988 Incentive Stock Award Plan, the Marsh & McLennan Companies 1992 Incentive and Stock Award Plan, the Marsh & McLennan 1997 Employee Incentive and Stock Award Plan, or any successor plan thereto (collectively, the Plan), as each may be amended from time to time, I, the undersigned, agree that if my employment with Marsh & McLennan Companies, Inc. or one of its subsidiaries (the Company) terminates for any reason other than death or total disability within three (3) years after exercising the option granted to me on _____ under the Plan, I will not, for a period of two (2) years from date of termination, directly or indirectly, as a sole proprietor, member of a partnership, or stockholder, investor, officer or director of a corporation, or as an employee, agent, associate or consultant of any person, firm or corporation except for the benefit of the Company:

> (a) solicit or accept business of the type offered by the Company during my term of employment with the Company, or perform or supervise the performance of any services related to such type of business, from or for (i) clients or prospects of the Company or its affiliates who were solicited or serviced directly by me or where I supervised, directly or indirectly, in whole or in part, the solicitation or servicing activities related to such clients or prospects; or (ii) any former client of the Company or its affiliates who was such within two (2) years prior to my termination of employment and who was solicited or serviced directly by me or where I supervised, directly or indirectly, in whole or in part, the solicitation or servicing activities related to such former clients; or

KL3 2628250.1

(b) solicit any employee of the Company who reported to me directly or indirectly to terminate his employment with the Company for the purpose of competing with the Company.

113.    The Non-Solicitation Agreement also imposes obligations on plaintiff to protect MMC's confidential information and trade secrets.

114.    The Non-Solicitation Agreement further provides that "[w]ithout limiting any other remedies which may be available to it under applicable law, the Company shall be entitled to monetary damages under this agreement, which may include, but not be limited to, the gain on exercise of the option computed as the difference between the option price and the market price on the date of exercise multiplied by the number of shares exercised."

115.    On December 12, 2003, plaintiff exercised 15,000 shares of the 1995 Grant at a fair market value of $44.525000 per share for a gain of $31.431250 per share. Plaintiff's total gain from this exercise was $471,468.75.

116.    Plaintiff signed the Non-Solicitation Agreement on December 12, 2003 with respect to the exercise of shares from the 1995 Grant.  (Exhibit A.)

117.    On February 6, 2004, plaintiff exercised 30,000 shares of the 1996 Grant at a fair market value of $47.115000 per share for a gain of $31.27125 per share.  Plaintiff's total gain from this exercise was $938,137.50.

118.    Plaintiff signed the Non-Solicitation Agreement on February 5, 2004 with respect to the exercise of shares from the 1996 Grant.  (Exhibit B.)

119.    On March 30, 2004, plaintiff exercised 36,000 shares of the 1997 Grant at a fair market value of $46.780000 per share for a gain of 26.1445583 per share.  Plaintiff's total gain from this exercise was $941,204.99.

15

120.    Plaintiff signed the Non-Solicitation Agreement on March 30, 2004 with respect to the exercise of shares from the 1997 Grant.  (Exhibit C.)

121.    Plaintiff's total gain in connection with the aforementioned stock option exercises in connection with the 1995 Grant, 1996 Grant, and 1997 Grant was $2,350,811.24.

**Plaintiff's Solicitation in Violation
of the Non-Solicitation Agreement**

122.    On April 8, 2007, plaintiff submitted a letter of resignation to Michael Cherkasky.

123.    Just a few days later – on or about April 15, 2005 – it was announced that plaintiff would serve as the Chief Executive Officer of Integro, a newly-formed insurance brokerage and risk management firm that directly competes with Marsh.

124.    Since April 2005, numerous employees of Marsh who worked for Marsh while plaintiff was employed with Marsh have left Marsh to join Integro.

125.    Plaintiff had a hand, directly or indirectly, in identifying, recruiting, and soliciting his former Marsh colleagues.

126.    Plaintiff has directly or indirectly solicited or accepted the business of the type offered by MMC from clients or prospective clients of MMC who were solicited or serviced by plaintiff or individuals who were supervised, either directly or indirectly, by plaintiff when he was at Marsh.

**As and For MMC's First Counterclaim**

127.    MMC repeats and realleges the allegations contained in paragraphs 106 through, 126, inclusive, as though fully set forth herein.

128.    In conjunction with the exercise of the stock options associated with the 1995 Grant, the 1996 Grant, and the 1997 Grant, plaintiff agreed to abide by the non-solicitation

16

and confidentiality obligations set forth in the Non-Solicitation Agreements he signed on

December 12, 2003, December 5, 2004, and March 30, 2004.

129.    Through his actions at Integro, plaintiff has breached these Non-Solicitation Agreements.

130.    By virtue of the foregoing, plaintiff is entitled to damages in the amount of

not less than $2,350.811.24, as well as the costs and disbursements in this action, including

attorney's fees, together with other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

MMC demands a trial by jury on all issues so triable.

### PRAYER FOR RELIEF

WHEREFORE, defendants respectfully request:

(i)    judgment against plaintiff dismissing each claim in plaintiff's Amended Complaint;

(ii)    judgment for defendant MMC with respect to its counterclaim;

(iii)    an award to defendants of their costs, expenses, and attorneys' fees they incurred in connection with this action; and

(iv)    such other and further relief as the Court deems just and proper.

Dated:  New York, New York
         December 12, 2007

                             KRAMER LEVIN NAFTALIS & FRANKEL LLP

                             By:    /s/ Robert N. Holtzman
                                    Barry H. Berke (BB 1421)
                                    Robert N. Holtzman (RH 9525)
                                    Jennifer L. Rochon (JR 3097)
                                    Melissa J. Prober (MP 8244)
                                    1177 Avenue of the Americas
                                    New York, New York 10036
                                    (212) 715-9100
                                    Attorneys for Defendants

KL3 2628250.1

# EXHIBIT A

Marsh & McLennan Companies, Inc.
**Non-Solicitation Agreement for Exercise of Stock Options**

In order to receive the benefits afforded by the Marsh & McLennan Companies 1988 Incentive and Stock Award Plan, the Marsh & McLennan Companies 1992 Incentive and Stock Award Plan, the Marsh & McLennan Companies 1997 Employee Incentive and Stock Award Plan, or any successor plan thereto (collectively, the Plan), as each may be amended from time to time, I, the undersigned, agree that if my employment with Marsh & McLennan Companies, Inc. or one of its subsidiaries (the Company) terminates for any reason other than death or total disability within three (3) years after exercising the option granted to me on ___5/16/95___ under the Plan, I will not, for a period of two (2) years from date of termination, directly or indirectly, as a sole proprietor, member of a partnership, or stockholder, investor, officer or director of a corporation, or as an employee, agent, associate or consultant of any person, firm or corporation except for the benefit of the Company:

(a) solicit or accept business of the type offered by the Company during my term of employment with the Company, or perform or supervise the performance of any services related to such type of business, from or for (i) clients or prospects of the Company or its affiliates who were solicited or serviced directly by me or where I supervised, directly or indirectly, in whole or in part, the solicitation or servicing activities related to such clients or prospects; or (ii) any former client of the Company or its affiliates who was such within two (2) years prior to my termination of employment and who was solicited or serviced directly by me or where I supervised, directly or indirectly, in whole or in part, the solicitation or servicing activities related to such former clients; or

(b) solicit any employee of the Company who reported to me directly or indirectly to terminate his employment with the Company for the purpose of competing with the Company.

I recognize and acknowledge that the Company's trade secrets and confidential or proprietary information, including such trade secrets or information as may exist from time to time, are valuable, special and unique assets of the Company's business, access to and knowledge of which were essential to the performance of my duties while in the employ of the Company. I will not, during or after the term hereof, in whole or in part, disclose such secrets or confidential or proprietary information to any person, firm, corporation, association or other entity for any reason or purpose whatsoever, nor shall I make use of any such property for my own purposes or for the benefit of any person, firm, corporation or other entity (except the Company) under any circumstances, during or after the term hereof, provided that after the term hereof, these restrictions shall not apply to such secrets or information which are then in the public domain (provided that I was not responsible, directly or indirectly, for such secrets or information entering the public domain without the Company's consent).

Without limiting any other remedies which may be available to it under applicable law, the Company shall be entitled to monetary damages under this agreement, which may include, but not be limited to, the gain on exercise of the option computed as the difference between the option price and the market price on the date of exercise multiplied by the number of shares exercised.

I understand that the agreement applies only to this particular option grant and does not take precedence over or affect other non-solicitation agreements that I may have with the Company.

This agreement shall be construed in accordance with the laws of the State of New York.

Name (Print): _Roger E. Egan_     SS#: _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_

Signature: _R. E. Egan_     Date: _12/12/03_

# EXHIBIT B

## Marsh & McLennan Companies, Inc.
### Non-Solicitation Agreement for Exercise of Stock Options

In order to receive the benefits afforded by the Marsh & McLennan Companies 1988 Incentive and Stock Award Plan, the Marsh & McLennan Companies 1992 Incentive and Stock Award Plan, the Marsh & McLennan Companies 1997 Employee Incentive and Stock Award Plan, or any successor plan thereto (collectively, the Plan), as each may be amended from time to time, I, the undersigned, agree that if my employment with Marsh & McLennan Companies, Inc. or one of its subsidiaries (the Company) terminates for any reason other than death or total disability within three (3) years after exercising the option granted to me on ___3/21/96___ under the Plan, I will not, for a period of two (2) years from date of termination, directly or indirectly, as a sole proprietor, member of a partnership, or stockholder, investor, officer or director of a corporation, or as an employee, agent, associate or consultant of any person, firm or corporation except for the benefit of the Company:

(a) solicit or accept business of the type offered by the Company during my term of employment with the Company, or perform or supervise the performance of any services related to such type of business, from or for (i) clients or prospects of the Company or its affiliates who were solicited or serviced directly by me or where I supervised, directly or indirectly, in whole or in part, the solicitation or servicing activities related to such clients or prospects; or (ii) any former client of the Company or its affiliates who was such within two (2) years prior to my termination of employment and who was solicited or serviced directly by me or where I supervised, directly or indirectly, in whole or in part, the solicitation or servicing activities related to such former clients; or

(b) solicit any employee of the Company who reported to me directly or indirectly to terminate his employment with the Company for the purpose of competing with the Company.

I recognize and acknowledge that the Company's trade secrets and confidential or proprietary information, including such trade secrets or information as may exist from time to time, are valuable, special and unique assets of the Company's business, access to and knowledge of which were essential to the performance of my duties while in the employ of the Company. I will not, during or after the term hereof, in whole or in part, disclose such secrets or confidential or proprietary information to any person, firm, corporation, association or other entity for any reason or purpose whatsoever, nor shall I make use of any such property for my own purposes or for the benefit of any person, firm, corporation or other entity (except the Company) under any circumstances, during or after the term hereof, provided that after the term hereof, these restrictions shall not apply to such secrets or information which are then in the public domain (provided that I was not responsible, directly or indirectly, for such secrets or information entering the public domain without the Company's consent).

Without limiting any other remedies which may be available to it under applicable law, the Company shall be entitled to monetary damages under this agreement, which may include, but not be limited to, the gain on exercise of the option computed as the difference between the option price and the market price on the date of exercise multiplied by the number of shares exercised.

I understand that the agreement applies only to this particular option grant and does not take precedence over or affect other non-solicitation agreements that I may have with the Company.

This agreement shall be construed in accordance with the laws of the State of New York.

Name (Print): *Roger E. Egan*          SS#: *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*

Signature: *R. E. Egan*          Date: *2/5/04*

# EXHIBIT C

Marsh & McLennan Companies, Inc.
## Non-Solicitation Agreement for Exercise of Stock Options

In order to receive the benefits afforded by the Marsh & McLennan Companies 1988 Incentive and Stock Award Plan, the Marsh & McLennan Companies 1992 Incentive and Stock Award Plan, the Marsh & McLennan Companies 1997 Employee Incentive and Stock Award Plan, or any successor plan thereto (collectively, the Plan), as each may be amended from time to time, I, the undersigned, agree that if my employment with Marsh & McLennan Companies, Inc. or one of its subsidiaries (the Company) terminates for any reason other than death or total disability within three (3) years after exercising the option granted to me on ___3/20/97___ under the Plan, I will not, for a period of two (2) years from date of termination, directly or indirectly, as a sole proprietor, member of a partnership, or stockholder, investor, officer or director of a corporation, or as an employee, agent, associate or consultant of any person, firm or corporation except for the benefit of the Company:

(a) solicit or accept business of the type offered by the Company during my term of employment with the Company, or perform or supervise the performance of any services related to such type of business, from or for (i) clients or prospects of the Company or its affiliates who were solicited or serviced directly by me or where I supervised, directly or indirectly, in whole or in part, the solicitation or servicing activities related to such clients or prospects; or (ii) any former client of the Company or its affiliates who was such within two (2) years prior to my termination of employment and who was solicited or serviced directly by me or where I supervised, directly or indirectly, in whole or in part, the solicitation or servicing activities related to such former clients; or

(b) solicit any employee of the Company who reported to me directly or indirectly to terminate his employment with the Company for the purpose of competing with the Company.

I recognize and acknowledge that the Company's trade secrets and confidential or proprietary information, including such trade secrets or information as may exist from time to time, are valuable, special and unique assets of the Company's business, access to and knowledge of which were essential to the performance of my duties while in the employ of the Company. I will not, during or after the term hereof, in whole or in part, disclose such secrets or confidential or proprietary information to any person, firm, corporation, association or other entity for any reason or purpose whatsoever, nor shall I make use of any such property for my own purposes or for the benefit of any person, firm, corporation or other entity (except the Company) under any circumstances, during or after the term hereof, provided that after the term hereof, these restrictions shall not apply to such secrets or information which are then in the public domain (provided that I was not responsible, directly or indirectly, for such secrets or information entering the public domain without the Company's consent).

Without limiting any other remedies which may be available to it under applicable law, the Company shall be entitled to monetary damages under this agreement, which may include, but not be limited to, the gain on exercise of the option computed as the difference between the option price and the market price on the date of exercise multiplied by the number of shares exercised.

I understand that the agreement applies only to this particular option grant and does not take precedence over or affect other non-solicitation agreements that I may have with the Company.

This agreement shall be construed in accordance with the laws of the State of New York.

Name (Print): _Roger E. Egan_          SS#: _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_

Signature: _R E Egan_          Date: _3/30/04_

Index No. 07/602281

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

ROGER EGAN,

Plaintiff,

-against-

MARSH & MCLENNAN COMPANIES, INC.,

Defendant.

---

**ANSWER AND COUNTERCLAIM**

---

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**
*Attorneys for Defendants*

1177 Avenue of the Americas, New York, New York  10036
(212) 715-9100

*All communications should be referred to:*
Barry H. Berke, Esq.
Robert H. Holtzman, Esq.
Jennifer Rochon, Esq.
