# EXHIBIT
# D

**This Document Constitutes Part Of A Prospectus Covering Securities That Have Been Registered Under The Securities Act Of 1933. The Marsh & McLennan Companies, Inc. 2000 Senior Executive Incentive And Stock Award Plan Is Not Subject To Any Of The Provisions Of The Employee Retirement Income Security Act Of 1974.**

Marsh & McLennan Companies, Inc.
2000 Senior Executive Incentive and Stock Award Plan

Terms and Conditions of Restricted Stock Units
Granted To U.S. Employees in 2003

This award (the "Award") of Restricted Stock Units is being granted to you under the Marsh & McLennan Companies, Inc. 2000 Senior Executive Incentive and Stock Award Plan (the "2000 Senior Executive Plan"). The Award consists of (1) a replacement award (the "Replacement Award") of Restricted Stock Units equal in number to the number of shares (the "Covered Shares") (excluding shares vesting as a result of your retirement and any granted in connection with a prior deferral under the Restricted Shares Voluntary Deferral Program) of Restricted Stock or Restricted Stock Units granted to you under the 2000 Senior Executive Plan or any predecessor plan which were scheduled to vest on a specified future date (the "Scheduled Vesting Date") and which you have irrevocably elected to surrender and have cancelled in exchange for this Award, provided, that such elected number is in an increment of 100 and cannot be more than 75% or less than 25% of the number of Covered Shares of Restricted Stock, or Restricted Stock Units which were scheduled to vest on the Scheduled Vesting Date, plus (2) if you elect to defer distribution of the Award to a date on or after the vesting date specified in Section I A.2, an additional award (the "Supplemental Award") of Restricted Stock Units equal in number to 15% of the Replacement Award. The Award is subject to the following terms and conditions:

I.      AWARD VESTING AND DISTRIBUTION

   A.      Vesting Period

      1.      Subject to Section IV D, the Replacement Award shall vest on the earlier of (a) the Scheduled Vesting Date or (b) such other date as may be applicable pursuant to the provisions of Sections IV and V.

      2.      Subject to Section IV D, the Supplemental Award shall vest on the earlier of (a) January 1 of the year of the third anniversary of the Scheduled Vesting Date or (b) such other date as may be applicable pursuant to the provisions of Sections IV and V.

B.    Stock Distribution

Unless forfeited pursuant to Section IV D, or unless Section V A.2 applies, and in any event subject to Section I E, shares of Common Stock (the "Shares") of Marsh & McLennan Companies, Inc. ("MMC") shall be registered in your name on each distribution date based on your irrevocable election. The number of Shares so registered to you on each distribution date shall be based upon a distribution in substantially equal installments over the period during which you have irrevocably elected to receive such Shares; provided, however, that in the case of termination of your employment by reason of your death or permanent disability, or in the case of a payment under Section V A.1, the number of Shares so registered shall equal the number of Restricted Stock Units with respect to which distribution had not previously been made. Once the Award vests, you have an unalienable right to receive the Shares (or cash or other property, as described in Section V A.2) payable in connection therewith, in accordance with the terms hereof. Notwithstanding the irrevocability of the elections described in this Section I B, you shall have the right to delay the beginning date of distribution or to increase the number of installments to be made as provided in Section I C, and you have the right to accelerate distribution of the shares as provided in Section I D.

C.    Redeferral Elections

At any time up to one full calendar year prior to the beginning date of the scheduled distribution of Shares pursuant to Section I B, you may elect to defer the beginning date of distribution or to increase the number of installments, or both, as theretofore elected by you, subject to specific terms and conditions determined by the Compensation Committee of the MMC Board of Directors (the "Compensation Committee"). Such elections under this Section I C shall be treated as if made under Section I B for all purposes under the provisions hereof, including the right to make further elections under this Section I C.

D.    Acceleration of Distribution

You may elect to accelerate the distribution of all or a portion of the Shares (unless Section I E applies and a special deferral is made) for any reason prior to the completion of the elected deferral period, subject to the imposition of a significant penalty in accordance with applicable tax rules. The penalty shall be a forfeiture equal to (i) 6% of the amount that you elect to have distributed and (ii) 100% of any unvested Supplemental Award, as provided in item (2) of the first paragraph of these terms and conditions, that you elect to have distributed. Amounts distributed to you will be subject to applicable tax withholding, but amounts forfeited will not be subject to tax.

2

E.    Special Deferral

Notwithstanding anything to the contrary contained herein (other than Section V), the Committee shall have the discretion to defer any distribution otherwise scheduled to be made hereunder to the extent necessary (in the Committee's judgment) to avoid all or any portion of such distribution being nondeductible to the Company by reason of Section 162(m) of the Internal Revenue Code of 1986, as amended, or any successor provision thereto. Employees covered under Section 162(m), according the proposed regulations issued by the Internal Revenue Service, include (i) the chief executive officer of MMC as of the last day of the year of distribution and (ii) the four highest paid executive officers of MMC, other than the chief executive officer, who are employed on the last day of the year of distribution.

II.    RIGHTS OF RESTRICTED STOCK UNITS

You will receive dividend equivalent payments on the Restricted Stock Units. Unless and until the vesting conditions of the Award have been satisfied and you have received the Shares in accordance with the terms and conditions described herein, you have none of the attributes of ownership to such Shares (e.g., units cannot be used as payment for stock option exercises).

III.    TAXES

The value of your Award is not includible in gross income until distribution, but is subject to FICA on the date of vesting. When the Shares (or, in the event Section V A.2 is applicable, cash or other property) are received by you free and clear of all restrictions on each distribution date, the value of such distribution is includible in gross income and you will be required to pay the withholding taxes required by law. At that time, you will be given detailed information regarding the tax consequences of your receipt of the Shares (or cash or other property). The receipt of dividend equivalents is taxable on a current basis as additional compensation and is subject to FICA.

IV.    TERMINATION OF EMPLOYMENT

If your employment with MMC or any of its subsidiaries or affiliates (collectively with MMC, the "Company") terminates, your right to the Award and to the distribution of Shares shall be as follows:

A.    Death

If you die during employment, any unvested portion of the Award will vest immediately. In such event, or in the event of your death prior to complete distribution in respect of your Award, distribution of Shares in respect of your undistributed Award shall be made in the form of a lump sum payable as soon as practicable thereafter, with Shares being distributed to the person or persons to whom your rights shall pass by will or the law of descent and distribution.

B.    Total Disability

If you terminate employment as a result of Total Disability (as such term is defined in the Company's Basic Long-Term Disability Plan), any unvested portion of the Award will vest immediately. Distribution of Shares in respect of the Replacement Award shall be in the form of a lump sum payable on January 1 of the year following such termination. Distribution of Shares in respect of the Supplemental Award shall be in the form of a lump sum payable on the later of (1) January 1 of the year following termination or (2) January 1 of the year of the third anniversary of the Scheduled Vesting Date.

C.    Normal or Deferred Retirement

1.    If the later of your Normal or Deferred Retirement Date (as such terms are defined in the Company's primary retirement plan applicable to you) is prior to the Scheduled Vesting Date, the Replacement Award shall vest on your retirement date. Distribution of Shares in respect of the Replacement Award shall be made at the time and in the form irrevocably elected by you on your election form, but shall commence no later than January of the year following retirement.

2.    If the later of your Normal or Deferred Retirement Date is prior to January 1 of the year of the third anniversary of the Scheduled Vesting Date, the Supplemental Award shall vest on your retirement date. Distribution of Shares in respect of the Supplemental Award shall be made at the time and in the form irrevocably elected by you on your election form but, subject to the succeeding sentence, distribution shall commence no later than January of the year following retirement. In no event, however, shall distribution commence before January 1 of the year of the third anniversary of the Scheduled Vesting Date.

4

D.  All Other Employment Terminations

1.  If you cease to be an employee of the Company before the Scheduled Vesting Date for any reason other than death, Total Disability, or normal or deferred retirement, your right to any unvested portion of the Replacement Award shall be forfeited.

2.  If you cease to be an employee of the Company before January 1 of the year of the third anniversary of the Scheduled Vesting Date for any reason other than death, Total Disability, or normal or deferred retirement, your right to any unvested portion of the Supplemental Award shall be forfeited.

3.  If you cease to be an employee of the Company after the Scheduled Vesting Date but before all vested Shares have been distributed, any remaining vested Shares shall be distributed in a lump sum in January of the year following termination.

V.  CHANGE IN CONTROL PROVISIONS

A.  Change in Control

Upon the occurrence of a Change in Control, as defined in the 2000 Senior Executive Plan, any outstanding but unvested portion of the Award will vest on the date of the Change in Control and payment will be made thereafter in accordance with paragraph 1 or 2 below, whichever is applicable.

1.  Except as provided in paragraph 2 below, Shares shall be registered in your name and delivered to you as soon as practicable following the Change in Control.  The number of Shares so registered to you shall be equal to your undistributed Award.

2.  If, in the Change in Control transaction, shareholders of MMC receive consideration consisting of cash or other property (including securities of a successor or parent corporation), there shall be delivered to you as soon as practicable thereafter the consideration which you would have received in such transaction had you been, immediately prior to such transaction, a holder of that number of Shares equal to your undistributed Award.

**This Document Constitutes Part Of A Prospectus Covering Securities That Have Been Registered Under The Securities Act Of 1933. The Marsh & McLennan Companies, Inc. 2000 Senior Executive Incentive And Stock Award Plan Is Not Subject To Any Of The Provisions Of The Employee Retirement Income Security Act Of 1974.**

Marsh & McLennan Companies, Inc.
2000 Senior Executive Incentive and Stock Award Plan

Terms and Conditions of Restricted Stock Units
Granted To U.S. Employees in 2004

This award (the "Award") of Restricted Stock Units is being granted to you under the Marsh & McLennan Companies, Inc. 2000 Senior Executive Incentive and Stock Award Plan (the "2000 Senior Executive Plan"). The Award consists of (1) a replacement award (the "Replacement Award") of Restricted Stock Units equal in number to the number of shares (the "Covered Shares") (excluding shares vesting as a result of your retirement and any granted in connection with a prior deferral under the Restricted Shares Voluntary Deferral Program) of Restricted Stock or Restricted Stock Units granted to you under the 2000 Senior Executive Plan or any predecessor plan which were scheduled to vest on a specified future date (the "Scheduled Vesting Date") and which you have irrevocably elected to surrender and have cancelled in exchange for this Award, provided, that such elected number is in an increment of 100 and cannot be more than 75% or less than 25% of the number of Covered Shares of Restricted Stock, or Restricted Stock Units which were scheduled to vest on the Scheduled Vesting Date, plus (2) if you elect to defer distribution of the Award to a date on or after the vesting date specified in Section I A.2, an additional award (the "Supplemental Award") of Restricted Stock Units equal in number to 15% of the Replacement Award. The Award is subject to the following terms and conditions:

I.     AWARD VESTING AND DISTRIBUTION

   A.     Vesting Period

      1.     Subject to Section IV D, the Replacement Award shall vest on the earlier of (a) the Scheduled Vesting Date or (b) such other date as may be applicable pursuant to the provisions of Sections IV and V.

      2.     Subject to Section IV D, the Supplemental Award shall vest on the earlier of (a) January 1 of the year of the third anniversary of the Scheduled Vesting Date or (b) such other date as may be applicable pursuant to the provisions of Sections IV and V.

B.    Stock Distribution

Unless forfeited pursuant to Section IV D, or unless Section V A.2 applies, and in
any event subject to Section I E, shares of Common Stock (the "Shares") of Marsh
& McLennan Companies, Inc. ("MMC") shall be registered in your name on each
distribution date based on your irrevocable election.  The number of Shares so
registered to you on each distribution date shall be based upon a distribution in
substantially equal installments over the period during which you have irrevocably
elected to receive such Shares; provided, however, that in the case of termination
of your employment by reason of your death or permanent disability, or in the case
of a payment under Section V A.1, the number of Shares so registered shall equal
the number of Restricted Stock Units with respect to which distribution had not
previously been made.  Once the Award vests, you have an unalienable right to re-
ceive the Shares (or cash or other property, as described in Section V A.2) payable
in connection therewith, in accordance with the terms hereof.  Notwithstanding
the irrevocability of the elections described in this Section I B, you shall have the
right to delay the beginning date of distribution or to increase the number of
installments to be made as provided in Section I C, and you have the right to
accelerate distribution of the shares as provided in Section I D.

C.    Redeferral Elections

At any time up to one full calendar year prior to the beginning date of the
scheduled distribution of Shares pursuant to Section I B, you may elect to defer
the beginning date of distribution or to increase the number of installments, or
both, as theretofore elected by you, subject to specific terms and conditions
determined by the Compensation Committee of the MMC Board of Directors (the
"Compensation Committee").  Such elections under this Section I C shall be
treated as if made under Section I B for all purposes under the provisions hereof,
including the right to make further elections under this Section I C.

D.    Acceleration of Distribution

You may elect to accelerate the distribution of all or a portion of the Shares
(unless Section I E applies and a special deferral is made) for any reason prior to
the completion of the elected deferral period, subject to the imposition of a
significant penalty in accordance with applicable tax rules.  The penalty shall be a
forfeiture equal to (i) 6% of the amount that you elect to have distributed and (ii)
100% of any unvested Supplemental Award, as provided in item (2) of the first
paragraph of these terms and conditions, that you elect to have distributed.
Amounts distributed to you will be subject to applicable tax withholding, but
amounts forfeited will not be subject to tax.

2

E.    Special Deferral

> Notwithstanding anything to the contrary contained herein (other than Section V), the Committee shall have the discretion to defer any distribution otherwise scheduled to be made hereunder to the extent necessary (in the Committee's judgment) to avoid all or any portion of such distribution being nondeductible to the Company by reason of Section 162(m) of the Internal Revenue Code of 1986, as amended, or any successor provision thereto. Employees covered under Section 162(m), according the proposed regulations issued by the Internal Revenue Service, include (i) the chief executive officer of MMC as of the last day of the year of distribution and (ii) the four highest paid executive officers of MMC, other than the chief executive officer, who are employed on the last day of the year of distribution.

## II.    RIGHTS OF RESTRICTED STOCK UNITS

You will receive dividend equivalent payments on the Restricted Stock Units. Unless and until the vesting conditions of the Award have been satisfied and you have received the Shares in accordance with the terms and conditions described herein, you have none of the attributes of ownership to such Shares (e.g., units cannot be used as payment for stock option exercises).

## III.    TAXES

The value of your Award is not includible in gross income until distribution, but is subject to FICA on the date of vesting. When the Shares (or, in the event Section V A.2 is applicable, cash or other property) are received by you free and clear of all restrictions on each distribution date, the value of such distribution is includible in gross income and you will be required to pay the withholding taxes required by law. At that time, you will be given detailed information regarding the tax consequences of your receipt of the Shares (or cash or other property). The receipt of dividend equivalents is taxable on a current basis as additional compensation and is subject to FICA.

## IV.    TERMINATION OF EMPLOYMENT

If your employment with MMC or any of its subsidiaries or affiliates (collectively with MMC, the "Company") terminates, your right to the Award and to the distribution of Shares shall be as follows:

A.    Death

If you die during employment, any unvested portion of the Award will vest immediately. In such event, or in the event of your death prior to complete distribution in respect of your Award, distribution of Shares in respect of your undistributed Award shall be made in the form of a lump sum payable as soon as practicable thereafter, with Shares being distributed to the person or persons to whom your rights shall pass by will or the law of descent and distribution.

B.    Total Disability

If you terminate employment as a result of Total Disability (as such term is defined in the Company's Basic Long-Term Disability Plan), any unvested portion of the Award will vest immediately. Distribution of Shares in respect of the Replacement Award shall be in the form of a lump sum payable on January 1 of the year following such termination. Distribution of Shares in respect of the Supplemental Award shall be in the form of a lump sum payable on the later of (1) January 1 of the year following termination or (2) January 1 of the year of the third anniversary of the Scheduled Vesting Date.

C.    Normal or Deferred Retirement

1.    If the later of your Normal or Deferred Retirement Date (as such terms are defined in the Company's primary retirement plan applicable to you) is prior to the Scheduled Vesting Date, the Replacement Award shall vest on your retirement date. Distribution of Shares in respect of the Replacement Award shall be made at the time and in the form irrevocably elected by you on your election form, but shall commence no later than January of the year following retirement.

2.    If the later of your Normal or Deferred Retirement Date is prior to January 1 of the year of the third anniversary of the Scheduled Vesting Date, the Supplemental Award shall vest on your retirement date. Distribution of Shares in respect of the Supplemental Award shall be made at the time and in the form irrevocably elected by you on your election form but, subject to the succeeding sentence, distribution shall commence no later than January of the year following retirement. In no event, however, shall distribution commence before January 1 of the year of the third anniversary of the Scheduled Vesting Date.

D.     <u>All Other Employment Terminations</u>

    1.     If you cease to be an employee of the Company before the Scheduled Vesting Date for any reason other than death, Total Disability, or normal or deferred retirement, your right to any unvested portion of the Replacement Award shall be forfeited.

    2.     If you cease to be an employee of the Company before January 1 of the year of the third anniversary of the Scheduled Vesting Date for any reason other than death, Total Disability, or normal or deferred retirement, your right to any unvested portion of the Supplemental Award shall be forfeited.

    3.     If you cease to be an employee of the Company after the Scheduled Vesting Date but before all vested Shares have been distributed, any remaining vested Shares shall be distributed in a lump sum in January of the year following termination.

V.     <u>CHANGE IN CONTROL PROVISIONS</u>

A.     <u>Change in Control</u>

Upon the occurrence of a Change in Control, as defined in the 2000 Senior Executive Plan, any outstanding but unvested portion of the Award will vest on the date of the Change in Control and payment will be made thereafter in accordance with paragraph 1 or 2 below, whichever is applicable.

    1.     Except as provided in paragraph 2 below, Shares shall be registered in your name and delivered to you as soon as practicable following the Change in Control. The number of Shares so registered to you shall be equal to your undistributed Award.

    2.     If, in the Change in Control transaction, shareholders of MMC receive consideration consisting of cash or other property (including securities of a successor or parent corporation), there shall be delivered to you as soon as practicable thereafter the consideration which you would have received in such transaction had you been, immediately prior to such transaction, a holder of that number of Shares equal to your undistributed Award.

# EXHIBIT
# E

**This Document Constitutes Part Of A Prospectus Covering Securities That Have Been Registered Under The Securities Act of 1933.**

MARSH & McLENNAN COMPANIES
2000 SENIOR EXECUTIVE INCENTIVE AND STOCK AWARD PLAN


Terms and Conditions of Restricted Stock Unit Awards to U.S. Grant Recipients

This award of restricted stock units, granted on January 15, 2004 under the Marsh & McLennan Companies (MMC) 2000 Senior Executive Incentive and Stock Award Plan (the Plan), is subject to the following terms and conditions:

I.    VESTING PERIOD

Your award of restricted stock units is scheduled to vest on the earlier of (1) January 15, 2007 or (2) such other date as may be applicable pursuant to the provisions of Section IV below. The shares will be delivered to you as soon as practicable after the date of vesting, free of restriction.

II.   RIGHTS OF RESTRICTED STOCK UNITS

You will receive dividend equivalent payments on the restricted stock units. Unless and until both the vesting conditions of the award have been satisfied and the shares have been registered to you in accordance with the terms and conditions described herein, you have none of the attributes of ownership to such shares of stock (e.g., units cannot be used as payment for stock option exercises; units may not be transferred or assigned; units have no voting rights).

III.  TAXES

The value of restricted stock units generally is not taxable on the date of grant. During the restriction period, the receipt of dividend equivalents is taxable on a current basis as additional compensation and will be included in your payroll checks. When the units vest and are distributed, you will be given further information regarding the tax consequences of your receipt of the shares; at that time you will be required to pay all withholding taxes required by law. It is recommended that you consult with your personal tax advisor for more detailed information regarding the tax treatment of the award.

IV.   TERMINATION OF EMPLOYMENT

If, prior to the vesting of all restricted stock units as provided above, you should cease to be employed by MMC or any of its subsidiaries or affiliates (the Company), all restricted stock units shall, except as provided in the next succeeding paragraph, forthwith vest in you or, in the event of your death, to the person or persons to whom your rights shall pass by will or the laws of descent and distribution.

You shall not be entitled to receive any restricted stock units not theretofore vested, and all rights pertaining to any such unvested restricted stock units shall cease, should your employment be terminated under any of the following conditions:

- 1-

A.    Termination by your employer for any of the following reasons: misappropriation of the assets of the Company; willful misconduct in the performance of your duties; your refusal to perform the duties of your position; or your conviction of a felony.

B.    Your resignation, except:

    (1)    upon total disability, as defined in the Company's long-term disability program; or

    (2)    upon retirement within the meaning of the Company's retirement program; or

    (3)    for Good Reason (as defined below) if the Company fails to cure the circumstances giving rise to such Good Reason within 30 days.  "Good Reason" means:

        (a)    termination of your present position in the Company or of any position subsequently held;

        (b)    reduction in your annual base salary as in effect from time to time, except for across-the-board salary reductions similarly and generally affecting a recognized group of senior executives that includes you;

        (c)    relocation of your office to a place not within the New York City metropolitan area; or

        (d)    the discontinuance or reduction in level of your participation (exclusive of an <u>ad hoc</u> reduction conforming to the general principles under which a plan is administered) in any compensation plan in which you have been participating, provided that other senior executives constituting a recognized group that includes you are not also and similarly affected.

    Any resignation pursuant to Section IV.B.(3) must be submitted in writing and delivered to the Senior Vice President, Human Resources and Administration of MMC within 60 days of your becoming aware of any circumstances set forth in (a), (b), (c) or (d) above.  Such notice of resignation must specify which of the circumstances set forth above you are relying on, and your resignation must be effective no later than 90 days, but no earlier than 30 days, from your delivery of the written notice.

It is understood that any future agreement between you and the Company may include provisions that vary from the terms contained herein and, if so, the provisions of such future agreement shall govern.

V.    <u>CHANGE IN CONTROL PROVISIONS</u>

A.    <u>Change in Control</u>

    Upon the occurrence of a "change in control" of MMC, as defined in the Plan, the restricted stock units will vest on the date of the change in control, and the shares will be distributed to you as soon as practicable thereafter.

B.    Additional Payment

Should you receive shares from the vesting of restricted stock units that have been accelerated because of a change in control, all or part of the value (the total market price of the shares on the date of vesting) of those shares (the Accelerated Shares) may be subject to a 20% federal excise tax. The excise tax is imposed when the value of the Accelerated Shares (plus any other payments which are determined to be contingent on a change in control) is more than 2.999 times the average of your last five years W-2 earnings.

If a change in control occurs and you receive Accelerated Shares, MMC will determine if the 20% federal excise tax is payable. If it is payable, MMC will pay to you, within five days of making the computation, an amount of money (the Additional Payment) equal to the excise tax plus additional amounts for federal, state and local taxes so that the excise tax and income taxes on the excise tax payment will not cost you any money. If the Additional Payment is later determined to be less than the amount of taxes you owe, a further payment will be made to you. If the Additional Payment is more than the amount you owe, you will be required to reimburse MMC for the difference.

VI.    OTHER PROVISIONS

A.    This award of restricted stock units does not give you any right to continue to be employed by the Company, or limit, in any way, the right of your employer to terminate your employment, at any time, for any reason not specifically prohibited by law.

B.    MMC is not liable for the non-issuance or non-transfer, nor for any delay in the issuance or transfer of any shares of common stock due to you, which results from the inability of MMC to obtain, from each regulatory body having jurisdiction, all requisite authority to issue or transfer shares of MMC common stock, if counsel for MMC deems such authority necessary for the lawful issuance or transfer of any such shares. Your acceptance of this award constitutes your agreement that the shares of common stock subsequently acquired hereunder, if any, will not be sold or otherwise disposed of by you in violation of any applicable securities laws or regulations.

C.    This award is subject to all of the terms and conditions herein and the provisions of the Plan, and your acceptance hereof shall constitute your agreement to the administrative regulations of the Compensation Committee of the MMC Board of Directors (the Committee). In the event of any inconsistency between these terms and conditions and the provisions of the Plan, the provisions of the Plan shall prevail. You may obtain a copy of the Plan by making a request to MMC.

D.    The restricted stock units are awarded in accordance with such additional administrative regulations as the Committee may, from time to time, adopt. All decisions of the Committee upon any questions arising under these terms and conditions or the Plan shall be conclusive and binding.

E.    During your lifetime, no right hereunder related to these restricted stock units shall be transferable except by will or the laws of descent and distribution.

INCORPORATION OF CERTAIN DOCUMENTS BY REFERENCE

The Annual Report on Form 10-K of MMC for its last fiscal year, MMC's Registration Statement on Form 8 dated February 3, 1987, describing MMC common stock, including any amendment or reports filed for the purpose of updating such description, and MMC's Registration Statement on Form 8-A/A dated January 26, 2000, describing the Preferred Stock Purchase Rights attached to the common stock, including any further amendment or reports filed for the purpose of updating such description, which have been filed by MMC under the Securities Exchange Act of 1934, as amended (the Exchange Act), are incorporated by reference herein.

All documents subsequently filed by MMC pursuant to Sections 13(a), 13(c), 14 and 15(d) of the Exchange Act, subsequent to the end of MMC's last fiscal year and prior to the filing of a post-effective amendment which indicates that all securities offered have been sold or which deregisters all securities then remaining unsold, shall be deemed to be incorporated by reference herein and to be a part hereof from the date of filing of such documents.

Participants may receive without charge, upon written or oral request, a copy of any of the documents incorporated herein by reference and any other documents that constitute part of this Prospectus by contacting Kelly Gamble, Manager, Executive Compensation at (212) 948-3523.

t&c/01152004rsu-usa

# EXHIBIT
# F

# MARSH USA INC.
# SEVERANCE PAY PLAN

## Effective as of February 1, 2001

**1.**     **Purpose**

This Severance Pay Plan (the "Plan") has been adopted by Marsh USA Inc. (the "Company") to provide financial assistance to eligible employees of the Company whose employment is involuntarily terminated under the circumstances described herein.

This Plan supersedes all previous policies, practices, programs or plans which may have been followed by the Company (or any predecessor, merged or acquired entity) for employees covered by this Plan.

This document constitutes both the plan document and summary plan description required under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). In the event of any conflict between the provisions of this document and any other communication, the provisions of this document will govern.

**2.**     **Eligibility**

    a.     <u>In General</u>

Except as otherwise provided in Sections 2.b. or c., an active salaried employee (i.e., one who is classified and treated for federal income tax purposes by the Company as a salaried employee) currently employed by the Company in the United States may be eligible for severance benefits under this Plan if the following conditions are met:

    (i)     the Company has determined, in its sole discretion, that the employee lacks the job skills required for the job even though the employee is diligently attempting to perform the essential functions of the job but is unable to do so through no fault of his/her own, or the employee has been separated from the Company through no fault of the employee as a result of a restructuring or downsizing program, closing of a facility, reorganization, or because the employee's position has been eliminated;

    (ii)     the employee remains in his/her position in good standing, in the sole discretion of the Company, until the last day of employment on the active payroll of the Company designated by the Company ("Termination Date"); and

    (iii)     the employee reconciles his/her expense account, returns any financial advances and Company property, and repays any personal loans on or before his/her Termination Date.

b.    Exclusions

An individual is not eligible for benefits under this Plan if:

(i)    he/she is classified by the Company as an hourly or temporary employee, independent contractor or consultant, agency worker or leased employee; or

(ii)    his/her termination is a result of voluntary resignation, retirement or other voluntary termination of employment, failure to return from a vacation or an approved leave of absence, or death; or

(iii)    his/her termination is for cause, which, for purposes of this Plan, includes, but is not limited to (whether work-related or not), a termination for: insubordination; dishonesty; theft; willful misconduct; failure to comply with Company policies or guidelines; harassment; fighting or other violent or threatening behavior; excessive absenteeism or tardiness; falsification of records such as employment applications, travel and entertainment records, reports of work hours and client related expenses; commission of an act rising to the level of a crime; or being under the influence of illicit drugs or alcohol at work or on the Company's premises.  In addition, documented poor performance may be considered termination for "cause." Determinations regarding what constitutes "cause" shall be made by the Plan Administrator (or its delegate) in its sole discretion; or

(iv)    he/she transfers within the Company or any related company, including a successor to all or a part of the Company (following for example, a sale, divestiture or merger of all or part of the Company's business or assets, acquisition, or any other form of corporate reorganization), whether or not the position is comparable or better; or

(v)    he/she has been offered a comparable or better position with the Company or any related company, including a successor to all or a part of the Company (following for example, a sale, divestiture or merger of all or part of the Company's business or assets, acquisition, or any other form of corporate reorganization), which is within a 50 mile radius of the location of the previous position, whether or not he/she accepts such position.  The determination of whether a position is comparable or better, for purposes of this Plan, will be made by the Plan Administrator (or its delegate) in its sole discretion; or

(vi)    his/her selection for involuntary termination is revoked by the Company prior to the Termination Date; or

(vii)    at the time of his/her selection for involuntary termination, he/she has been out of the office on a leave of absence for a period of six (6) months or more.

NY:131159.3                               2

c.  In addition, an employee may not be eligible for severance benefits under this Plan if he/she is covered by an individual employment agreement or any other contractual arrangement:

   (i)  providing for continuation of salary and/or other payments or benefits if he/she is terminated before a certain date and/or providing for severance benefits; or

   (ii)  where the Company would be obligated to continue his/her salary and/or other payments or benefits after his/her termination because of a contractual guarantee; or

   (iii)  where the employee has executed or entered into a Memorandum of Agreement or other agreement with a company acquired by the Company or by a related company that provides for a termination notice period of greater than fifteen (15) days.

In that case, the employee will be eligible to receive the greater of: (A) the benefits provided for under the employment agreement or other contractual arrangement; or (B) provided the employee executes a Waiver and Release Agreement in the form and within the time required by the Company, the benefits provided for under this Plan. In no event will an employee be entitled to receive benefits under both the employment agreement or other contractual arrangement and this Plan.

## 3.   Severance Benefits

The following severance benefits are provided for under this Plan. If, by virtue of the nature of the employee's termination, he/she is eligible for notice of termination pursuant to the federal Worker Adjustment Retraining & Notification Act ("WARN") or any similar state or local plant or facility closing law, his/her severance benefits under this Plan shall be reduced by such statutory notice entitlement.

a.  Basic Severance Benefit

Except as otherwise provided in this Section 3, an employee who meets the eligibility requirements of Section 2 above ("Plan Participant") will be eligible to receive Basic Severance Pay equal to two (2) weeks' Base Salary (as defined below).

b.  Enhanced Severance Benefits

In lieu of the Basic Severance Benefit described above, a Plan Participant who signs a Waiver and Release Agreement in the form and within the time required by the Company, the terms of which are incorporated herein by reference and which may include, without limitation, non-solicitation provisions, will be eligible to receive Enhanced Severance Benefits as follows:

(i)    Enhanced Severance Pay

With the exception of Managing Directors, Plan Participants eligible for Enhanced Severance Pay will receive two (2) weeks' Base Salary for each Year of Service (as defined below) with the Company, or the following, whichever is greater:

| Title | Enhanced Severance Pay |
|---|---|
| Non-officer | 1 month's Base Salary |
| Assistant Vice President | 3 months' Base Salary |
| Vice President | 6 months' Base Salary |
| Senior Vice President | 9 months' Base Salary |

In no event, however, will Enhanced Severance Pay exceed one (1) year's Base Salary.

Managing Directors eligible for Enhanced Severance Pay will receive one (1) year's Base Salary.

• For purposes of determining the amount of Basic or Enhanced Severance Pay a Plan Participant is eligible to receive under the terms of this Plan, the term "Base Salary" means such Plan Participant's base salary including any applicable shift differential, but exclusive of overtime compensation, commissions, bonuses, other payments, or any fringe benefits or other forms of remuneration, as in effect on the Plan Participant's Termination Date. Any performance/merit reviews that are pending or in process as the Termination Date also shall not be taken into account in determining a Plan Participant's Base Salary or the amount of Severance Pay.

• In addition, for purposes of determining the amount of Enhanced Severance Pay a Plan Participant is eligible to receive under the terms of this Plan, a Plan Participant will be credited with a Year of Service for each completed twelve (12) month period or portion thereof with the Company or any related company as measured from the Plan Participant's date of hire. For these purposes, only continuous service with the Company and related companies will be considered. Service will be considered continuous provided that there is no gap in service of more than six (6) months. Further, for purposes of crediting partial Years of Service, a Plan Participant will receive credit for 1/12 of a Year of Service for

each completed month of service or portion thereof. In no event will a Plan Participant be credited with Years of Service for any period for which the Plan Participant already received severance pay from the Company, any related company or any predecessor of the Company or related company.

    (ii)    Outplacement Counseling

Plan Participants eligible for Enhanced Severance Pay will be eligible to receive, upon request, outplacement benefits at the Company's expense, commencing within sixty (60) days following the Termination Date, at a level, for a duration (as set forth below), and by an outplacement firm to be selected by the Plan Administrator. If the Plan Participant chooses not to participate in outplacement counseling as offered under this Plan, the Company will not provide the Plan Participant with any additional compensation in lieu thereof.

| Title | Outplacement Benefit |
|---|---|
| Non-Officer | 1-2 Day Program |
| Assistant Vice President or Vice President | 3 Month Program |
| Senior Vice President or Managing Director | 6 Month Program |

**4.**    **Manner of Payment**

Payment of Basic Severance Pay under this Plan will be made in a lump-sum payment, less applicable withholdings, on or about the 30th calendar day following the Termination Date.

Enhanced Severance Pay payable pursuant to the terms of a signed Waiver and Release Agreement will not be paid until such Agreement is executed, returned to the Company and becomes effective by its terms. Subject to the foregoing, such Enhanced Severance Pay will be paid in a lump sum, less applicable withholdings, on or about the 30th calendar day following the receipt of the signed Waiver and Release Agreement by the Company.

**5.**    **Payment Offsets**

The Company reserves the right to reduce any severance benefit paid under this Plan to the extent necessary to take into account any of the following: any outstanding financial obligations(s) that the employee has to the Company, including, but not limited to, expense account balances, employee loans, relocation allowances, employee advances (including tuition advances and vacation or sick days taken in advance of their being

earned by the employee) and the value of any computer hardware or software, communications equipment or other Company-provided property in the individual's possession that he/she has failed to return to the Company as of the Termination Date.

The determination of any such severance benefit reductions will be made by the Plan Administrator (or its delegate) in its sole discretion.

6. **If An Employee Is Re-Employed By The Company**

Any re-employment in any capacity of a terminated employee must be approved by the Human Resources Director, North American Operations, and the Senior Business Manager of the Company. If an employee accepts re-employment with the Company, its parent or any affiliate or subsidiary of the Company, or becomes an independent contractor to or consultant for the Company, its parent or any affiliate or subsidiary of the Company, he/she may be required to refund all or a pro-rata portion of the Enhanced Severance Pay to the Company as a condition of re-employment (i.e., the amount paid in excess of the actual period of unemployment). Any amount required to be refunded will be determined by the Plan Administrator (or its delegate) in its sole discretion. Should such employment be accepted, and should an employee be required to refund all or a pro-rata portion of such payments to the Company, such circumstances will not affect the validity of the Waiver and Release Agreement previously executed by the employee.

7. **Effect on Other Benefits**

Except as may otherwise be provided under this Plan or required by applicable law, all Company-provided benefits will terminate on the Plan Participant's Termination Date. Unvested Marsh & McLennan Companies stock options will be forfeited as of the Plan Participant's Termination Date, subject to the terms of the applicable grant.

8. **Source of Benefits**

Benefits under this Plan will be paid from the general assets of the Company. No assets or funds with respect to any such benefits will be segregated by the Company in any fund, account or trust. A Plan Participant shall have no greater claim against the assets of the Company than as a general unsecured creditor.

9. **Administration**

The Plan will be administered by the Company. As Plan Administrator, the Company has delegated responsibility for the day-to-day administration of the Plan to the Human Resource Directors, North American Operations.

The Company and/or the Human Resources Director, North American Operations, may appoint or employ such persons as either deems necessary to render advice with respect to any responsibility of either under the Plan. Both the Company and the Human Resources Director, North American Operations, may delegate to any one or more of the Company's employees any responsibility it may have under the Plan and may designate any other person or persons to carry out any responsibility of either under the Plan.

Acting on behalf of the Company, the Human Resources Director, North American Operations, shall make the rules and regulations necessary to administer the Plan. The Company and the Human Resources Director, North American Operations, shall have the discretionary authority and responsibility to determine eligibility for benefits and the amount of such benefits, and to construe the terms of the Plan. The determinations and constructions of the Company or the Human Resources Director, North American Operations, as the case may be, will be final, binding and conclusive as to all parties, unless found by a court of competent jurisdiction to be arbitrary and capricious.

Correspondence regarding this Plan should be addressed to:

Marsh USA Inc. Severance Pay Plan<br>
c/o Human Resources Director, North American Operations<br>
Marsh USA Inc.<br>
1166 Avenue of the Americas<br>
New York, New York 10036-2708<br>
(212) 345-6000

10.    **Claims Procedure**

Employees who are eligible for benefits under this Plan will be notified and provided with any forms required in connection with receipt of Plan benefits, including if applicable, a Waiver and Release Agreement. If any such employee disagrees with the determination of his/her benefits, he/she may, within 60 days of receipt of the initial notification, submit a written statement to the Plan Administrator describing the basis of his/her claim for benefits, together with any documents which he/she believes supports his/her claim. Any employee who is not so notified but believes that he/she is entitled to benefits under the Plan may, within 60 days of such employee's Termination Date, submit a written statement to the Plan Administrator describing the basis of his/her claim for benefits and requesting any forms required in connection with payment of such benefits.

If any claim for severance benefits is wholly or partially denied, the Plan Administrator shall notify the claimant within 90 days after the written claims statement is submitted, or within 90 days after any required forms are filed, if later (except that in special circumstances the Plan Administrator may take an additional 90 days to consider its decision, in which case the employee will be notified of the extension). Such notification shall set forth: (1) the specific reasons for the denial (including reference to any pertinent Plan provisions on which the denial is based); (2) if applicable, a description of any additional material or information necessary for the claimant to perfect the claim, and an explanation of why such material or information is necessary; and (3) the claims review procedure.

Any employee whose claim for benefits under this Plan is denied may make a written request to the Plan Administrator, within 60 days after such denial, for a review of the denial. Any such request must include any evidence relevant to the claim and may include a request for pertinent documents. The employee claiming benefits shall be

notified of the final decision of the Plan Administrator within 60 days after his/her request for a review is received. However, if the Plan Administrator finds it necessary to extend this period due to special circumstances and so notifies the claimant in writing, the decision shall be rendered as soon as practicable, but in no event later than 120 days after the claimant's request for review. The decision shall be in writing and shall set forth the specific reasons for the denial (including reference to any pertinent Plan provisions on which the denial is based).

The Plan Administrator's decision on claims shall be final, binding and conclusive on all interested persons unless found by a court of competent jurisdiction to be arbitrary and capricious.

11. **Amendment or Termination of this Plan**

The Company, acting through the Human Resources Director, North American Operations, reserves the right, whether in an individual case or more generally, to amend or terminate this Plan, and/or to alter, reduce or eliminate any pay practice, policy or benefit, in whole or in part, with or without advance notice; provided, however, that no such amendment or termination shall adversely affect the benefits payable with respect to any Plan Participant who has a Termination Date prior to the adoption of such amendment or termination. The Company may award additional benefits, whether on an individual basis or more generally, under this Plan on a discretionary basis.

12. **Withholding of Taxes**

The Company will withhold, or cause to have withheld, all applicable income and payroll taxes from any severance pay benefit paid under this Plan to the extent required by law. Federal income taxes will be withheld at the flat tax rate established under the Internal Revenue Code.

13. **General Information**

The following pages describe other information Plan Participants should know about the Plan.

**Plan Sponsor**

Marsh USA Inc.
1166 Avenue of the Americas
New York, New York 10036-2708
(212) 345-6000

**Plan Administrator**

Marsh USA Inc.
1166 Avenue of the Americas
New York, New York 10036-2708
(212) 345-6000

NY:131159.3                                8

An employee may contact the Plan Administrator by writing to the Human Resources Director, North American Operations, at the above address.

**Type of Plan**

The Plan is a severance plan.

**Effective Date**

The Plan is effective February 1, 2001.

**Plan Year**

The Plan's records are kept on a calendar year basis.

**Plan Identification**

The official name of the Plan is the Marsh USA Inc. Severance Pay Plan. The Internal Revenue Service identifies Marsh USA Inc. by the number 36-1436000 and the Department of Labor identifies the Plan by the plan number 501.

**Legal Service**

It is hoped that legal action with regard to the Plan will not be considered necessary. However, if legal action does become necessary, the agent named for service of process is:

> Barbara H. Frank, Esq.
> Vice President and Counsel
> Marsh & McLennan Companies, Inc.
> 1166 Avenue of the Americas
> New York, New York 10036-2708

Additionally, legal service may be served upon the Plan Administrator.

**ERISA Rights**

As a participant in the Plan, under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), an employee has the following rights:

- to examine without charge, at the Company's office and at other specified locations such as worksites, all Plan documents and copies of all documents filed by the Plan with the U.S. Department of Labor, such as any required detailed annual reports and Plan descriptions; and

- to obtain copies of all Plan documents and other Plan information upon written request to the Company. A reasonable charge may be made for the copies.

In addition to creating rights for Plan Participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who administer the Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of all Plan Participants and beneficiaries. No one, including the employer, or any other person, may discriminate against an employee in any way to prevent an employee from obtaining a severance benefit or exercising his/her rights under ERISA.

If a claim for severance benefits is denied in whole or in part, the claimant must receive a written explanation of the reason for the denial. The claimant has the right to have the Plan review and reconsider the claim.

Under ERISA, there are steps a claimant may take to enforce the above rights. For instance, if a claimant requests materials from the Plan and does not receive them within 30 days, the claimant may file a suit in the federal court. In such a case, the court may require the Company to provide the materials and pay the claimant up to $110 a day until the claimant receives the materials, unless the materials were not sent for reasons beyond the control of the Company. If the claimant has a claim for benefits which is denied or ignored, in whole or in part, the claimant may file suit in a state or federal court. If it should happen that Plan fiduciaries misuse the Plan's money, or if a claimant is discriminated against for asserting his/her rights, the claimant may seek assistance from the U.S. Department of Labor, or the claimant may file suit in a federal court. If the claimant is successful, the court may order the person sued to pay the costs and fees. If the claimant loses, the court may order the claimant to pay these costs and fees, if, for example, it finds the claimant's claim is frivolous.

If a person has any questions about the Plan, he/she should write to or contact:

> Human Resources Director, North American Operations
> Marsh USA Inc.
> 1166 Avenue of the Americas
> New York, New York 10036-2708
> (212) 345-6000

If a person has any questions about this statement or about his/her rights under ERISA, he/she should contact the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in his/her telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

**Governing Law**

To the extent that this Plan is not governed by federal law, the law of the State of New York shall govern.

# EXHIBIT
# G

# MARSH INC.
## SEVERANCE PAY PLAN

### Effective as of February 1, 2001

1. **Purpose**

This Severance Pay Plan (the "Plan") has been adopted by Marsh Inc. (the "Company") to provide financial assistance to eligible employees of the Company whose employment is involuntarily terminated under the circumstances described herein.

This Plan supersedes all previous policies, practices, programs or plans which may have been followed by the Company (or any predecessor, merged or acquired entity) for employees covered by this Plan.

This document constitutes both the plan document and summary plan description required under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). In the event of any conflict between the provisions of this document and any other communication, the provisions of this document will govern.

2. **Eligibility**

    a.    <u>In General</u>

Except as otherwise provided in Sections 2.b. or c., an active salaried employee (i.e., one who is classified and treated for federal income tax purposes by the Company as a salaried employee) currently employed by the Company in the United States may be eligible for severance benefits under this Plan if the following conditions are met:

    (i)    the Company has determined, in its sole discretion, that the employee lacks the job skills required for the job even though the employee is diligently attempting to perform the essential functions of the job but is unable to do so through no fault of his/her own, or the employee has been separated from the Company through no fault of the employee as a result of a restructuring or downsizing program, closing of a facility, reorganization, or because the employee's position has been eliminated;

    (ii)    the employee remains in his/her position in good standing, in the sole discretion of the Company, until the last day of employment on the active payroll of the Company designated by the Company ("Termination Date"); and

    (iii)    the employee reconciles his/her expense account, returns any financial advances and Company property, and repays any personal loans on or before his/her Termination Date.

NY:131159.3

b.    Exclusions

An individual is not eligible for benefits under this Plan if:

(i)    he/she is classified by the Company as an hourly or temporary employee, independent contractor or consultant, agency worker or leased employee; or

(ii)    his/her termination is a result of voluntary resignation, retirement or other voluntary termination of employment, failure to return from a vacation or an approved leave of absence, or death; or

(iii)    his/her termination is for cause, which, for purposes of this Plan, includes, but is not limited to (whether work-related or not), a termination for: insubordination; dishonesty; theft; willful misconduct; failure to comply with Company policies or guidelines; harassment; fighting or other violent or threatening behavior; excessive absenteeism or tardiness; falsification of records such as employment applications, travel and entertainment records, reports of work hours and client related expenses; commission of an act rising to the level of a crime; or being under the influence of illicit drugs or alcohol at work or on the Company's premises.  In addition, documented poor performance may be considered termination for "cause." Determinations regarding what constitutes "cause" shall be made by the Plan Administrator (or its delegate) in its sole discretion; or

(iv)    he/she transfers within the Company or any related company, including a successor to all or a part of the Company (following for example, a sale, divestiture or merger of all or part of the Company's business or assets, acquisition, or any other form of corporate reorganization), whether or not the position is comparable or better; or

(v)    he/she has been offered a comparable or better position with the Company or any related company, including a successor to all or a part of the Company (following for example, a sale, divestiture or merger of all or part of the Company's business or assets, acquisition, or any other form of corporate reorganization), which is within a 50 mile radius of the location of the previous position, whether or not he/she accepts such position.  The determination of whether a position is comparable or better, for purposes of this Plan, will be made by the Plan Administrator (or its delegate) in its sole discretion; or

(vi)    his/her selection for involuntary termination is revoked by the Company prior to the Termination Date; or

(vii)    at the time of his/her selection for involuntary termination, he/she has been out of the office on a leave of absence for a period of six (6) months or more.

c.   In addition, an employee may not be eligible for severance benefits under this Plan if he/she is covered by an individual employment agreement or any other contractual arrangement:

    (i)   providing for continuation of salary and/or other payments or benefits if he/she is terminated before a certain date and/or providing for severance benefits; or

    (ii)   where the Company would be obligated to continue his/her salary and/or other payments or benefits after his/her termination because of a contractual guarantee; or

    (iii)   where the employee has executed or entered into a Memorandum of Agreement or other agreement with a company acquired by the Company or by a related company that provides for a termination notice period of greater than fifteen (15) days.

In that case, the employee will be eligible to receive the greater of: (A) the benefits provided for under the employment agreement or other contractual arrangement; or (B) provided the employee executes a Waiver and Release Agreement in the form and within the time required by the Company, the benefits provided for under this Plan. In no event will an employee be entitled to receive benefits under both the employment agreement or other contractual arrangement and this Plan.

## 3.   Severance Benefits

The following severance benefits are provided for under this Plan. If, by virtue of the nature of the employee's termination, he/she is eligible for notice of termination pursuant to the federal Worker Adjustment Retraining & Notification Act ("WARN") or any similar state or local plant or facility closing law, his/her severance benefits under this Plan shall be reduced by such statutory notice entitlement.

a.   Basic Severance Benefit

Except as otherwise provided in this Section 3, an employee who meets the eligibility requirements of Section 2 above ("Plan Participant") will be eligible to receive Basic Severance Pay equal to two (2) weeks' Base Salary (as defined below).

b.   Enhanced Severance Benefits

In lieu of the Basic Severance Benefit described above, a Plan Participant who signs a Waiver and Release Agreement in the form and within the time required by the Company, the terms of which are incorporated herein by reference and which may include, without limitation, non-solicitation provisions, will be eligible to receive Enhanced Severance Benefits as follows:

(i)    Enhanced Severance Pay

With the exception of Managing Directors, Plan Participants eligible for Enhanced Severance Pay will receive two (2) weeks' Base Salary for each Year of Service (as defined below) with the Company, or the following, whichever is greater:

| Title | Enhanced Severance Pay |
|---|---|
| Non-officer | 1 month's Base Salary |
| Assistant Vice President | 3 months' Base Salary |
| Vice President | 6 months' Base Salary |
| Senior Vice President | 9 months' Base Salary |

In no event, however, will Enhanced Severance Pay exceed one (1) year's Base Salary.

Managing Directors eligible for Enhanced Severance Pay will receive one (1) year's Base Salary.

- For purposes of determining the amount of Basic or Enhanced Severance Pay a Plan Participant is eligible to receive under the terms of this Plan, the term "Base Salary" means such Plan Participant's base salary including any applicable shift differential, but exclusive of overtime compensation, commissions, bonuses, other payments, or any fringe benefits or other forms of remuneration, as in effect on the Plan Participant's Termination Date. Any performance/merit reviews that are pending or in process as the Termination Date also shall not be taken into account in determining a Plan Participant's Base Salary or the amount of Severance Pay.

- In addition, for purposes of determining the amount of Enhanced Severance Pay a Plan Participant is eligible to receive under the terms of this Plan, a Plan Participant will be credited with a Year of Service for each completed twelve (12) month period or portion thereof with the Company or any related company as measured from the Plan Participant's date of hire. For these purposes, only continuous service with the Company and related companies will be considered. Service will be considered continuous provided that there is no gap in service of more than six (6) months. Further, for purposes of crediting partial Years of Service, a Plan Participant will receive credit for 1/12 of a Year of Service for each completed month of service or portion thereof. In no event

will a Plan Participant be credited with Years of Service for any period for which the Plan Participant already received severance pay from the Company, any related company or any predecessor of the Company or related company.

(ii)   Outplacement Counseling

Plan Participants eligible for Enhanced Severance Pay will be eligible to receive, upon request, outplacement benefits at the Company's expense, commencing within sixty (60) days following the Termination Date, at a level, for a duration (as set forth below), and by an outplacement firm to be selected by the Plan Administrator. If the Plan Participant chooses not to participate in outplacement counseling as offered under this Plan, the Company will not provide the Plan Participant with any additional compensation in lieu thereof.

| Title | Outplacement Benefit |
|---|---|
| Non-Officer | 1-2 Day Program |
| Assistant Vice President or Vice President | 3 Month Program |
| Senior Vice President or Managing Director | 6 Month Program |

4.   **Manner of Payment**

Payment of Basic Severance Pay under this Plan will be made in a lump-sum payment, less applicable withholdings, on or about the 30th calendar day following the Termination Date.

Enhanced Severance Pay payable pursuant to the terms of a signed Waiver and Release Agreement will not be paid until such Agreement is executed, returned to the Company and becomes effective by its terms. Subject to the foregoing, such Enhanced Severance Pay will be paid in a lump sum, less applicable withholdings, on or about the 30th calendar day following the receipt of the signed Waiver and Release Agreement by the Company.

5.   **Payment Offsets**

The Company reserves the right to reduce any severance benefit paid under this Plan to the extent necessary to take into account any of the following: any outstanding financial obligations(s) that the employee has to the Company, including, but not limited to, expense account balances, employee loans, relocation allowances, employee advances (including tuition advances and vacation or sick days taken in advance of their being earned by the employee) and the value of any computer hardware or software,

communications equipment or other Company-provided property in the individual's possession that he/she has failed to return to the Company as of the Termination Date.

The determination of any such severance benefit reductions will be made by the Plan Administrator (or its delegate) in its sole discretion.

6.    **If An Employee Is Re-Employed By The Company**

Any re-employment in any capacity of a terminated employee must be approved by the Head of Corporate Human Resources and the Senior Business Manager of the Company. If an employee accepts re-employment with the Company, its parent or any affiliate or subsidiary of the Company, or becomes an independent contractor to or consultant for the Company, its parent or any affiliate or subsidiary of the Company, he/she may be required to refund all or a pro-rata portion of the Enhanced Severance Pay to the Company as a condition of re-employment (i.e., the amount paid in excess of the actual period of unemployment). Any amount required to be refunded will be determined by the Plan Administrator (or its delegate) in its sole discretion. Should such employment be accepted, and should an employee be required to refund all or a pro-rata portion of such payments to the Company, such circumstances will not affect the validity of the Waiver and Release Agreement previously executed by the employee.

7.    **Effect on Other Benefits**

Except as may otherwise be provided under this Plan or required by applicable law, all Company-provided benefits will terminate on the Plan Participant's Termination Date. Unvested Marsh & McLennan Companies stock options will be forfeited as of the Plan Participant's Termination Date, subject to the terms of the applicable grant.

8.    **Source of Benefits**

Benefits under this Plan will be paid from the general assets of the Company. No assets or funds with respect to any such benefits will be segregated by the Company in any fund, account or trust. A Plan Participant shall have no greater claim against the assets of the Company than as a general unsecured creditor.

9.    **Administration**

The Plan will be administered by the Company. As Plan Administrator, the Company has delegated responsibility for the day-to-day administration of the Plan to the Managing Director, Corporate Human Resources.

The Company and/or the Managing Director, Corporate Human Resources, may appoint or employ such persons as either deems necessary to render advice with respect to any responsibility of either under the Plan. Both the Company and the Managing Director, Corporate Human Resources, may delegate to any one or more of the Company's employees any responsibility it may have under the Plan and may designate any other person or persons to carry out any responsibility of either under the Plan.

Acting on behalf of the Company, the Managing Director, Corporate Human Resources, shall make the rules and regulations necessary to administer the Plan. The Company and the Managing Director, Corporate Human Resources, shall have the discretionary authority and responsibility to determine eligibility for benefits and the amount of such benefits, and to construe the terms of the Plan. The determinations and constructions of the Company or the Managing Director, Corporate Human Resources, as the case may be, will be final, binding and conclusive as to all parties, unless found by a court of competent jurisdiction to be arbitrary and capricious.

Correspondence regarding this Plan should be addressed to:

Marsh Inc. Severance Pay Plan
c/o Managing Director, Corporate Human Resources
Marsh Inc.
1166 Avenue of the Americas
New York, New York 10036-2708
(212) 345-6000

10.    **Claims Procedure**

Employees who are eligible for benefits under this Plan will be notified and provided with any forms required in connection with receipt of Plan benefits, including if applicable, a Waiver and Release Agreement. If any such employee disagrees with the determination of his/her benefits, he/she may, within 60 days of receipt of the initial notification, submit a written statement to the Plan Administrator describing the basis of his/her claim for benefits, together with any documents which he/she believes supports his/her claim. Any employee who is not so notified but believes that he/she is entitled to benefits under the Plan may, within 60 days of such employee's Termination Date, submit a written statement to the Plan Administrator describing the basis of his/her claim for benefits and requesting any forms required in connection with payment of such benefits.

If any claim for severance benefits is wholly or partially denied, the Plan Administrator shall notify the claimant within 90 days after the written claims statement is submitted, or within 90 days after any required forms are filed, if later (except that in special circumstances the Plan Administrator may take an additional 90 days to consider its decision, in which case the employee will be notified of the extension). Such notification shall set forth: (1) the specific reasons for the denial (including reference to any pertinent Plan provisions on which the denial is based); (2) if applicable, a description of any additional material or information necessary for the claimant to perfect the claim, and an explanation of why such material or information is necessary; and (3) the claims review procedure.

Any employee whose claim for benefits under this Plan is denied may make a written request to the Plan Administrator, within 60 days after such denial, for a review of the denial. Any such request must include any evidence relevant to the claim and may include a request for pertinent documents. The employee claiming benefits shall be notified of the final decision of the Plan Administrator within 60 days after his/her

request for a review is received. However, if the Plan Administrator finds it necessary to extend this period due to special circumstances and so notifies the claimant in writing, the decision shall be rendered as soon as practicable, but in no event later than 120 days after the claimant's request for review. The decision shall be in writing and shall set forth the specific reasons for the denial (including reference to any pertinent Plan provisions on which the denial is based).

The Plan Administrator's decision on claims shall be final, binding and conclusive on all interested persons unless found by a court of competent jurisdiction to be arbitrary and capricious.

11.    **Amendment or Termination of this Plan**

The Company, acting through the Managing Director, Corporate Human Resources, reserves the right, whether in an individual case or more generally, to amend or terminate this Plan, and/or to alter, reduce or eliminate any pay practice, policy or benefit, in whole or in part, with or without advance notice; provided, however, that no such amendment or termination shall adversely affect the benefits payable with respect to any Plan Participant who has a Termination Date prior to the adoption of such amendment or termination. The Company may award additional benefits, whether on an individual basis or more generally, under this Plan on a discretionary basis.

12.    **Withholding of Taxes**

The Company will withhold, or cause to have withheld, all applicable income and payroll taxes from any severance pay benefit paid under this Plan to the extent required by law. Federal income taxes will be withheld at the flat tax rate established under the Internal Revenue Code.

13.    **General Information**

The following pages describe other information Plan Participants should know about the Plan.

     **Plan Sponsor**

          Marsh Inc.
          1166 Avenue of the Americas
          New York, New York 10036-2708
          (212) 345-6000

     **Plan Administrator**

          Marsh Inc.
          1166 Avenue of the Americas
          New York, New York 10036-2708
          (212) 345-6000

An employee may contact the Plan Administrator by writing to the Managing Director, Corporate Human Resources, at the above address.

**Type of Plan**

The Plan is a severance plan.

**Effective Date**

The Plan is effective February 1, 2001.

**Plan Year**

The Plan's records are kept on a calendar year basis.

**Plan Identification**

The official name of the Plan is the Marsh Inc. Severance Pay Plan. The Internal Revenue Service identifies Marsh Inc. by the number 13-4046956 and the Department of Labor identifies the Plan by the plan number 501.

**Legal Service**

It is hoped that legal action with regard to the Plan will not be considered necessary. However, if legal action does become necessary, the agent named for service of process is:

Barbara H. Frank, Esq.
Vice President and Counsel
Marsh & McLennan Companies, Inc.
1166 Avenue of the Americas
New York, New York 10036-2708

Additionally, legal service may be served upon the Plan Administrator.

**ERISA Rights**

As a participant in the Plan, under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), an employee has the following rights:

- to examine without charge, at the Company's office and at other specified locations such as worksites, all Plan documents and copies of all documents filed by the Plan with the U.S. Department of Labor, such as any required detailed annual reports and Plan descriptions; and

- to obtain copies of all Plan documents and other Plan information upon written request to the Company. A reasonable charge may be made for the copies.

In addition to creating rights for Plan Participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who administer the Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of all Plan Participants and beneficiaries. No one, including the employer, or any other person, may discriminate against an employee in any way to prevent an employee from obtaining a severance benefit or exercising his/her rights under ERISA.

If a claim for severance benefits is denied in whole or in part, the claimant must receive a written explanation of the reason for the denial. The claimant has the right to have the Plan review and reconsider the claim.

Under ERISA, there are steps a claimant may take to enforce the above rights. For instance, if a claimant requests materials from the Plan and does not receive them within 30 days, the claimant may file a suit in the federal court. In such a case, the court may require the Company to provide the materials and pay the claimant up to $110 a day until the claimant receives the materials, unless the materials were not sent for reasons beyond the control of the Company. If the claimant has a claim for benefits which is denied or ignored, in whole or in part, the claimant may file suit in a state or federal court. If it should happen that Plan fiduciaries misuse the Plan's money, or if a claimant is discriminated against for asserting his/her rights, the claimant may seek assistance from the U.S. Department of Labor, or the claimant may file suit in a federal court. If the claimant is successful, the court may order the person sued to pay the costs and fees. If the claimant loses, the court may order the claimant to pay these costs and fees, if, for example, it finds the claimant's claim is frivolous.

If a person has any questions about the Plan, he/she should write to or contact:

> Managing Director, Corporate Human Resources
> Marsh Inc.
> 1166 Avenue of the Americas
> New York, New York 10036-2708
> (212) 345-6000

If a person has any questions about this statement or about his/her rights under ERISA, he/she should contact the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in his/her telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

**Governing Law**

To the extent that this Plan is not governed by federal law, the law of the State of New York shall govern.

NY:131159.3                                    10

Index No. 07/602281

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

ROGER EGAN,

Plaintiff,

-against-

MARSH & MCLENNAN COMPANIES, INC.,

Defendant.

**DECLARATION OF ROBERT N. HOLTZMAN
IN FURTHER SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT**

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**
*Attorneys for Defendants*

1177 Avenue of the Americas, New York, New York 10036
(212) 715-9100

*All communications should be referred to:*
Barry H. Berke, Esq.
Robert H. Holtzman, Esq.
Jennifer Rochon, Esq.

KL3 2608818.1